# United States District Court FILED
## For the Northern District of California
## San Jose Division

2008 MAY 29 P 2: 49

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Mr. Howard Young

    Plaintiff,

v

TransUnion; et al.,

    Defendants

D.C. No. CV-06-00114-J.F.

PLAINTIFF's

AMENDED Motion For

SUMMARY Judgment

DEMAND For JURY Trial

TO THE HONORABLE JEREMY FOGEL:

(HEARING REQUESTED to be ON July 11, 2008)

Plaintiff hereby moves this Court, AS SOON AS CAN be heard, with this Amended Motion For Summary Judgment.

Summary Judgment is Appropriate where there is no genuine issue as to any material fact.

"Further, a court must not weigh the evidence, make credibility determinations or determine the truth of the matter at the summary judgment stage, but may only determine whether there is a genuine issue for trial; . . . . . (citations omitted) (recognizing that on a motion for summary Judgment, a district court is entitled to neither assess the weight of the conflicting evidence nor to make credibility determinations)" See Centuori v Experian Information Solutions, Inc., (D. Ariz 2006) 431 F. Supp. 2d 1002 (Also see Self-Realization Fellowship Church v Ananda Church of Self-Realization, 206 F. 3d 1322, 1328 (9th Cir 2000))

"Whether the City unlawfully obtained the credit report is a legal question that the court may resolve on summary judgment."
See Pappas v City of Calumet City (N.D. Ill. 1998) 9 F.Supp. 2d 943

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)." See Chester v Purvis (S.D.Ind. 2003) 260 F.Supp. 2d 711

Plaintiff hereby moves this court for summary judgment against defendants TransUnion; et al, based on the pleadings, admissions on file, affidavits, and all other documents enclosed in the record of this case, for violations of plaintiff's rights pursuant to 15 U.S.C. §1681 et seq, 12 U.S.C. §3401 et seq, California Government Code §7460 et seq, U.S. Constitutional rights, California Constitutional rights, and plaintiff's federal and/or state rights to privacy (See Exhibits A-E, 1-23, and attached)

The FCRA §1681(a)(4) reads; "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."

"In passing this subchapter, Congress intended to prevent unreasonable or careless invasion of consumer privacy . . . ."
See In re TRW (E.D. Mich 1978) 460 F.Supp 1007

"This subchapter regulates conduct of consumer reporting agencies and users of consumer reports." See Kiblen v Pickle, Wash. App. 1982, 653 P.2d 1338, 33 Wash. App. 387

Plaintiff contends that Trans Union, Experian and Equifax are (See Exhibit A) "consumer reporting agencies", and City of Palo Alto, Magistrate Charles Hayden, Officer Dave Flohr, City of Menlo Park, FBI/REACT, Officer Alex Bouja, County of Santa Clara, D.A. James Sibley and D.A. Thomas Flattery, and California Attorney General's Office, D.A.G. Bud Frank are "users" of plaintiff's "consumer credit report(s)", pursuant to the FCRA 15 U.S.C. §1681 et seq.

Plaintiff contends that the search warrants for plaintiff's consumer credit report(s) issued by City of Palo Alto Magistrate Charles Hayden upon affidavit of Officer Dave Flohr, within Santa Clara County, to Trans Union located in Chicago Illinois, Experian located in Allen Texas and Equifax in Atlanta Georgia were not "the order of a court having jurisdiction to issue such an order" pursuant to §1681b(a)(1) and were therefore invalid and/or void on their face, unreasonable, in violation of §1681 et seq, the IV (4th) Amendment, and obtained for an impermissible purpose in violation of §1681 et seq.

"..... Execution of search warrant beyond county officer's jurisdiction violated the Fourth Amendment and was actionable under §1983."
The search warrants can only be operative in the territory in respect of which the issuing officer is clothed with judicial authority. See U.S. v Strother, (affirmed on other grounds) (certiorari granted on other grounds) (D.C. Cir 1978) 578 F.2d 397, 399 and Bishop Paiute Tribe v County of Inyo (CA.9 (Cal) 2002) 275 F.3d 893, citing Sycuan Band of Indians v Roache (S.D.Cal 1992) 788 F.Supp.1498

Page 3/26

County of Santa Clara, D.A. Thomas Flattery, in the Jun 02 2005
Opposition To Motion To Traverse, Quash And To Suppress Evidence,
the Jun 29 2005 Opposition To Motion To Quash Subpoena Duces
Tecum, and the Jun 21 2005 Opposition To Motion To Suppress Evidence
(P.C. 1538.5) And Set Aside The Information (See Exhibit B-attached)
states the following;

A) Plaintiff "Has No Privacy Interest In Records Held by A
Third Party", " He has no standing to object to those
warrants," "A person has no expectation of privacy in information
that is provided to a third party" (citing United States v Miller (1976)
425 U.S. 435, "following Proposition 8, the Admissibility of Evidence
in California Criminal trials depends on the federal Rules of Exclusion"
citing In re Lance W. (1985) 37 Cal 3d 873, 873, and "Federal law
does not provide a remedy for a challenged search of the third
party records that are voluntarily conveyed to the businesses and
exposed to their Employees in the ordinary course of business"
citing People v Pearson, 169 Cal App.3d 319 (citing Miller, supra 401 U.S. at 442).

Plaintiff contends that plaintiff's consumer credit report(s) were disclosed,
obtained and used in violation of the FCRA § 1681 et seq

Plaintiff contends that plaintiff has a privacy interest, standing and an
expectation of privacy, (reasonable, objective and/or subjective), and that
there are remedies to challenge the search warrants available, including
by means of the federal Rules of Exclusion and the state Rules of Exclusion.

"The government's general assertion that Castiglione has no standing to bring this motion is <u>clearly erroneous</u>. First of all, the cases cited by the government are all cases which precede that passage of the Right to Financial Privacy Act. Secondly, sections 3416, 3417 and 3418 of Title 12 specifically place jurisdiction in district courts generally, and prescribe judicial remedies that are available to the person affected, including injunctive relief." See In re Castiglione, (E.D. Cal. 1984) 587 F. Supp. 1210 (underline added)

Plaintiff also contends that Santa Clara County D.A. Thomas Flattery's general assertion that plaintiff has no standing is erroneous, particularly by citing "Miller" which preceded the Right to Financial Privacy Act and the California Right To Financial Privacy Act which are almost identical in prescribing judicial remedies that are available to the person affected, including injunctive relief. As such, plaintiff contends that plaintiff has standing to challenge the search warrant's validity used to obtain plaintiff's consumer credit reports, financial and other records.

Plaintiff contends that the out-of-state/out-of-jurisdiction search warrants and their execution was invalid, in violation of plaintiff's rights pursuant to § 1681 et seq., § 3401 et seq., § 7460 et seq., and the U.S. and state Constitutions.

"If the sheriff acts outside this territorial jurisdiction, the sheriff has no law enforcement powers other than those that any private citizen would have. People v Pina, 72 Cal. App. 3d Supp. 35, 39, 140 Cal. Rptr. 270, 272 (1977)." See Sycuan Band of Mission Indians v Roache, supra.

"When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state law - cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential."

See Myers v Bennett Law Offices, (C.A. 9 (Nev) 2001) 238 F.3d 1068

Plaintiff contends that defendants City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr, City of Menlo Park and FBI/REACT Officer Alex Bouja, County of Santa Clara - D.A. James Sibley and DA. Thomas Flattley and California Attorney General's Office - D.A.G. Bud Frank "unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential".

See Myers v Bennett Law Offices, supra.

"When introducing the Fair Credit Reporting Bill in the Senate, Senator Proxmire stated that the bill would require;
  "... that credit bureaus have in effect procedures for guaranteeing the confidentiality of the information they collect and that no such information be released to noncreditors such as governmental investigative agencies without the express consent of the person involved." 114 Cong. Rec. 24902 (1968). See Belshaw v Credit Bureau of Prescott, 392 F.Supp 1356, 1360, n. 4 (D. Ariz. 1975)" See Hansen v Morgan (C.A. 9 (Idaho) 1978) 582 F.2d 1214

Plaintiff did not give the "Express Consent" nor was plaintiff notified of the release of plaintiff's credit report(s) to governmental investigative agencies.

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr obtained and used plaintiff's consumer credit report(s) negligently, willfully and/or in reckless disregard for plaintiff's rights to privacy and/or pursuant to §1681 et seq, and for the impermissible purpose of a criminal investigation and prosecution, based on the affidavit of City of Palo Alto - Officer Dave Flohr.

"It is uncontested that defendant requested the credit report in connection with his criminal investigation of Allen. Neither a criminal investigation nor a state grand jury subpoena constitute a permissible purpose to furnish a consumer report under §1681b."
See Allen v Calvo (D.Or. 1993) 832 F.Supp. 301-motion granted on other grounds

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden exceeded his jurisdiction, acted as a rubberstamp, was not neutral nor detached, and did not make a reasoned determination in issuing the search warrants for plaintiff's consumer credit report(s) from Trans Union located in Chicago Illinois, Experian located in Allen Texas and Equifax located in Atlanta Georgia, including but, not limited to; the overbroad scope of the search warrants, i.e., Requesting plaintiff's entire file, the out-of-state / out-of-jurisdiction locations, and the "Non-Disclosure" stipulations of the search warrants.

Plaintiff contends that the City of Palo Alto search warrants used to obtain plaintiff's consumer credit reports are not "the order of a court having jurisdiction" pursuant to §1681 b(a)(1), and they violated plaintiff's IV fourth Amendment rights, along with plaintiff's rights to privacy and should be suppressed.

"The Court also believes that such characterization would be inconsistent with the function Congress intended a court order to serve under the Act, i.e., to ensure that a consumer's privacy is not unduly impinged upon by disclosure of his credit file to third parties including governmental investigative agencies, which are not seeking the information for credit-related, business purposes. In order to provide this protection for the consumer, it is necessary for a court to consider the purposes for which disclosure is sought and to make a reasoned determination as to whether granting the requesting party access to the consumer's file for such purposes would violate the consumer's rights."

See In re Grand Jury Subpoena Dukes Tecum (N.D.GA 1980) 498 F.Supp. 1174

"(D) Law Governing Search Warrants

The defendants next argue the ~~warrant~~ was valid as a state warrant and, thus, the evidence seized would be admissible in a subsequent federal prosecution. The warrant clearly was not valid under Federal Rule of Criminal Procedure 41(a). This Rule allows a state court to issue a warrant for an alleged violation of federal law. However, the warrant may only be issued upon the request of a federal law enforcement officer or attorney. United States v Radlick, 581 F.2d 225, 228 (9th Cir 1978). The October 1991 search warrants were not issued at the request of any federal officer or attorney. And, therefore, the search warrants were not valid ~~federal~~ search warrants."

See Sycuan Band of Mission Indians v Roache, supra.

Page 7/26

Plaintiff contends that the search warrants were invalid, in violation of the IV (4th) Amendment, the FCRA §1681 et seq, federal and state privacy laws, and this court has the authority to accord a remedy under the exclusionary rule being that suppression of the out-of-state search warrants would serve the remedial purpose of deterring future unlawful police conduct thereby promoting the fourth Amendment guarantee against unreasonable searches and seizures.

"According a remedy under the exclusionary rule requires the court to evaluate whether the remedy fashioned serves the remedial purpose of deterring future unlawful police conduct thereby promoting the fourth Amendment guarantee against unreasonable searches and seizures."
See U.S. v SDI Future Health, Inc., (D. Nev 2007) 491 F.Supp. 2d 975

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden did not disclose the purpose for obtaining plaintiff's consumer credit report(s) to TransUnion, Experian or Equifax, as the affidavit of Officer Dave Flohr was not attached to the search warrants, and was thereby requesting and/or obtaining plaintiff's consumer credit report(s) for City of Palo Alto Officer Dave Flohr to be used in a criminal investigation and prosecution, in violation of the FCRA §1681 et seq. See Allen v Calvo, supra, motion granted on other grounds.

Plaintiff contends that City of Palo Alto-Magistrate Charles Hayden and Dave Flohr obtained plaintiff's consumer credit report(s) under false pretenses, pursuant to, and in violation of §1681 g, willfully and in reckless disregard for plaintiff's rights.

Page 8/26

City of Palo Alto search warrants' affidavits do not purport to
seek plaintiff's consumer credit report(s) for the impermissible
purpose of obtaining plaintiff's T-Mobile/phone Account information.
Yet, City of Palo Alto using plaintiff's consumer credit report(s) (TransUnion)
subsequently obtained plaintiff's T-Mobile phone Account information.
   See T-Mobile search warrant affidavit in Exhibits

"User who purports to seek consumer report for permissible purpose,
   while secretly seeking report for impermissible purpose, is subject to
   liability under Fair Credit Reporting Act (FCRA) for obtaining information
   under false pretenses." See Allen v Calvo, supra, motion granted on other grounds.
"("User" includes the ultimate destination of report as well as person
   who acquired report for another.)"

City of Palo Alto Officer Dave Flohr showed plaintiff's consumer credit report(s)
to Menlo Park and FBI/REACT Officer Alex Bouja who then used plaintiff's
consumer credit report regarding plaintiff's Visa credit card Account to
contact Visa and subsequently obtain plaintiff's financial record from
Visa without legal process, in violation of the FCRA §1681 et seq and
the RFPA §3401 et seq and/or the CRFPA §7460 et seq.
   See Visa USA search warrant affidavit in Exhibits

Plaintiff contends, identically, that County of Santa Clara - James Sibley and
Thomas Flattery and California Attorney General's Office Bud Frank used and obtained
plaintiff's consumer credit report in violation of §1681 et seq, for the impermissible
purpose of a criminal investigation and prosecution. (See Allen v Calvo, supra.)

Plaintiff contends that even had City of Palo Alto Dave Flohr's reciept of plaintiff's consumer credit report(s) been deemed lawful that lawfulness did not somehow automatically extend to City of Menlo Park and/or F.B.I/REACT officer Alex Bouja, Santa Clara County or California Attorney General.

"Lawful reciept of consumer credit report by vice president of collection agency did not somehow automatically extend to Attorney for the collection agency; Attorney did not obtain the report, pursuant to the Fair Credit Reporting Act (FCRA), from any "consumer Reporting agency" but, rather, he obtained it from vice president, and he did not obtain it for any purpose enumerated in the statute." See Chester v Purvis, supra.

"Provision of Fair Credit Reporting Act (FCRA) governing permissible purposes of consumer credit reports governs not merely obtaining such a report, but using one as well." See Chester v Purvis, supra.

Plaintiff contends that City of Menlo Park, F.B.I/REACT officer Alex Bouja obtained and used plaintiff's consumer credit report(s) for the impermissible purpose of a criminal investigation and prosecution, negligently, willfully and/or in reckless disregard for plaintiff's rights pursuant to § 1681 et seq. (Also see Duncan v Handmaker, (C.A. 6 (KY) 1998) 149 F.3d 424)

Plaintiff contends that the request for plaintiff's records by City of Palo Alto from Trans Union, Experian and/or Equifax should have been limited to "§ 1681f Disclosures to governmental agencies", not plaintiff's entire credit report/file.

Page 10/26

"Under Fair Credit Reporting Act (FCRA), credit reporting agency
could not disclose identifying information about consumer to government
unless it was of type specifically allowed by statutory provision, i.e.,
name, address, former addresses, places of employment, and former
places of employment." See Soghomonian v U.S. (E.D. Cal 2003)
278 F.Supp.2d 1151

Plaintiff contends that Transunion, Experian and Equifax should not have
complied with the City of Palo Alto search warrants which were not an order
of a court having jurisdiction to issue such an order pursuant to §1681b,
and they should not have complied with the search warrant's request for
plaintiff's consumer credit report instead of being limited to §1681f.

"Under Fair Credit Reporting Act, corporation including division
which provided subscribers with consumer credit information could
not comply with grand jury subpoena duces tecum seeking credit
information on particular individual where subpoena was not authorized
by magistrate or district court." See In re Green (C.A.9(Cal.) 1980)
633 F.2d 825

Plaintiff contends that the out-of-state/out-of-jurisdiction search warrants infringed
and invaded plaintiff's privacy rights, unlike "Rakas v Illinois" cited by Santa Clara
County D.A. Thomas Flattery, thereby giving plaintiff standing to at least challenge the
seizure of plaintiff's consumer credit reports, financial records and other personal information.
See U.S. v Kimball (C.A.1(Me.) 1994) 25 F.3d 1

PAGE 10A/26

Plaintiff contends that the subsequent search warrants based on the obtaining, disclosing and use of plaintiff's consumer credit report(s), including but not limited to; Visa USA, T-Mobile, Avis, Hertz, Airline Reporting Corporation (A.R.C.), San Francisco International Airport, Public Storage, Plaintiff's laptop, plaintiff's Las Vegas residence should all be suppressed and/or ruled inadmissible, and deemed fruit of a poison tree.

Plaintiff contends that, as the search warrants were issued pursuant to California Government Code §7475, the California Right To Financial Privacy Act §7460 et seq clearly provides a remedy under State Exclusionary Rule and standing for plaintiff to challenge the admissibility of evidence obtained in violation of State law, contrary to County of Santa Clara D.A. Thomas Flattery's stated belief.

Plaintiff contends that the citing of In re Lance W, supra, by County of Santa Clara D.A Thomas Flattery regarding Proposition 8 is misplaced.
   "The full text of section 28(d) states: "Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two thirds vote of the membership in each house of the legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and postconviction motions and hearings, or in any trial or hearing of a juvenile court for a criminal offense, whether heard in a juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." See In re Lance, supra.

Plaintiff contends that the CRFPA §7460 et seq takes precedent and pro tanto overrides and annuls Proposition 8 referred to in In re Lance W., supra, and further allows plaintiff to challenge the search warrants under California's vicarious exclusionary rule, thus granting plaintiff a state and/or federal remedy/remedies.

"§7491 Chapter to supersede other laws
Should any other law grant or appear to grant power or authority to any person to violate the provisions of this chapter, <u>the provisions of this chapter shall supersede and pro tanto override and annul such law, except those statutes hereinafter enacted which specifically refer to this chapter</u>." (underlines added)

"7489 Admissibility of evidence
<u>Evidence obtained in violation of this chapter is inadmissible in any proceeding except a proceeding to enforce the provisions of this article.</u>"

Plaintiff contends that since Proposition 8 and In re Lance W., supra, were after the CRFPA §7460 et seq and do not "specifically refer" to §7460 et seq in any way, then the CRFPA §7460 et seq "shall supersede and pro tanto override and annul", and therefore take precedent, regarding Proposition 8 and In re Lance W., supra. Plaintiff contends that if the legislature/adopting body in Proposition 8 and In re Lance W., supra, therefore would have or should have specifically referred to §7460 et seq. "The adopting body is presumed to be aware of existing laws and judicial construction thereof. ..." See In re Lance W., supra.

Plaintiff contends that; under the familiar rule of construction, expressio unius est exclusio alterius, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. So since the exception is clear in § 7491 and Proposition 8 and/or In re Lance W., supra, do not "specifically refer to" § 7460 et seq, then Proposition 8 and/or In re Lance W., supra, should not "be implied or presumed."

Plaintiff contends, and requests that this court apply, the well-established principles of construction are that any ambiguities regarding § 7460 et seq, Proposition 8, In re Lance W., supra and/or California's exclusionary rule, should be resolved in favor of the plaintiff.

"Under California law, legality of a search and seizure may be challenged by anyone against whom evidence thus obtained is used." See Zucher v Stanford Daily (U.S. Cal. 1978) 98 S.Ct 1970, rev. on other grounds

Plaintiff contends that the TransUnion, Experian and Equifax search warrants violated the FCRA §1681 et seq, the Visa USA, T-Mobile, Avis, Hertz, ARC, Public Storage, plaintiff residence in Las Vegas, searches violated plaintiff's rights to privacy, the subsequent subpoenas duces tecums, were fruit from the poison tree, the TransUnion, Experian, Equifax, Visa USA, T Mobile, Avis, Hertz and ARC search warrants were in violation of the (IV) Fourth Amendment and should all be suppressed, quashed, ruled inadmissible as evidence in any criminal proceeding, and/or declaratory and/or injunctive relief should be granted by this court.

Page 13/26

Plaintiff contends that Santa Clara County D.A. Thomas Flattery's citing of United States v Miller, supra, is misplaced and does not apply.

"The Right To Financial Privacy Act

Congress enacted the Right to Financial Privacy Act in 1978 in response to United States v Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed 2d 71 (1976) in which the Supreme Court held that a customer of a financial institution has no standing under the Fourth Amendment of the Constitution to contest government access to his financial records. H.R. Rep. No. 1383 95th Cong. 2nd. Sess. 33, reprinted in (1978) U.S. Code Cong. & Ad. News 9273, 9306 (hereinafter H.R. Rep No. 1383). Although the Court in Miller recognized the sensitive nature of a banking customers financial records, it concluded that since the records are the property of the financial institution, the customer has no recognizable privacy interest in them. 425 U.S. at 440-441, 96 S.Ct. at 1622-23. Congress nevertheless, noting that the Fourth Amendment does not prevent or advise against legislative or executive efforts to establish nonconstitutional protections against possible abuse, see Zurcher v Stanford Daily, 436 U.S. 547, 567, 98 S.Ct. 1970, 1982, 56 L.Ed 2d 525 (1978), enacted the RFPA with substantial input on the part of the law enforcement agencies. H.R. Rep No. 1383 at 4. In so doing, Congress and most law enforcement agencies held the belief that privacy protection and effective law enforcement were compatible. Id. The basic thrust of the Act is that customers of financial institutions are entitled to notice of any government request for their financial records and an opportunity to challenge the request." (underlines added) See Hunt v U.S. S.E.C. (N.D. Tex 1981) 520 F.Supp. 580

Plaintiff is a "customer" of the "financial institution" of Visa, and F.B.I/REACT officer Alex Bouja is a "government authority" and person", within the meaning of §3401 et seq.

Plaintiff is a "customer" of the "financial institution" of Visa, and City of Palo Alto - Magistrate Charles Hayden, Officer Dave Flohr, City of Menlo Park - Alex Bouja, County of Santa Clara - D.A. James Sibley and Thomas Flattery, and California Attorney General's Office - D.A.G. Bud Frank, are a "local agency", "person", and "state agency", within the meaning of §7460 et seq.

Plaintiff contends that TransUnion, Experian and Equifax failed to follow reasonable procedures, including but not limited to; by not obtaining the required certification of §1681e Compliance procedures, and disclosing plaintiff's consumer credit report(s) based on the invalid search warrants which contain "Non-Disclosure" stipulations, read "Pursuant to California Government Code §7475, were out-of-state search warrants, and were not the order of a court having jurisdiction to issue such an order, in violation of §1681 et seq.

Plaintiff contends that therefore TransUnion, Experian and Equifax acted negligently, willfully and/or in reckless disregard for plaintiff's rights pursuant to §1681 et seq. See Centuori v Experian Information Solutions, Inc., supra.

" § 168 le Compliance Procedures

(A) Identity and purposes of credit users

Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 168lc of this title and to limit the furnishing of consumer reports to the purposes listed under Section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of the new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title. "

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr, City of Menlo Park and F.B.I/REACT Alex Bouja, County of Santa Clara - D.A. James Sibley and Thomas Flattery, and California Attorney General's Office - DAG. Bud Frank violated the FCRA §1681 et seq including but not limited to, §1681b(f) by obtaining and using plaintiff's consumer credit report

Plaintiff contends that the search warrants' "Non-Disclosure" stipulation was not supported by probable cause, and violated plaintiff's right to be notified and to possibly contest the disclosures of the search warrants prior to their execution.

Page 16/26

"It is entirely possible, and even probable that the financial institutions of which the Plaintiffs are customers could have released the records without the Plaintiffs ever having knowledge of the disclosure. Without the availability of injunctive relief then, the entire purpose of the Act is gutted. . . . . . . . As a consequence, the customer's records are or may be released without the customer ever having the opportunity to challenge the request. The initial determination made by the requesting government authority that the RFPA does not apply effectively defeats the customer's challenge rights under the Act."
SEE HUNT v U.S. S.E.C., supra.

Plaintiff, likewise, makes the same analogy regarding the search warrants and their "Non-Disclosure" stipulations, as well as the Santa Clara County - D.A. Thomas Flattery's argument and Santa Clara County's denial of plaintiff's objections to the disclosure, obtaining and use of plaintiff's consumer credit report(s), financial records) and other personal records.

Plaintiff requests that this court grant relief for the enclosed multiple violations in the form of suppression, permanent injunctive relief, declaratory relief and/or rule that all evidence obtained be deemed inadmissible in any criminal proceeding, thereby reversing the state court's previous decisions regarding the disclosure, obtaining and use of plaintiff's consumer credit report(s), financial records) and all other information subsequently obtained therefrom.
PAGE 16(A)/26

"§1681b(f) Certain use or obtaining of information prohibited

A person shall not use or obtain a consumer report for any purpose unless --

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

Plaintiff contends that VISA violated §3401 et seq and/or §7460 et seq by providing F.B.I / REACT and City of Menlo Park - Alex Bouta with plaintiff's financial record(s) without legal process and/or compliance with §3401 et seq and/or §7460 et seq. (See VISA USA search warrant affidavit in EXHIBITS)

"§3402 Access to financial records by Government authorities prohibited; Exceptions

Except as provided by section 3403(c) or (d), 3413 or 3414 of this title, no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless the financial records are reasonably described and--:......"

Plaintiff also contends that Visa should not have provided plaintiff's financial records based on the search warrants, in violation of §7460 et seq.

" § 3403 Confidentiality of financial records

(a) Release of records by financial institutions prohibited

No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter. "

" § 7470 Requests for disclosures; particularity and scope; records; crimes

(A) Except as provided in Section 7480, no officer, employee, or agent of a state or local agency or department thereof, in connection with a civil or criminal investigation of a customer, whether or not such investigation is being conducted pursuant to formal judicial or administrative proceedings, may request or recieve copies of, or the information contained in, the financial records of any customer from a financial institution unless the financial records are described with particularity and are consistent with the scope and requirements of the investigation giving rise to such request and: .... "

"Further, the financial institutions may not release the requested financial records until the government "certifies in writing to the financial institution that it has complied with the applicable provisions" of the RFPA, including notice to the customer of the existence of the subpoena, summons, search warrant, or request, the nature of the government's inquiry, and permitting the customer sufficient time to respond to the notice."

PAGE 18/26 (SEE Anderson v LaJunta State Bank, infra.)

"§ 7471 Requests in connection with civil or criminal investigation of customer; nondisclosure; liability for disclosures and refusals to disclose

(A) Except in accordance with requirements of Title 11 (commencing with Section 14160) of Part 4 of the Penal Code or Section 7473, 7474, 7475, or 7476, no financial institution, may provide or authorize another to provide to an officer, employee, or agent of a state or local agency or department thereof, any financial records, copies thereof, or the information contained therein, if the director, officer, employee, or agent of the financial institution knows or has reasonable cause to believe that the financial records or information are being requested in connection with a civil or criminal investigation of the customer, whether or not an investigation is being conducted pursuant to formal judicial or administrative proceedings."

Plaintiff contends that City of Menlo Park F.B.I./REACT Alex Bouja violated plaintiff's rights to privacy by obtaining plaintiff's records from Visa, Avis, Hertz, ARC, United Airlines, plaintiff's luggage from United Airlines checked baggage system, and seizing and searching plaintiff's cellphone/cell phone numbers in violation of the Fourth Amendment, without legal process, along with City of Palo Alto Officer Dave Flohr. Plaintiff requests that all of which be suppressed and/or deemed inadmissible in any criminal proceedings.

(See Visa, Avis, Hertz and ARC search warrants, affidavits and Exhibits A-E, 1-23)

PAGE 19/26

"The Right to Financial Privacy Act has comprehensive provisions concerning the customer's right to know of government attempts to procure his/her/its financial records." .....

"§3412(b) requires notice to the customer that the agency that originally procured the records is transferring the records to another governmental agency or department, a practice which is generally prohibited by the Act "unless the transferring agency or department certifies in writing that there is notice to believe that the records are relevant to a legitimate law enforcement inquiry within the jurisdiction of the recieving agency or department." See In re Castiglione, supra.

Plaintiff contends that FBI/REACT Alex Bouja violated §3401 et seg by obtaining plaintiff's financial records without legal process from VISA and then transferring plaintiff's financial records to City of Palo Alto Officer Dave Flohr, who then used and subsequently obtained plaintiff's financial records from VISA with the Visa USA search warrant, hence in violation of §7460 et seg. See Visa USA search warrant affidavit

"Oral response by bank employee to oral request by Air Force investigator regarding bank records of service member was request for disclosure of financial records and was governed by Right to Financial Privacy Act (RFPA), and thus, employee's response to inquiry, which was not proceeded by mandated procedural steps, violated RFPA; oral disclosure was bank-related information derived from service member's bank records, and RFPA does not require that such information be in writing to be protected." See Anderson v La Junta State Bank (C.A.10(Colo)1997) 115 F3d 756

PAGE 19A/26

"A credit card holder would reasonably expect that information about him disclosed by charges made on a credit card will be kept confidential unless disclosure is compelled by legal process,...."
See People v Blair (Cal 1979) 159 Cal. RPTR 818, 25 Cal. 3d 640 - motion granted on other grounds.

Plaintiff contends that the scope of the search warrants were too broad to comport with the particularity requirements of the Fourth Amendment and/or § 7470 and/or the reasonableness requirements of § 3402.

"Scope of search was unreasonable, where documents provided by credit card company to prosecution constituted entire file of company relating to defendant's account." See People v Blair, supra.

"Finally, I previously noted that section 3402 imposes the requirement that a government authority must "reasonably describe" the financial records which it is seeking if the request falls within the ambit of the RFPA. The legislative history of the Act states quite bluntly that "this term is intended to mean that records being sought must be described as specifically as possible, and that a blanket request for 'All records' is insufficiently specific. H.R. Rep. No. 1383 at 50." See Hunt v U.S.S.E.C., supra.

Plaintiff contends that due to the multiple violations aforementioned that all search warrants should be deemed invalid, suppressed and/or inadmissible, that the subsequent search warrants and subpoenas should be suppressed, quashed and/or ruled inadmissible and/or plaintiff should be granted declaratory and/or injunctive relief, and that this Motion for Summary Judgment should be granted.

Page 20/26

"§ 3418 Injunctive Relief
"In addition to any other remedy contained in this chapter, injunctive relief shall be available to require that the procedures of this chapter are complied with. In the event of any successful action, costs together with reasonable attorney's fees as determined by the court may be recovered."

"§ 7487 Injunctive Relief
In addition to any other remedy contained in this chapter or otherwise available, injunctive relief shall be available to any customer aggrieved by a violation, or threatened violation, of this chapter. In any successful action by the customer, costs together with reasonable attorney's fees as determined by the court may be recovered."

"Injunctive relief is available under section of Right to Financial Privacy Act to require that procedures of Act are complied with without regard to whether or not government authority has actually obtained access to customer's financial records." See Hunt v U.S. S.E.C., supra.

"Where government authority has acted with reckless disregard for rights of individual under Right to Financial Privacy Act and failures to comply with procedures of Act are not merely technical defects, injunctive relief is warranted." See Hunt v U.S. S.E.C supra.

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr did not have good faith in the Trans Union, Ex Perian, EQuifax, Visa USA, T-Mobile, A.R.C. or Hertz search warrants.

Visa USA is outside the jurisdiction of City of Palo Alto, pursuant to § 7473(d)(1), T-Mobile is located in the state of Washington, A.R.C. is located in the state of Virginia, Hertz is located in the state of Oklahoma, Along with Trans Union, Experian and EQuifax being located outside the state of California, as previously noted.

Plaintiff contends that a reasonable officer would have known that the search warrants' locations of the above-mentioned states, were outside the officer's jurisdiction, in violation of the Fourth Amendment.

"A judicial officer's writ cannot run outside the officer's jurisdiction." See U.S. v Strother, supra.

"The Government bears the burden of proving that in searching for and seizing the disputed evidence, the searching agents held an Objective Good faith belief that the Search Warrant was valid. Properly relying on the holdings of the 9th Circuit Court of Appeals in United States v Kow, 58 F.3d 423 (9th Cir 1995) and Center Art Galleries-Hawaii, Inc. v United States, 875 F.2d 747 (9th Cir 1989), the Magistrate Judge correctly found they did not." See U.S. v SDI Future Health, Inc., supra.

In "Seals", the court discussed the three factors to be considered in determining whether the exclusionary rule should apply in a particular case: "(1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error." See United States v Seals, 411 F.3d 1124, 1128 (9th Cir 2005)

Plaintiff contends that plaintiff has a reasonable, objective and subjective expectation of privacy, as well as a privacy interest, in the credit reports and financial records, based on the (IV) Fourth Amendment, the FCRA §1681 et seq, the RFPA §3401 et seq, the CRFPA §7460 et seq and the California Constitution, that society would recognize as objectively reasonable in this 21st Century, unlike in United States v Miller, supra, and that plaintiff's personal paper(s) consumer credit report(s) and/or financial record(s) will only be obtained by valid legal process, including, but not limited to; particularly when obtained by a search warrant.

"The Fourth Amendment warrant requirement insures that the inferences supporting probable cause be drawn by a neutral and detached magistrate, rather than by those engaged in gathering evidence of crime." See U.S. v SDI Future Health, supra.

Page 23/26

"For Pappas to prevail on his summary judgment motion, he must demonstrate that no genuine issue of material fact exists over four elements. First, Pappas must show that the Calumet Police Department is a "user" within the FCRA. Since the City admits that it is in fact a "user" under the FCRA, no genuine issue of material fact exists concerning this element. Second, Pappas must demonstrate that the credit report obtained by the Calumet Police is a "consumer report" under the FCRA. Third, Pappas must establish that the Calumet Police obtained his credit report under false pretenses. And fourth, Pappas must show that there is no dispute of fact that the Calumet Police acted willfully or negligently when it obtained his consumer report under false pretenses."
SEE PAPPAS v City of Calumet City, SUPRA.

Plaintiff contends that there are no genuine issues of material fact over the four elements noted in "Pappas" for plaintiff to prevail on his summary judgment motion, as follows;

    1) The City of Palo Alto, County of Santa Clara admit that it is in fact a "user" within the FCRA

    2) There is no doubt that plaintiff's "consumer report" was disclosed, obtained and used. (See Exhibits A-E, 1-23)
(Also, see Attached Exhibit B-July 21, 2005 -Opposition -"II. Factual and Procedural History")

    3) The City of Palo Alto, County of Santa Clara obtained plaintiff's consumer credit report under false pretenses, for impermissible purposes, with invalid search warrants that were not an order of a court having jurisdiction to issue such an order, and by subsequently using plaintiff's consumer credit report for other purposes not stated in their affidavits.

PAGE 24/26

4) City of Palo Alto, County of Santa Clara, City of Menlo Park, F.B.I./REACT, California Attorney General's Office, Magistrate Charles Hayden, Officer Dave Flohr, Officer Alex Bousa, D.A. James Sibley, D.A. Thomas Flattey and D.A.G. Bud Frank, acted negligently, willfully and/or in reckless disregard for plaintiff's rights, including but not limited to; by obtaining and/or using plaintiff's consumer credit report(s) without certifying with the credit reporting agencies pursuant to §1681b(f), by using plaintiff's consumer credit report(s) for impermissible purposes, and by obtaining plaintiff's consumer credit report(s) with invalid out of state/out of jurisdiction search warrants that were not an order of a court pursuant to §1681b.

"Any person who willfully or negligently fails to comply with any requirement under the FCRA with respect to any consumer may be civilly liable to that consumer. See 15 U.S.C. §§1681n, 1681o, and 1681q. Consequently, if a user acquires a consumer credit report under false pretenses in violation of §1681q, then the consumer may recover civil damages from that user." See Pappas v City of Calumet City, supra.

Plaintiff contends that for the enclosed mentioned reasons, plaintiff has established a prima facie case as needed to prevail on summary judgment, and hereby requests that this court grant plaintiff summary judgment and allow plaintiff's case to proceed to trial for actual, compensatory and punitive damages. (Note: In 1996, Congress amended §1681n to expressly provide a cause of action against a party for "obtaining a consumer report under false pretenses or knowingly without a permissible purpose." See Duncan v Handmaker (C.A.6(KY.)1998)149 F.3d 424)

Plaintiff requests that this Court exercise pendent and/or ancillary jurisdiction over all subsequent issues which have sprung forth directly and/or indirectly from the violations of the FCRA §1681 et seq, the RFPA §3401 et seq, the CRFPA §7460 et seq, federal and state constitutional rights, and/or plaintiff's rights to privacy, all of which, have been raised and/or exhausted in the California Supreme Court, and all of which this Court has jurisdiction.

Those claims include, but are not limited to; ineffective assistance of counsel, statute of limitation violations, illegal search and seizure, excessive bail, due process and equal protection violations, prosecutorial misconduct, and suggestive identification, as noted in California Supreme Court case numbers S156104, S157535 and the Petition for Review.

Plaintiff contends that plaintiff's participation in the Santa Clara County Regimented Correction Program (RCPI) and subsequent completion triggers the due process rights and equal protection rights of the U.S. Constitution, where the state has created a liberty interest that upon successful completion of the RCP boot camp-style diversion program pursuant to California Penal Code 1000-1001.75 and the Community-based Punishment Act P.C. 8050 et seq, plaintiff would be released as other participants were released. (SEE THE RCP certificates in EXHIBITS)

Plaintiff thereby request that this Court order plaintiff's immediate release, hold an evidentiary hearing and appoint counsel, and/or reverse plaintiff's state court criminal conviction and grant plaintiff immediate release on personal recognizance.

PAGE 25/26

"Appellant had Remained incarcerated until November 4, 1998, at which time she was released to the Regimented Correction Program. This program included 12 weeks of treatment while incarcerated and release to a sober living environment. The final phase of the program involved strict supervision by a probation officer. Appellant was currently in the final phase of the program." See In re Brittany C, (Cal. APP 6 Dist 1999) 90 Cal Rptr. 2d 737

Plaintiff was a participant, and successfully completed the same Regimented Correction Program as In re Brittany C, supra, in the same Santa Clara County, and therefore should be given the same release, and not be treated arbitrarily, and now be granted an immediate order of release.
   "In Tracy, we held that a participant in a temporary release program must be provided with a Wolff-type hearing before he or she may be deprived of his or her liberty interest in participating in that program." See Anderson v Recore (C.A. 2 (N.Y.) 2006) 446 F. 3d 342 - rev'd on other grounds, also see Wolff v McDonnell, 418 U.S. 539, 945. Ct 2963 and Morrissey v Brewer, 408 U.S. 471, 92 S. Ct. 2593

Lastly, plaintiff hereby demands a JURY Trial for compensatory, actual and/or Punitive damages pursuant to §1681n, §1681o, §1681s, §1417, §3415, §7985, §7986, §1983, and all other statutes that this court deems fit.
Wherefore, plaintiff prays for all Relief which is just and proper.

Dated: MAY 16, 2008



Signature of Plaintiff In Pro Se

EXHIBIT

A



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Consumer Response Center

August    02, 2007

Howard Young
F44590 3A 04-143
PO Box 3461
Corcoran, CA  93212

Re:  FTC Ref. No.  11189923

Dear Howard Young:

This is in response to your complaint concerning your credit report.  While the FTC does not collect or keep credit records on individual consumers, it is responsible for making sure that credit bureaus report accurate and up-to-date information.  We have enclosed a brochure that addresses your concerns.  Between the brochure and this letter we hope to be able to answer all of your questions.

Credit bureaus are private information distributors which report credit information supplied by retailers who use their services.  Most credit bureaus operate locally and you should look in the yellow pages of your telephone book under "credit bureaus" or "credit reporting agencies" to find the credit bureau or bureaus most likely to have your file.  It is possible that you may have a file in more than one local agency.   In addition to the local credit bureaus, there are three national credit bureaus that may have you on file:

- Equifax, P.O. Box 740241, Atlanta, GA 30374-0241
(800) 685-1111

- Experian, P.O. Box 949, Allen, TX 75013
(888) 397-3742

- Trans Union, 760 West Sproul Road, P.O. Box 390, Springfield, PA 19064-0390
(800) 916-8800

The Fair Credit Reporting Act ("FCRA") became effective in 1971 and was significantly amended in 1997.  It was designed to protect consumers against the circulation of inaccurate or obsolete information reported about them in consumer reports (a credit report is one type of consumer report).  Negative information, if accurate, generally may be reported for 7 years with the exception of a bankruptcy, which may be reported for 10 years.

The Fair Credit Reporting Act allows a consumer reporting agency to issue a consumer report to a person ("user") which it has reason to believe has a legitimate business need for the information in connection with a business transaction involving the consumer.   When

,permissible'purposes exist, parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumer's permission with the exception of employment and medical purposes. Credit reports containing medical information or reports issued to present or perspective employers always require the consent of the consumer.

The FCRA provides that any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined, imprisoned for not more than 2 years, or both. Authority to bring criminal action for violation resides solely in the U.S. Department of Justice, not the Federal Trade Commission.

While it is permissible under the FCRA for credit reporting agencies to furnish lists of names and addresses to credit card and insurance companies, Section 604(e) allows consumers to "opt out" of these lists. Proper notification of the credit reporting agency will exclude the consumer's name and address from any list that the credit reporting agencies routinely provide to credit card and insurance companies. To properly notify the credit bureau, you should call the toll free number that shall be included in the unsolicited offers, or contact the credit bureau directly and fill out an "opt out" form. The phone call will remove your name for two years. Filling out the credit bureau's "opt out" form will permanently keep your name off the lists.

If you are denied credit because of a credit report, the FCRA requires the creditor to tell you the name and address of the credit bureau which provided the information. You should then contact that credit bureau to obtain your credit report. You have the right to learn the nature, substance, and sources of information in your file at the credit bureau at the time of your request. Most consumers request disclosures in written form, however, at your request, disclosures may be obtained in person, upon reasonable notice, during normal business hours, or by telephone if the consumer makes a written request for telephone disclosure and pays the cost of the telephone call. For either type of disclosure, section 610 of the FCRA requires that you must provide proper identification before you receive this information. If you request the credit report within 60 days of the denial notice, the report is free. At other times, the credit bureau may charge a fee of $9.00.

Section 611 of the FCRA provides the procedure to be followed if the consumer disputes the accuracy of the information in the consumer's file. If information in your file is inaccurate, you should write both the consumer reporting agency and the creditor or other party who furnished the inaccurate information to the consumer reporting agency. Tell both of them that a dispute exists. You should provide both of them with any information that you have that will assist them in investigating your dispute. You should clearly state the facts concerning the disputed item and include copies of any letters or other documents that support your position. We suggest that you send your letters via certified mail, and that you retain a copy for your records. Remember, the right to dispute information applies only to items that are incomplete or inaccurate. The FCRA does not give you the right to dispute information just because it is unfavorable.

Consumer reporting agencies are required to investigate your dispute usually within 30 days, unless the bureau has reasonable grounds for determining that the dispute is frivolous or irrelevant. The creditor or other entity must also conduct a reinvestigation and notify the consumer reporting agency of the results within that 30-day period. If the item is wrong or can no longer be verified, it must be corrected or dropped from your file. If the item is verified by the creditor (or other information furnisher) and accepted by the consumer reporting agency, the

information will remain in your file at the consumer reporting agency. After the investigation, the consumer reporting agency will send you an updated copy of your credit report if it has changed as a result of the investigation. If, after the credit bureau has concluded its reinvestigation, you still don't agree that your report is accurate, you should write a short statement of 100 words or less giving your side of the situation and ask the consumer reporting agency to include it in your file. This statement or a summary of it then becomes a part of your credit report. If your report has changed based on your dispute, you have the right to ask the credit bureau to send your updated report to anyone who has received a copy of your credit report within the last six months (two years if sent to an employer or potential employer). You may be charged a small fee for having these updated reports sent.

If information is inaccurate or has not been verified by the furnisher within the 30-day period, it must be removed from your file. It can only be reinserted in the file if the creditor or other furnisher of information certifies its accuracy to the credit bureau. In turn the credit bureau must notify you in writing that the information is being reinserted. If the furnisher finds the information to be accurate and you still dispute the information, the furnisher cannot continue to report that information unless the information is accompanied by a statement that it is disputed.

Applying for credit, insurance, or financing for large purchases creates credit record inquiries. A creditor may ask your local credit bureau for the number of inquiries it has received about you. Excessive inquiries may indicate to a creditor that you may become overextended with too many active credit accounts and may cause a creditor to deny your application for credit because of excessive inquiries.

The FCRA does not specifically state how long inquiries may remain on the credit report. However, the FCRA does require that credit bureaus disclose to consumers any recipient of a consumer report for a two year period regarding employment purposes and a six month period for any other purpose. The law does not require that inquiries stay on the credit report for any specified period of time, but only that the credit bureau must be able to provide consumers with this information upon request. Because the FCRA does not specifically state how long inquiries may remain on the credit report, credit bureaus have the right to set their own policy or procedure regarding how long inquiries will remain on the credit report.

If you feel that your credit report does not accurately portray your creditworthiness, Regulation B, which implements the Equal Credit Opportunity Act, provides that you have the right to present information to a prospective creditor to show that your credit report does not reflect your ability or willingness to repay. It is possible that the consumer reporting agency used by the firm to which you applied for credit does not include in their files those organizations with which you have already established credit (an occurrence which is not in violation of the FCRA). To overcome this you may wish to provide the creditor with copies of bill statements and other information about your credit history from other creditors with which you have done business. The creditor must consider this information at your request. Also, if you know there is adverse information on your credit report, it is often best to explain the circumstances surrounding that item and provide other positive information to the creditor at the time you complete an application.

We cannot act as your lawyer or intervene in a dispute between a consumer and a credit bureau or between a consumer and a creditor or furnisher of information. The private enforcement provisions of the FCRA permit the consumer to bring a civil suit for willful

noncompliance with the Act. You may receive actual damages or punitive damages up to $1,000 for willful noncompliance (Section 616). You may also sue for negligent noncompliance and recover actual damages sustained by you (Section 617). Attorney's fees, as determined by the court, will be allowed for both forms of action. If you believe that the FCRA has been violated, we suggest that you consult a private attorney or a local legal services organization.


Sincerely yours,


Consumer Response Center


Enclosures:
1. Fair Credit Reporting (CRE-17)
2. How to Dispute Credit Report Errors (CRE-21)

EXHIBIT
B

1   GEORGE W. KENNEDY,
    DISTRICT ATTORNEY, #52527
2   THOMAS L. FLATTERY
    DEPUTY DISTRICT ATTORNEY, # 186856
3   COUNTY GOVERNMENT CENTER, WEST WING
    70 W. Hedding Street
4   San Jose, California 95110
    Telephone: (408) 792-2629
5

6   Attorneys for the People

**F I L E D**

JUN 0 2 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By _____ DEPUTY

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA,
8              IN AND FOR THE COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF
    CALIFORNIA,                        NO. CC454838
10
11                                     OPPOSITION TO MOTION TO
                          Plaintiff,   TRAVERSE, QUASH, AND TO
12                                     SUPPRESS EVIDENCE
                    v.
13                                     DATE: JUNE 2, 2005
    HOWARD YOUNG,                      TIME: 8:30 p.m.
14                                     DEPARTMENT: 23
                          Defendant.   ESTIMATED TIME : 10 min.
15

16                          I. Introduction.

17      DEFENDANT filed a motion to traverse and suppress evidence recovered with several

18   search warrants. While he quarrels with the affiant's wording on a few points, he fails to establish

19   that the affidavits contain any false statements or that they would not contain sufficient information

20   to justify a warrant even if the challenged wording were changed too something more to

21   DEFENDANT's liking. Moreover, DEFENDANT can not establish a constitutionally protected

22   expectation of privacy in records obtained from third parties.

23

24

25

                                                            **230**

## I.   DEFENDANT Has No Privacy Interest
## In Records Held By A Third Party.

DEFENDANT challenges nine separate search warrants relating to business records maintained by various companies with which he did business.  He has no standing to object to those warrants.

It is well settled that a defendant challenging a search, must first establish "a legitimate expectation of privacy in the invaded place." (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)  The United States Supreme Court clearly held that a person has no expectation of privacy in information that is voluntarily provided to a third party.  (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]).  As in the current case, the *Miller* defendant objected to disclosure of his personal banking records.  The High Court rejected his argument and explained:

> The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. (*United States* v. *White*, 401 U.S. 745, 751-752 (1971)). This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." (*Id.*, at p. 443 [48 L.Ed.2d at p. 79].)

Following Proposition 8, the admissibility of evidence in California criminal trials depends on the federal rules of exclusion. (*In re Lance W.* (1985) 37 Cal.3d 873, 873.)  Federal law does not provide a remedy for a challenged search of the third party records that are "voluntarily conveyed to the [businesses] and exposed to their employees in the ordinary course of business." (*People v. Pearson*, 169 Cal. App. 3d 319 (citing, *Miller*, supra 401 U.S. at 442)

Accordingly, DEFENDANT's motions regarding records from E-bay, Paypal, Transunion, Experian, Equfax, ARC, T-Mobile, Visa, Avis and Hertz all fail for lack of standing.

///

///

231

## II.    The Affidavit was proper.

In the leading case of *Franks v. Delaware* (1978) 438 U.S. 154, the Court held a defendant has a limited Fourth Amendment right to challenge the validity of a search warrant by controverting the factual allegations made in the supporting affidavit. A defendant is entitled to an evidentiary hearing on the affidavit's veracity *only after* making a *substantial preliminary showing* that (1) the affidavit includes a false statement made "knowingly and intentionally, or with reckless disregard for the truth," and (2) "the allegedly false statement is necessary to the finding of probable cause." (*Id.* at pp. 155-156; *People v. Hobbs* (1994) 7 Cal.4th 948, 974; *People v. Luttenberger* (1990) 50 Cal.3d 1, 9-11.)

Because there is a presumption of validity in favor of the affidavit supporting a search warrant, a challenger's attack,

> must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

(*Franks v. Delaware, supra,* 438 U.S. at p. 171.)

In addition to this substantial preliminary showing that a false statement knowingly and intentionally, or recklessly was included in the affidavit, a defendant must also show that when this misstatement is set to one side, the remaining content of the affidavit is insufficient to support a finding of probable cause. (*Id.* at pp. 171-172.) Only then is the defense entitled to an evidentiary hearing. If sufficient unchallenged information remains to support a finding of probable cause, the motion to traverse must be denied without a hearing.

Here, DEFENDANT challenges two statements contained in the affidavit. Neither is false.

**232**

1    First, DEFENDANT cites a statement that "over the last year several possible suspects have

2    been considered, but no evidence has been found to tie them to this series of crimes."

3    DEFENDANT then lists three individuals who were investigated with respect to one separate

4    incident each. However, as the affiant clearly stated, this case involved *a series* of nearly identical

5    incidents spanning several years. *The series of crimes* is connected by the suspect's "M.O." as

6    described in detail by the affiant. While the affiant acknowledged that other suspects were

7    considered, he correctly stated that none could be tied to *the series of crimes*. DEFENDANT has

8    done nothing to suggest that this statement is in any way untrue.

9
10    DEFENDANT next challenges a statement relating to an innocent buyer of stolen memory

11    chips who traced the chips back to a seller with the screen name of "Bro.H." DEFENDANT reads

12    that phrase to mean the buyer purchased the chips directly from Bro.H. The affiant makes no such

13    claim. Rather, the affiant correctly states that the buyer traced the chips and found that Bro.H had

14    listed 50 similar chips within about a week of when they were stolen. The statement is not false.

15    Moreover, even if the further explanation suggested by DEFENDANT were added, the result would

16    have no effect on probable cause.

17                        **III.    Conclusion.**

18    Defendant has failed to make a substantial preliminary showing that the affidavit is false and

19    that the challenged statements are necessary for finding probable cause. The court should not allow

20    an evidentiary hearing.

21
22    Dated: June 1, 2005

                        Respectfully submitted,
23                      GEORGE W. KENNEDY
                        DISTRICT ATTORNEY
24
                        By _____
25                      Tom Flattery
                        Deputy District Attorney


                                                **233**

1  GEORGE W. KENNEDY,
   DISTRICT ATTORNEY, #52527
2  THOMAS L. FLATTERY
   DEPUTY DISTRICT ATTORNEY, # 186856
3  COUNTY GOVERNMENT CENTER, WEST WING
   70 W. Hedding Street
4  San Jose, California 95110
   Telephone: (408) 792-2629
5

6  Attorneys for the People

**FILED**

JUN 2 9 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
By _____ Deputy
S. CHUA

7        SUPERIOR COURT OF THE STATE OF CALIFORNIA,
8           IN AND FOR THE COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF                    NO. CC454838
    CALIFORNIA,
10                                            OPPOSITION TO MOTION TO
                                              QUASH SUBPOENA DUCES
11                         Plaintiff,         TECUM

12              v.                            DATE: July 1, 2005
                                              TIME: 1:30 p.m.
13  HOWARD YOUNG,                             DEPARTMENT: 29 ②
                                              ESTIMATED TIME : 10 min.
14                         Defendant.

15  _____

16

17

18                        **I. Introduction.**

19      DEFENDANT is charged in a 31 count Information with Burglary and Grand Theft

20  resulting from 16 separate break-ins at high technology companies over the last four years.

21  DEFENDANT is tied to the various crimes in several ways, including through air travel and rental

22  car records showing that he traveled to the Bay Area just before each burglary and left just after.

23  DEFENDANT is identified with the air travel records through several of his credit cards used to

24  purchase the tickets.

25

                                                              640

1    Currently before the court is a motion to release subpoenaed documents relating to account

2  holder information for the various credit cards used by DEFENDANT and car rental records from

3  Hertz and Avis.[1]  On June 14, 2005, DEFENDANT filed a motion to quash each of those subpoenas

4  claiming that: (1) this court lacks jurisdiction to rule on the subpoenas; (2) police learned

5  DEFENDANT's credit card numbers though review of credit reports that DEFENDANT believes

6  police should not have obtained; and, (3) the subpoenas are overbroad.

7    DEFENDANT is wrong on each point.

8                                    **II.  Procedural History**

9    On April 21, 2005, DEFENDANT filed a Motion to Traverse, Quash and Suppress evidence

10  relating to thirteen Search Warrants executed while investigating this case.  Among

11  DEFENDANT's claims were that the police violated his privacy rights by using Search Warrants to

12  obtain his credit reports.  On April 25, 2005, the court entered a Not Guilty plea for DEFENDANT,

13  set a Preliminary Hearing Date for June 2, 2005 and continued his Motion to Traverse to be heard

14  with the Preliminary Hearing..

15    On May 10, 2005, DEFENDANT filed a Motion to Compel Discovery requesting, among

16  other things, various certifications, notices and jurisdictional agreements relating to the production

17  and use of his credit reports.  DEFENDANT apparently incorrectly interpreted 15 United States

18  Code, section 1681, et. seq. as requiring those certifications.  On May 16, 2005, Judge Lisk denied

19  DEFENDANT's motions relating to the certifications and agreements explaining that court

20  authorized Search Warrants justified production.

21    At the Preliminary Hearing on June 2, 2005, Judge Teilh denied DEFENDANT's motion to

22  traverse the search warrants.  DEFENDANT thereafter made an oral motion to suppress evidence

23

24

25

[1] The car rental records were previously produced through Search Warrants.  The purpose of the current subpoena is

641

1  arguing essentially that all subsequent evidence was the fruit of the search warrants for his credit

2  reports. Judge Tielh also denied that motion and held DEFENDANT to answer as charged.

3      The documents at issue in the current motion were originally subpoenaed to the Preliminary

4  Hearing. However, at the time Judge Teilh issued his Holding Order, no documents had arrived in

5  court. The People's Motion to Release trailed. The instant motion followed in which

6  DEFENDANT essentially challenges, for the fourth time, the same warrants relating to his credit

7  reports, based on the same wrong interpretation of inapplicable law Federal law.

8

9

10              III.    Law and Argument

11  A.    This Court Has Jurisdiction Over the Records.

12      DEFENDANT's argument appears to be as follows:  The current subpoenas identify

13  records relating to various credit card numbers.  Police learned some of those credit card

14  numbers through credit reports obtained from Credit Reporting Agencies.  Credit Reporting

15  Agencies are federally regulated.  Federal law provides Federal Courts with "original jurisdiction

16  of civil actions or proceedings arising under any act of Congress regulating commerce."

17  Therefore since the current subpoenas are the product of information developed from companies

18  that are federally regulated, then only Federal courts have jurisdiction over the subpoenas.

19      Defendant should be commended that the enthusiasm of his argument is not diminished

20  by the total absence of legal support.

21      Defendant stands charged before this Court.  This Court has physical possession of

22  documents that will be offered into evidence at trial before this Court.  Accordingly, this court

23  has jurisdiction over the documents.

24

25

merely to obtain the necessary custodian's declaration for their admission at trial.

B.    **The Subpoenaed Documents Are The Product Of A Proper Investigation.**

It is well settled that a person has no expectation of privacy in information that is voluntarily provided to a third party. (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]). Much like the current case, the *Miller* defendant objected to disclosure of his personal banking records. The High Court rejected his argument, explaining that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities . . ." (*Id.*, at p. 443 [48 L.Ed.2d at p. 79].)

Following Proposition 8, the admissibility of evidence in California criminal trials depends on the federal rules of exclusion. (*In re Lance W.* (1985) 37 Cal.3d 873, 873.) Federal law does not provide a remedy for a challenged search of the third party records that are "voluntarily conveyed to the [businesses] and exposed to their employees in the ordinary course of business." (*People v. Pearson*, 169 Cal. App. 3d 319 (citing, *Miller*, supra 401 U.S. at 442)

DEFENDANT's argument relating to the civil regulation of credit reporting companies failed twice before Judge Tielh and once before Judge Lisk. He has presented nothing new here. Nowhere has DEFENDANT been able to cite a suppression remedy even in civil cases where his federal regulations might be applicable.

C.    **The Subpoenas Are Not Overbroad.**

With the exception of conclusory statements regarding previously validated search warrants, DEFENDANT fails to explain how he believes the current subpoenas are overbroad.

The subpoenas relating to credit card information request only information that could identify the users, and not all transactions. Moreover, they are limited to the timeframe of DEFENDANT's charged offenses.

643

1    The subpoenas relating to the car rental companies are likewise limited to the timeframe of

2  DEFENDANT's crimes and are tailored to include additional uncharged, out of county, crimes that

3  may be offered into evidence pursuant to Evidence Code section 1101, subdivision (b).

4

5                    IV.    Conclusion.

6    The People respectfully request that the Court deny DEFENDANT's Motion to Quash.

7

8  Dated: June 28, 2005                     Respectfully submitted,
                                            GEORGE W. KENNEDY
                                            DISTRICT ATTORNEY
9
                                            By
10                                             Tom Flattery
                                               Deputy District Attorney
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

644

1   GEORGE W. KENNEDY,
    DISTRICT ATTORNEY, #52527
2   THOMAS L. FLATTERY
    DEPUTY DISTRICT ATTORNEY, # 186856
3   COUNTY GOVERNMENT CENTER, WEST WING
    70 W. Hedding Street
4   San Jose, California 95110
5   Telephone: (408) 792-2629

6   Attorneys for the People

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA,
8               IN AND FOR THE COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF              NO. CC454838
    CALIFORNIA,
10                                      OPPOSITION TO MOTION TO
11                      Plaintiff,      SUPPRESS EVIDENCE (PC
                                        1538.5) AND SET ASIDE THE
12          v.                          INFORMATION (PC 995)

13  HOWARD YOUNG,                       DATE: July 22, 2005
                                        TIME:  9:00 p.m.
14                      Defendant.      DEPARTMENT: 29
15                                      ESTIMATED TIME : 10 min.

16

17

18                          I.  Introduction.

19      DEFENDANT is charged in a 31 count Information with Burglary and Grand Theft

20  resulting from 16 separate break-ins at high technology companies throughout Santa Clara County

21  over the last four years.  DEFENDANT is tied to these crimes, and 11 similar out-of-county

22  burglaries, in several ways, including air travel and rental car records, e-mail and E-Bay records,

23  surveillance photos and stolen property recovered at his home in Las Vegas.

24      On July 7, 2005, DEFENDANT filed notices of motions to suppress essentially all evidence

25  in the case pursuant to Penal Code section 1538.5 and to set aside the Information pursuant to Penal

FILED

JUL 2 1 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By _____ Deputy
        S. CHUA

747

1  Code section 995. As of the writing of this response, the People have not been served with Points

2  and Authorities or declarations to support DEFENDANT's motions. However, given several

3  similar motions that were previously denied, the People anticipate that DEFENDANT will argue

4  that his Fourth Amendment rights were violated by several Search Warrants served on third party

5  businesses for their records relating to DEFENDANT.

6        If his history is a guide, DEFENDANT' will rely on: (1) outdated, pre-Prop 8 California

7  cases to suggest that he has a privacy interest in third party business records; (2) inapplicable

8  Federal regulations to suggest that some the records were produced improperly: and, (3) incorrect

9  claims that all later evidence is the fruit of those records. DEFENDANT believes that his arrest and

10  evidence gained from later search warrants were the fruit of initial warrants for his credit reports.

11  However, DEFENDANT ignores current binding authority that unquestionably confirms that

12  DEFENDANT has no privacy interest in business records held by third party companies.

13

14

15                                **II. Factual and Procedural History**

16        On April 14, 2004, police detectives learned that in March, 2004 DEFENDANT had sold

17  several memory chips on E-Bay. Those chips were stolen from Google on February 28, 2004. On

18  April 15, 2004, an FBI agent in Hawaii identified DEFENDANT in a surveillance photo from a

19  burglary at Silicon Graphics from January 24, 2004. While detectives learned his name, they did

20  not know where DEFENDANT was living.

21        On April 22, 2004, Judge Charles Hayden signed a search warrant for DEFENDANT's E-

22  Bay records, including billing addresses and credit card numbers associated with the account. On

23  May 1, 2004, DEFENDANT burglarized Cisco Systems in San Jose, stealing over $50,000 worth of

24  computer equipment.

25

**748**

On May 4, 2004, Judge Hayden signed search warrants for each of the three major credit reporting agencies for their records relating to DEFENDANT.  On May 15, 2004, DEFENDANT burglarized Amgen in South San Francisco and Cisco Systems in Pleasanton.  In those two cases, he stole well over $60,000 worth of computer equipment.  From the credit reports, detectives learned that DEFENDANT used Visa cards and a T-Mobile account.  Detectives were still not able to locate DEFENDANT.

On May 21, 2004, Judge Hayden signed search warrants for T-Mobile and Visa for their business records relating to DEFENDANT.  Soon thereafter, detectives learned that DEFENDANT had purchased tickets to fly into San Francisco on May 28, 2004.

On May 28, 2004, Judge Hayden signed an arrest warrant for DEFENDANT and a Search warrant for DEFENDANT's property.  DEFENDANT was arrested as he came off the airplane. During a search of his property, detectives found a receipt for a storage locker rented in Oakland on May 15, 2004 – the day of the Amgen and Cisco burglaries.  On May 28, 2004, Judge Danner signed a search warrant for the storage locker.  While executing Judge Danner's warrant, Detectives recovered a metal folding cart that can be seen in the surveillance video from the Cisco burglary.

On June 2, 2004, Judge Hayden signed Search Warrants for a computer seized from DEFENDANT at his arrest, as well as the for business records from the Airline Reporting Corporation, Hertz and Avis.  These later warrants were "piggyback warrants" and included copies of the Visa affidavit that was originally filed on May 21, 2004.

On February 14, 2005, DEFENDANT relieved his second attorney and entered *Pro Per* status.

On April 21, 2005, DEFENDANT filed a Motion to Traverse, Quash and Suppress evidence relating to all Search Warrants executed while investigating this case.  DEFENDANT

1  noticed the motion to be heard on the Department 23 pretrial calendar on April 25, 2005. Among

2  DEFENDANT's claims were that the police violated his privacy rights by using Search Warrants to

3  obtain his credit reports.  On April 25, 2005, DEFENDANT filed a second, similar Motion to

4  Traverse, Quash and Suppress Evidence, again noticed for hearing on that day's pre-trial calendar.

5        On April 25, 2005, the court entered a Not Guilty plea for DEFENDANT, set a Preliminary

6  Hearing Date for June 2, 2005 and continued his motions to be heard with the Preliminary Hearing..

7        On May 10, 2005, DEFENDANT filed a Motion to Compel Discovery requesting, among

8  other things, various certifications, notices and jurisdictional agreements relating to the production

9  and use of his credit reports.  DEFENDANT incorrectly interpreted 15 United States Code, section

10  1681, et. seq. as requiring those certifications.

11        On May 13, 2005, DEFENDANT filed a third Motion to Traverse, Quash and Suppress,

12  which appears to be a fairly identical copy of the motion he filed on April 25, 2005.  Defendant

13  noticed this motion to be heard on Department 23's pretrial calendar on May 16, 2005.

14        On May 16, 2005, Judge Lisk denied DEFENDANT's Motion to Compel relating to the

15  certifications and agreements explaining that court authorized Search Warrants justified production.

16  DEFENDANT's suppression motion again trailed to the Preliminary Hearing.

17        On May 17, 2005, the People filed motions to release records pursuant to Subpoena Duces

18  Tecum to be heard with the Preliminary Hearing.  On May 25, 2005, DEFENDANT filed a Motion

19  to Quash those subpoenas.  Also on May 25, 2005, DEFENDANT filed a Supplemental Points and

20  Authorities in support of his Motion to Traverse and Suppress, which was essentially another copy

21  of his April 25, 2005 motion.

22        At the Preliminary Hearing on June 2, 2005, Judge Teilh denied DEFENDANT's motion to

23  traverse the search warrants. DEFENDANT thereafter made an oral motion to suppress evidence

**750**

1   suggesting essentially that all subsequent evidence was the fruit of the search warrants. Judge Tielh

2   also denied that motion and held DEFENDANT to answer as charged. No documents responsive to

3   the People's subpoenas had arrived in court and therefore, the motion to release trailed.

4       On June 14, 2005, DEFENDANT filed a Motion to Quash the People's subpoenas. On June

5   28, 2005, DEFENDANT filed a Supplemental Motion to Quash the same subpoenas. On July 6,

6   2005, DEFENDANT filed an Amended-Supplemental Motion to Quash the same subpoenas. On

7   July 7, 2005, DEFENDANT filed a second copy of his Amended-Supplemental Motion to Quash.

8   Also on July 7, 2005, DEFENDANT filed the two motions pursuant to Penal Code sections 995 and

9   1538.5 currently before this Court.

10      On July 8, 2005, Jude Lee denied DEFENDANT's Motion to Quash relating to three sets of

11  documents that had arrived in court. He did not rule on the motion with respect to three other sets

12  of documents and the People's motion to release continues to trail.

13

14

15                        III.    Law and Argument

16          A.    DEFENDANT CAN NOT DEMONSTRATE A
                  LEGITIMATE EXPECTATION OF PRIVACY IN
17                THE RECORDS SEIZED OR THE PLACE
                  SEARCHED.
18

19      It is well settled that a defendant challenging a search, must first establish "a legitimate

20  expectation of privacy in the invaded place." (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)

21  Fourth Amendment rights are personal rights which may be asserted only by a defendant who

22  has a legitimate expectation of privacy in the invaded place or the thing searched. (*Rakas v.*

23  *Illinois* (1978) 439 U.S. 128, 133-134, 143.) To succeed on a motion to exclude evidence based

24  on a claim of unreasonable search and seizure, a defendant must first establish a personal,

25  reasonable, and legitimate expectation of privacy. (Cal. Const., art. I, § 28, subd. (d); *United*

751

1    their employees in the ordinary course of business." (*People v. Pearson*, 169 Cal. App. 3d 319

2    (citing, *Miller*, supra 401 U.S. at 442).

3        Here, the with respect to the search warrants for the credit reports, DEFENDANT

4    voluntarily provided information to various credit card companies. His information was available to

5    employees of those companies in the normal course of their businesses. Each of those credit card

6    companies thereafter voluntarily shared defendant's information with credit reporting companies

7    who then shared it with police.

8

9        Any claimed irregularities in the warrants can not create a suppression remedy where there

10   is no privacy interest.

11       Likewise, Federal Regulations cited by DEFENDANT do not create a suppression remedy.

12

13           **B.    THERE WAS SUFFICIENT EVIDENCE TO HOLD**
                    **DEFENDANT TO ANSWER.**

14       DEFNDANT cites no failure of proof as to any charge or element. In his motion

15   pursuant to Penal Code section 995, he merely claims that "the commitment was based on

16   incompetent evidence." DEFENDANT cites no legal or factual error. Therefore, the People

17   assume that he relies on his mistaken Motion to Suppress.

18       Whereas DEFENDANT has no privacy interest in the challenged records, and the records

19   were properly produced pursuant to search warrant, DEFENDANT's motion must be denied.

20

21   ///

22   ///

23   ///

24   ///

25   ///

                                                                      752

1

**IV.    Conclusion.**

2

The People respectfully request that the Court deny DEFENDANT's Motions as he is

3

unable to establish a Constitutionally protected privacy right in the challenged documents and the

4

Information is supported by probable cause.

5

6    Dated: July 21, 2005

          Respectfully submitted,

7              GEORGE W. KENNEDY
          DISTRICT ATTORNEY

8              By

9              Tom Flattery
          Deputy District Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare the following:

I am over 18 years of age, and a party to the within action.

My address is:    P.O. Box 8800

Corcoran, California 93212-8800

On _May 10, 2008_ , I served a copy of the attached

Motion For Findings and Recommendations and To Allow Service, and

Amended Motion for Summary Judgment

On the below-named persons by placing a true copy thereof
in envelope addressed as follows, with first class postage
thereon fully prepaid, and delivering the sealed envelopes,
according to the procedures prescribed for sending legal
mail, to the proper institutional official for deposit
in the United States mail at Corcoran, in the County of
Kings, California.

Department of Justice
California Attorney General's Office
~~455 Golden Gate~~
300 "I" Str.
Sacramento, California

Santa Clara County - District Attorney
County Attorney's Office
70 West Hedding Str.
San Jose, CA. 95110

Executed under penalty of perjury this _10_ day of
_May_ , 200 _8_ , at Corcoran, California.

DECLARANT