1    <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2    Name   <u>Young        Howard        A.</u>
              (Last)              (First)            (Initial)

3    Prisoner Number   <u>F-44590</u>                                      **ORIGINAL**
                                                                                  **FILED**
4    Institutional Address   <u>P.O. Box 8800</u>
                                                                                 JUL 1 0 2008
5                            <u>Corcoran, CA. 93212 - 8800</u>
                                                                         RICHARD W. WIEKING
6    ======================================================        CLERK, U.S. DISTRICT COURT
                                                                   NORTHERN DISTRICT OF CALIFORNIA
                                                                              SAN JOSE
7                            UNITED STATES DISTRICT COURT
                            NORTHERN DISTRICT OF CALIFORNIA

8    <u>Mr. Howard Allen Young</u>                      )
     (Enter the full name of plaintiff in this action.)    )
9                                                          )
                              vs.                          )    Case No. <u>CV-06-00114 J.F.</u>
10                                                         )    (To be provided by the clerk of court)
     <u>Warden Dereal Adams</u>                          )
11   <u>Corcoran State Prison</u>                         )    PETITION FOR A WRIT
                                                          )    OF HABEAS CORPUS
12   _____                  )
                                                          )
13   _____                  )
                                                          )
14   (Enter the full name of respondent(s) or jailor in this action)   )
     _____                  )

15   ================================================================

16                    <u>Read Comments Carefully Before Filling In</u>

17   <u>When and Where to File</u>

18          You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23          If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1  Who to Name as Respondent

2       You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6       If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10 A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          _Santa Clara County Superior Court_      _San Jose_

15                 Court                              Location

16          (b)    Case number, if known _CC 454838_

17          (c)    Date and terms of sentence _Sept 21, 2006_

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)          Yes _✓_    No _____

20                 Where?

21                 Name of Institution: _Corcoran State Prison_

22                 Address: _P.O. Box 8800, Corcoran, CA. 93212 - 8800_

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  _Commercial Burglary - P.C. 459_

27  _Grand Theft - P.C. 484_

28  _____

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

Arraignment:                         Yes ✓    No _____

Preliminary Hearing:          Yes ✓    No _____

Motion to Suppress:           Yes ✓    No _____

4. How did you plead?

Guilty _____    Not Guilty ✓    Nolo Contendere _____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

Jury ✓    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?           Yes ✓    No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment             Yes ✓    No _____

    (b)    Preliminary hearing     Yes _____    No ✓

    (c)    Time of plea            Yes ✓    No _____

    (d)    Trial                   Yes ✓    No _____

    (e)    Sentencing            Yes ✓    No _____

    (f)    Appeal                Yes ✓    No _____

    (g)    Other post-conviction proceeding    Yes _____    No ✓

8. Did you appeal your conviction?         Yes ✓    No _____

    (a)    If you did, to what court(s) did you appeal?

               Court of Appeal          Yes ✓    No _____

               Year: 2008    Result: DENIED

               Supreme Court of California    Yes ✓    No _____

               Year: 2008    Result: DENIED

               Any other court          Yes _____    No ✓

               Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1          petition?             Yes _____    No ✓

2       (c)    Was there an opinion?      Yes ✓    No _____

3       (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                         Yes _____    No ✓

5          If you did, give the name of the court and the result:

6          _____

7          _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?      Yes ✓    No _____

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16       (a)    If you sought relief in any proceeding other than an appeal, answer the following

17             questions for each proceeding. Attach extra paper if you need more space.

18          I.    Name of Court: U.S. District Court-Northern District

19               Type of Proceeding: Civil Complaint #CV-06-00114 J.F.

20               Grounds raised (Be brief but specific):          the CRFPA

21               a. Violations of the FCRA §1681 et seq, the RFPA §3401 et seq and §7460 et seq

22               b. 4th Amendment- illegal search and seizure

23               c. Injunctive Relief Removal, Temporary/Permanent Restraining Order

24               d. 14 Amendment - Due Process and Equal Protection

25               Result: Pending             Date of Result:_____

26          II.    Name of Court: California Supreme Court

27               Type of Proceeding: Petition for Review

28               Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS      - 4 -

1        a. Due Process - Equal Protection - U.S. Constitution

2        b. Illegal Search and Seizure   U.S. Constitution

3        c. Statute of Limitations

4        d. Federal Question Jurisdiction - Removal.

5        Result: Denied - lack of Jurisdiction   Date of Result: 2-25-08

6        III.  Name of Court: California Supreme Court

7        Type of Proceeding: Habeas Corpus

8        Grounds raised (Be brief but specific):

9        a. U.S. Constitution - Due Process - Equal Protection

10       b. U.S. Constitution - Illegal Search and Seizure

11       c. U.S. Constitution - Ineffective Assistance of Counsel

12       d. U.S. Constitution - Suggestive Identification

13       Result: Denied   Date of Result: 3-12-2008

14      IV.  Name of Court: California Supreme Court

15       Type of Proceeding: Habeas Corpus

16       Grounds raised (Be brief but specific):

17       a. Violations of the FCRA §1681 et seq - the (C) RFPA §7460 and §3401 et seq

18       b. U.S. Constitution - Speedy Trial Rights - Due Process

19       c. Illegal Use of Prior Conviction - P.C. 667(b)(i)

20       d. Denial of Substantial Rights - Preliminary Examination

21       Result: Denied   Date of Result: 3-12-2008

22   (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                Yes ✓     No____

24       Name and location of court: U.S. District Court - Northern District - San Jose
                                      Case # 06-00114-J.F.

25  B. GROUNDS FOR RELIEF

26       State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1    a._____

2    b._____

3    c._____

4    d._____

5    Result:_____ Date of Result:_____

6    III.    Name of Court: _California Supreme Court_

7    Type of Proceeding: _Petition For Review_

8    Grounds raised (Be brief but specific):

9    a. _Unconstitional Admission of Evidence_

10    b. _Confrontation Clause of the Sixth Amendment_

11    c. _Trial Court Abused Discretion - Impeachment - Prior Convictions_

12    d. _Unconstitutionality of Cal Crim 375 - Proof Beyond A Reasonable Doubt_

13    Result: _Denied_____ Date of Result: _June 25, 2008_

14    IV.    Name of Court: _____

15    Type of Proceeding: _____

16    Grounds raised (Be brief but specific):

17    a._____

18    b._____

19    c._____

20    d._____

21    Result:_____ Date of Result:_____

22    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                    Yes _____    No_____

24    Name and location of court: _____

25    B. GROUNDS FOR RELIEF

26    State briefly every reason that you believe you are being confined unlawfully. Give facts to

27    support each claim. For example, what legal right or privilege were you denied? What happened?

28    Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 - A

1    need more space.  Answer the same questions for each claim.

2    [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5    Claim One: U.S. Constitution + State Law - Speedy Trial / Preliminary

6    Hearing Violations - PC 869b - Due Process

7    Supporting Facts: Petitioner did not waive the 60 day requirement regarding

8    time to be brought to a preliminary hearing, yet the court violated

9    Petitioner's due process and speedy trial / preliminary hearing rights

10

11    Claim Two: Petitioner's credit report(s), financial record(s) and private

12    Records were obtained in violation of the F.C.RA §1681 et seq, the

13    ~~Supporting Facts:~~ Right to financial Privacy Act §3401 et seq, the California

14    Right to Financial Privacy Act §7460 et seq and the Federal and

15    State Constitutions, both with and without legal process.

16    Petitioner Requests that all previously raised issues in the (2)

17    ~~Claim Three:~~ Petitions for Review, Habeas Corpus case numbers

18    S156104, S157535 and S164021, including but not limited to

19    ~~Supporting Facts:~~ Suggestive identification, the Las Vegas search of Petitioner's

20    Residence, the search and seizure of Petitioner's luggage from United

21    Airlines checked baggage system, and the statute of limitation violations

22    all be heard by this court, and Relief be granted by this Court.

23    If any of these grounds was not previously presented to any other court, state briefly which

24    grounds were not presented and why:

25

26    All Grounds have been raised in the Highest State Court.

27    Please see all Exhibits - Attached, and in U.S. District Court -

28    Northern District - San Jose Division - Case# 06-00114 J.F. - A-E, 1-23
     (Please see Motion for Finding and Recommendation in case # 06-00114 J.F.)

1   need more space.  Answer the same questions for each claim.

2       [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5       Claim One: 4th Amendment - Illegal Search and Seizure

6   Petitioner was denied the opportunity to fully and timely litigate the 4th Amendment claims.

7   Supporting Facts: City of Palo Alto, California issued out of state search warrants

8   for petitioner's consumer credit reports, financial records and personal records

9   from TransUnion in Chicago, Illinois, Experian in Allen Texas, EQifax in Atlanta Georgia,

10  T-Mobile in Washington, ARC in Virginia and Hertz in Oklahoma

11      Claim Two: 14 Amendment - Due Process and Equal Protection Violations

12  P.C. 1000-1001.80 - California Diversion Statutes and P.C. 8050 et seq. California Community-Based Punishment Act

13  Supporting Facts: Petitioner was accepted into and successfully completed the

14  bootcamp style, pretrial diversion program - Santa Clara County Regimented

15  Correction Program (RCP) after arrest pending court proceedings, but petitioner

16  was not released per state laws or as other RCP participants were released

17      Claim Three: Ineffective Assistance of Counsel

18  (Failure to investigate, to present alibi evidence or raise constitutional violations)

19  Supporting Facts: All counsels failed to raised any of these issues

20  petitioner has raised. All counsels failed to investigate petitioner's

21  Alibi evidence regarding plaintiff's being near Sacramento purchasing a

22  sweeper truck which could be verified by E-mail and T-Mobile phone records.

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26  (Please Note: The R.C.P. Certificates showing Petitioner's successful

27  completion are in U.S. District Court - Northern District - San Jose

28  Division Case # 06-00114 J.F.)

PET. FOR WRIT OF HAB. CORPUS       - 6 -

AO 241    (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds.  If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by use of coerced confession.

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e)  Conviction obtained by a violation of the privilege against self-incrimination.

(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)  Conviction obtained by a violation of the protection against double jeopardy.

(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i)  Denial of effective assistance of counsel.

(j)  Denial of right of appeal.

A.  Ground one:  6th Amendment and 14th Amendment Right to Confrontation and Due Process violations - illegal enhancement

Supporting FACTS (state *briefly* without citing cases or law):  Petitioner was sentenced based on a 667(b-i) prior conviction enhancement, which was prior to the three strikes law, which was not a condition of the plea agreement petitioner took for the P.C. 207 - Kidnapping charge, petitioner was not given bifurcation of the prior convictions at the time of testifying at trial, and petitioner was not allowed the full right to a jury trial regarding the proof of those prior convictions

B.  Ground two:  4th Amendment Illegal Search and Seizure

Supporting FACTS (state *briefly* without citing cases or law):  Petitioner's luggage was seized from United Airlines checked baggage system, petitioner's cell phone was searched and seized, both without a valid search warrant. Petitioner's Las Vegas residence was based on the cell phone number search and on duress and created exigent circumstances.

1  need more space. Answer the same questions for each claim.

2    [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5    Claim One: The Admission of Four Uncharged Offenses Pursuant To

6  Evidence Code § 1101(b) violated Petitioners Federal and State Constitutional Rights

7    Supporting Facts: The Prosecution introduced Evidence of four out-of-county

8  burglaries - Evidence of the four Uncharged Offenses were Inadmissible

9  Pursuant to Evidence Code § 1101 - Evidence Under § 1101 Deprived Petitioner

10  of His Federal and State Constitutional Due Process Right To A Fair Trial

11    Claim Two: Admission of Hearsay Evidence of Three Additional Uncharged

12  Burglaries violated Petitioner's Federal and State Constitutional Rights to Confrontation-Fair Trial

13    Supporting Facts: Det. Bovja's testimony Regarding three additional burglaries

14  Constituted hearsay, as there was no indication that he had any personal

15  Knowledge of any of these three "Suspected" burglaries, and no witness

16  was called to testify as to any of these three "Suspected" burglaries

17    Claim Three: Trial Court Abused Its Discretion by Allowing the Prosecutor

18  to Impeach Petitioner with All four of Petitioner's Prior Felony Convictions

19    Supporting Facts: The trial court denied Petitioner his Constitutional Right

20  to a fair trial - CalCrim 325 violated Petitioner's Constitutional Right to

21  be Convicted only by proof beyond a reasonable doubt.

22        ( See Petition for Review in Exhibit )

23    If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26  (Please note: Petitioner is unable to submit all necessary Exhibits due to having

27  all legal documents taken and subsequently lost, misplaced or destroyed by CDC-

28  Corcoran State Prison - See Exhibit D- Ninth Circuit docket sheet dated 6/6/07)

PET. FOR WRIT OF HAB. CORPUS      - 6 - A

## Additional Citations

U.S. v Strother (D.C. Cir 1978) 578 F. 2d 397, 399

Sychuan Band of Indians v Roache (S.D. Cal 1992) 788 F. Supp. 1498

In Re Castiglione (E.D. Cal 1984) 587 F. Supp. 1210

People v Dina, 72 Cal. App. 3d Supp. 35, 39, 140 Cal. RPTR. 270, 272 (1927)

Allen v Calvo (D.Or 1993) 832 F. Supp. 301

Soghomonian v U.S. (E.D. Cal 2003) 278 F. Supp 2d 1151

In Re Gren (C.A. 9(Cal) 1980) 633 F. 2d 825

Zurcher v Stanford Daily (U.S. Cal 1978) 98 S. Ct 1970

15 U.S.C. § 1681 et seq - Fair Credit Reporting Act
12 U.S.C. § 3401 et seq - Right to Financial Privacy Act
California Government Code § 7460 et seq - California Right to Financial Privacy Act

Hunt v U.S. SEC (N.D. Tex 1981) 520 F. Supp 580

Anderson v LaJunta State Bank (C.A. 10(Colo) 1997) 115 F. 3d 756

People v Blair (Cal. 1979) 159 Cal RPTR 818, 25 Cal. 3d 640

## Additional Citations

Strickland v Washington (1984) 466 U.S. 668

Crawford v Washington (2004) 541 U.S. 36

Cunningham v California (2007) 549 U.S. ___

Williams v Taylor (2000) 528 U.S. 362

Bremed v Greene (1998) 23 U.S. 571

Dowling v United States (1989) 493 U.S. 342, 352

Davis v Washington (2006) 126 S.Ct. 2266

In re Winship (1970) 397 U.S. 358, 364

Estelle v McGuire (1991) 502 U.S. 62, 72

Sandstrom v Montana (1979) 442 U.S. 510, 521

Patterson v New York (1977) 432 U.S. 197, 215

Donnelly v De Christoforo (1974) 416 U.S. 637, 643

1       List, by name and citation only, any cases that you think are close factually to yours so that they

2 are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3 of these cases:

4 Galloway v Suffolk County Correctional Facility (E.D. NY 2002) 232 F. Supp. 2d 4

5 In re Brittany C (Cal App. 6 Dist 1999) 90 Cal RPTR 2d 737

6 Winsett v McGinnes, D.C. 443 F. Supp; 617 F. 2d 996

7 Do you have an attorney for this petition?              Yes____     No ✓

8 If you do, give the name and address of your attorney:

9 _____

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11 this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13 Executed on ___July 7, 2008___        _____

14             Date                            Signature of Petitioner

15

16

17

18

19

20 (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS     - 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT

# A

**UNITED STATES DISTRICT COURT**
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

www.cand.uscourts.gov

Richard W. Wieking
Clerk

General Court Number
415.522.2000

### May 7, 2008

**CASE NUMBER:  CV 06-00114 MJJ**
**CASE TITLE:  HOWARD YOUNG-v-TRANS UNION**

REASSIGNMENT ORDER

GOOD CAUSE APPEARING THEREFOR,

IT IS ORDERED that this case is reassigned to the **SAN JOSE** division.

**Honorable JEREMY FOGEL** for all further proceedings.

Counsel are instructed that all future filings shall bear the initials **JF** immediately after

the case number.

ALL MATTERS PRESENTLY SCHEDULED FOR HEARING ARE VACATED AND SHOULD BE RENOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THE CASE HAS BEEN REASSIGNED.

Date: 5/7/08

FOR THE EXECUTIVE COMMITTEE:

_____
Clerk

NEW CASE FILE CLERK:

Copies to: Courtroom Deputies
Log Book Noted

Special Projects
Entered in Computer 5/7/08 MAB

CASE SYSTEMS ADMINISTRATOR:
Copies to:  All Counsel

Transferor CSA

**UNITED STATES DISTRICT COURT**
**Northern District of California**
**450 Golden Gate Avenue**
**San Francisco, California 94102**

www.cand.uscourts.gov

Richard W. Wieking
Clerk

General Court Number
415.522.2000

May 6, 2008

CASE NUMBER:  **CV 06-00114 MJJ**
CASE TITLE:  **HOWARD YOUNG-v- TRANS UNION**
DATE MANDATE FILED:  5/2/08

TO COUNSEL OF RECORD:

The mandate of the United States Court of Appeals for the Ninth Circuit has  been filed in the above captioned case.

Sincerely,

RICHARD W. WIEKING, Clerk

by: (Sheila Rash)
Case Systems Administrator

Distribution:  CIVIL         -    Counsel of Record

CRIMINAL  -    Counsel of Record
U.S. Marshal (Copy of Mandate)
U.S. Probation Office

NDC App-16

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## United States Court of Appeals for the Ninth Circuit

**Notice of Docket Activity**

The following transaction was entered on 04/30/2008 at 2:17:06 PM PDT and filed on 04/30/2008

| | |
|---|---|
| **Case Name:** | Young v. Trans Union, et al |
| **Case Number:** | 06-16051 |
| **Document(s):** | Document(s) |

**Docket Text:**
MANDATE ISSUED.(EL, SRT and MSB)

The following document(s) are associated with this transaction:
**Document Description:**Mandate Letter
**Original Filename:**/opt/ACECF/live/forms/theresab_0616051_6517951_MandateForm_108.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1106763461 [Date=04/30/2008] [FileNumber=6517951-0]
[2a6761dc94aed0c88200ac6d0bdb0d3d426abc954128b53b8a037fff282216aa2a56aa658f817650d0cb3f7
**Recipients:**

- USDC, San Francisco
- Young, Howard

**Notice will be mailed to:**

USDC, San Francisco
Northern District of California (San Francisco)
P.O. Box 36060
San Francisco, CA 94102-0000

Young, Howard
COSP - 3A CORCORAN STATE PRISON
Level 3A Facility
P.O. Box 3461
Corcoran, CA 93212-3461

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 6517951
**RELIEF(S) DOCKETED:**
**DOCKET PART(S) ADDED:** 5602794

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 30 2008

MOLLY C. DWYER, CLERK OF COURT
U.S. COURT OF APPEALS

---

HOWARD YOUNG,

        Plaintiff - Appellant

v.

TRANS UNION; EXPERIAN;
EQUIFAX; VISA USA,

        Defendants - Appellees

No.  06-16051
D.C. No.  CV-06-00114-MJJ

**MANDATE**

---

    The judgment of this Court, entered 12/10/2007, takes effect this date.

    This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

                    FOR THE COURT:

                    Molly C. Dwyer
                    Clerk of Court

                    /S/

                    By: Theresa Benitez
                    Deputy Clerk

**NOT FOR PUBLICATION**

FILED

DEC 10 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HOWARD YOUNG,<br><br>      Plaintiff - Appellant,<br><br>   v.<br><br>TRANS UNION; et al.,<br><br>      Defendants - Appellees. | No. 06-16051<br><br>D.C. No. CV-06-00114-MJJ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Submitted July 9, 2007[**]

Before: LEAVY, THOMAS, and BERZON, Circuit Judges.

Howard Young appeals pro se from the district court's judgment dismissing

his action against numerous defendants arising out of his ongoing criminal

prosecution in California state court. We review de novo a dismissal pursuant to

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

28 U.S.C. § 1915. *Ramirez v. Galaza*, 334 F.3d 850, 853-54 (9th Cir. 2003). This Court may raise the issue of *Younger* abstention at any point during the appellate process. *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000). We vacate the district court's judgment and remand with instructions to abstain from exercising jurisdiction over the action for damages and to stay the action until the state criminal proceeding has been completed.

The district court improperly treated Young's Fair Credit Reporting Act and state and federal Right to Financial Privacy Act claims as brought under 42 U.S.C. § 1983 and then dismissed them as barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), because Young's complaint did not purport to allege those causes of action under section 1983. *See Bogovich v. Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999) ("courts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action.").

In light of the ongoing state court criminal proceedings, the district court was required under *Younger v. Harris*, 401 U.S. 37 (1971), to abstain from exercising jurisdiction over Young's statutory claims for money damages and to stay the action until the state court proceeding was completed. *See Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004) (en banc) ("when damages are sought and *Younger* principles apply, it makes sense for the federal court to refrain from

2

exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending.").

Accordingly, we vacate the district court's judgment and remand for the limited purpose of allowing the district court to enter an order staying Young's action for damages until the state proceeding has been completed.

Appellant shall bear the costs on appeal.

**VACATED and REMANDED.**



A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

APR 3 0 2008

by:
Deputy Clerk

3

ORIGINAL
FILED

UNITED STATES DISTRICT COURT 08 MAY 29 PM 1:49

FOR THE NORTHERN DISTRICT OF CALIFORNIA RICHARD W. WIEKING
CLERK
SAN JOSE DIVISION U.S. DISTRICT COURT
NO. DIST. OF CA S.J.


MR. HOWARD YOUNG

Plaintiff,                          D.C. No. CV-06-00114-J.F.

v                                   PLAINTIFF'S

TRANS UNION; et al.,                AMENDED MOTION FOR

Defendants                       SUMMARY JUDGMENT

                                    DEMAND FOR JURY TRIAL

TO THE HONORABLE JEREMY FOGEL;

(HEARING REQUESTED to be on July 11, 2008)

Plaintiff hereby moves this court, AS SOON AS CAN be heard, with this
Amended Motion FOR SUMMARY JUDGMENT.


Summary judgment is appropriate where there is NO genuine issue AS TO
ANY material fact.


"Further, a court must not weigh the evidence, make credibility determinations OR
determine the truth of the matter at the summary judgment stage, but may only
determine whether there is a genuine issue for trial; . . . . . . (citations omitted)
(recognizing that on a motion for summary judgment, a district court is entitled
to neither assess the weight of the conflicting evidence nor to make
credibility determinations)" See Centuori v Experian Information Solutions,
Inc., (D. Ariz 2006) 431 F. Supp. 2d 1002 (Also see Self-Realization
Fellowship Church v Ananda Church of Self-Realization, 206 F. 3d 1322, 1328
(9th Cir 2000))

"Whether the City unlawfully obtained the credit report is a legal question that the court may resolve on summary judgment." See Pappas v City of Calumet City (N.D. Ill. 1998) 9 F.SUPP. 2d 943

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ P. 56(C)." See Chester v Purvis (S.D.Ind 2003) 260 F.SUPP. 2d 711

Plaintiff hereby moves this court for summary judgment against defendants Trans Union; et al., based on the pleadings, admissions on file, affidavits, and all other documents enclosed in the record of this case, for violations of plaintiff's rights pursuant to 15 U.S.C. §1681 et seq, 12 U.S.C. §3401 et seq, California Government Code §7460 et seq, U.S. Constitutional Rights, California Constitutional rights, and plaintiff's federal and/or state rights to privacy (See Exhibits A-E, 1-23, and attached)

The FCRA §1681(a)(4) reads; "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."

"In passing this subchapter, Congress intended to prevent unreasonable or careless invasion of consumer privacy...." See In re TRW (E.D. Mich 1978) 460 F.SUPP 1007

Page 2/26

"This subchapter regulates conduct of consumer reporting agencies and users of consumer reports." See Kiblen v Pickle, Wash. App. 1982, 653 P. 2d 1338, 33 Wash. App. 387

Plaintiff contends that Trans Union, Experian and Equifax are (See Exhibit A) "consumer reporting agencies", and City of Palo Alto, Magistrate Charles Hayden, Officer Dave Flohr, City of Menlo Park, F.B.I./REACT, Officer Alex Bouja, County of Santa Clara, D.A. James Sibley and D.D. Thomas Flattley, and California Attorney General's Office, D.A.G. Bud Frank are "users" of plaintiff's "consumer credit report(s)", pursuant to the FCRA 15 U.S.C. §1681 et seq.

Plaintiff contends that the search warrants for plaintiff's consumer credit report(s) issued by City of Palo Alto Magistrate Charles Hayden upon affidavit of Officer Dave Flohr, within Santa Clara County, to Trans Union located in Chicago Illinois, Experian located in Allen Texas and Equifax in Atlanta Georgia were not "the order of a court having jurisdiction to issue such an order" pursuant to §1681b(a)(1) and were therefore invalid and/or void on their face, unreasonable, in violation of §1681 et seq, the IV (4th) Amendment, and obtained for an impermissible purpose in violation of §1681 et seq.

".... execution of search warrant beyond county officer's jurisdiction violated the Fourth Amendment and was actionable under §1983."
The search warrants can only be operative in the territory in respect of which the issuing officer is clothed with judicial authority. See U.S. v Strother, (affirmed on other grounds) (certiorari granted on other grounds) (D.C. Cir 1978) 578 F. 2d 397, 399 and Bishop Paiute Tribe v County of Inyo (C.A.9(Cal) 2002) 275 F. 3d 893, citing Sycuan Band of Indians v Roache (S.D.Cal 1992) 788 F. Supp. 1498

Page 3/26

County of Santa Clara, D.A. Thomas Flattely, in the Jun 02 2005 Opposition To Motion To Traverse, Quash And To Suppress Evidence, the Jun 29 2005 Opposition To Motion To Quash Subpoena Duces Tecum, and the Jun 21 2005 Opposition To Motion To Suppress Evidence (P.C. 1538.5) And Set Aside The Information (See Exhibit B-attached) States the following;

A) Plaintiff "Has no Privacy Interest In Records Held by A Third Party", "He has no standing to object to those warrants", "A person has no expectation of privacy in information that is provided to a third party" (Citing United States v Miller (1976) 425 U.S. 435, "following Proposition 8, the Admissibility of evidence in California Criminal trials depends on the federal rules of exclusion" Citing In Re Lance W. (1985) 37 Cal 3d 873, 873, And "Federal law does not provide a remedy for a challenged search of the third party records that are voluntarily conveyed to the businesses and exposed to their Employees in the ordinary course of business" Citing People v Pearson, 169 Cal APP. 3D 319 (Citing Miller, supra 401 U.S. at 442).

Plaintiff contends that plaintiff's consumer credit report(s) were disclosed, obtained and used in violation of the FCRA § 1681 et seq

Plaintiff contends that plaintiff has a privacy interest, standing and an expectation of privacy, (reasonable, objective and/or subjective), and that there are remedies to challenge the search warrants available, including by means of the federal rules of exclusion and the state rules of exclusion.

PAGE 4/26

"The government's general assertion that Castiglione has no standing to bring this motion is clearly ERRONEOUS. First of all, the cases cited by the government are all cases which precede that passage of the Right to Financial Privacy Act. Secondly, sections 3416, 3417 and 3418 of Title 12 specifically place jurisdiction in district courts generally, and prescribe judicial remedies that are available to the person affected, including injunctive relief." SEE IN RE Castiglione, (E.D. Cal. 1984) 587 F. Supp. 1210 (underline added)

Plaintiff also contends that Santa Clara County D.A. Thomas Flattery's general assertion that plaintiff has no standing is ERRONEOUS, particularly by citing "Miller" which preceded the Right To Financial Privacy Act and the California Right To Financial Privacy Act which are almost identical in prescribing judicial remedies that are available to the person affected, including injunctive relief. As such, plaintiff contends that plaintiff has standing to challenge the search warrants validity used to obtain plaintiff's consumer credit reports, financial and other records.

Plaintiff contends that the out-of-state/out-of-jurisdiction search warrants and their execution was invalid, in violation of plaintiff's rights pursuant to §1681 et seq, §3401 et seq, §7460 et seq, and the U.S. and state Constitutions.

"If the SHERIFF acts outside this territorial jurisdiction, the sheriff has no law enforcement powers other than those that any private citizen would have. People v Pina, 72 Cal. App. 3d Supp. 35, 39, 140 Cal. RPTR. 270, 272 (1977)." SEE Sycuan Band of Mission Indians v Roache, supra.

"When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to 'invasion of privacy' cases under state law - cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential."

See Myers v Bennett Law Offices, (C.A. 9 (Nev) 2001) 238 F.3d 1068

Plaintiff contends that defendants City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr, City of Menlo Park and FBI/REACT Officer Alex Bouza, County of Santa Clara - D.A. James Sibley and DA. Thomas Flattery and California Attorney General's Office - D.A.G. Bud Frank "unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential".

See Myers v Bennett Law Offices, supra.

"When introducing the Fair Credit Reporting Bill in the Senate, Senator Proxmire stated that the bill would require:

"... that credit bureaus have in effect procedures for guaranteeing the confidentiality of the information they collect and that no such information be released to noncreditors such as governmental investigative agencies without the express consent of the person involved." 114 Cong. Rec. 24902 (1968). See Belshaw v Credit Bureau of Prescott, 392 F.Supp 1356, 1360 n.4 (D. Ariz 1975)" See Hansen v Morgan (C.A. 9 (Idaho) 1978) 582 F.2d 1214

Plaintiff did not give the "express consent" nor was plaintiff notified of the release of plaintiff's credit report(s) to governmental investigative agencies.

Page 5/26

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr obtained and used plaintiff's consumer credit report(s) negligently, willfully and/or in reckless disregard for plaintiff's rights to privacy and/or pursuant to §1681 et seq, and for the impermissible purpose of a criminal investigation and prosecution, based on the affidavit of City of Palo Alto - Officer Dave Flohr.

"It is uncontested that defendant requested the credit report in connection with his criminal investigation of Allen. Neither a criminal investigation nor a state grand jury subpoena constitute a permissible purpose to furnish a consumer report under §1681b."
   See Allen v Calud (D.Or. 1993) 832 F.Supp. 301 - motion granted on other grounds

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden exceeded his jurisdiction, acted as a rubberstamp, was not neutral nor detached, and did not make a reasoned determination in issuing the search warrants for plaintiff's consumer credit report(s) from Trans Union located in Chicago Illinois, Experian located in Allen Texas and Equifax located in Atlanta Georgia, including but, not limited to; the overbroad scope of the search warrants, i.e., requesting plaintiff's entire file, the out-of-state/out-of-jurisdiction locations, and the "Non-Disclosure" stipulations of the search warrants.

Plaintiff contends that the City of Palo Alto search warrants used to obtain plaintiff's consumer credit reports are not "the order of a court having jurisdiction" pursuant to §1681 b(a)(1), and they violated plaintiff's IV Fourth Amendment rights, along with plaintiff's rights to privacy and should be suppressed.
                              Page 6/26

"The Court also believes that such characterization would be inconsistent with the function Congress intended a court order to serve under the Act, i.e., to ensure that a consumer's privacy is not unduly impinged upon by disclosure of his credit file to third parties including governmental investigative agencies, which are not seeking the information for credit-related, business purposes. In order to provide this protection for the consumer, it is necessary for a court to consider the purposes for which disclosure is sought and to make a reasoned determination as to whether granting the requesting party access to the consumer's file for such purposes would violate the consumer's rights."

See In re Grand Jury Subpoena Duces Tecum (N.D.GA. 1980) 498 F.Supp. 1174

"(b) Law Governing Search Warrants

The defendants next argue the warrant was valid as a state warrant and, thus, the evidence seized would be admissible in a subsequent federal prosecution. The warrant clearly was not valid under Federal Rule of Criminal Procedure 41(a). This Rule allows a state court to issue a warrant for an alleged violation of federal law. However, the warrant may only be issued upon the request of a federal law enforcement officer or attorney. United States v Radlick, 581 F2d 225, 228 (9th Cir 1978). The October 1991 search warrants were not issued at the request of any federal officer or attorney. And, therefore, the search warrants were not valid federal search warrants."

See Sycuan Band of Mission Indians v Roache, supra.

Plaintiff contends that the search warrants were invalid, in violation of the IV (4th) Amendment, the FCRA §1681 et seq, federal and state privacy laws, and this court has the authority to accord a remedy under the exclusionary rule being that suppression of the out-of-state search warrants would serve the remedial purpose of deterring future unlawful police conduct thereby promoting the Fourth Amendment guarantee against unreasonable searches and seizures.

"According a remedy under the exclusionary rule requires the court to evaluate whether the remedy fashioned serves the remedial purpose of deterring future unlawful police conduct thereby promoting the Fourth Amendment guarantee against unreasonable searches and seizures."
See U.S. v SDI Future Health, Inc., (D. Nev 2007) 491 F. Supp 2d 975

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden did not disclose the purpose for obtaining plaintiff's consumer credit report(s) to TransUnion, Experian or Equifax, as the affidavit of Officer Dave Flohr was not attached to the search warrants, and was thereby requesting and/or obtaining plaintiff's consumer credit report(s) for City of Palo Alto Officer Dave Flohr to be used in a criminal investigation and prosecution, in violation of the FCRA §1681 et seq. See Allen v Calvo, supra, motion granted on other grounds.

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Dave Flohr obtained plaintiff's consumer credit report(s) under false pretenses, pursuant to, and in violation of §1681g, willfully and in reckless disregard for plaintiff's rights.

PAGE 8/26

City of Palo Alto search warrants' affidavits do not purport to seek plaintiff's consumer credit report(s) for the impermissible purpose of obtaining plaintiff's T-Mobile/phone Account information. Yet, City of Palo Alto using plaintiff's consumer credit report(s) (TransUnion) subsequently obtained plaintiff's T-Mobile phone account information. See T-Mobile search warrant affidavit in Exhibits

"User who purports to seek consumer report for permissible purpose, while secretly seeking report for impermissible purpose, is subject to liability under Fair Credit Reporting Act (FCRA) for obtaining information under false pretenses." See Allen v Calvo, supra, motion granted on other grounds. ("User" includes the ultimate destination of report as well as person who acquired report for another.)"

City of Palo Alto Officer Dave Flohr showed plaintiff's consumer credit report(s) to Menlo Park and FBI/REACT Officer Alex Bouza who then used plaintiff's consumer credit report regarding plaintiff's Visa credit card Account to contact Visa and subsequently obtain plaintiff's financial record from Visa without legal process, in violation of the FCRA § 1681 et seq and the RFPA § 3401 et seq and/or the CRFPA § 7460 et seq. See Visa USA search warrant affidavit in Exhibits

Plaintiff contends, identically, that County of Santa Clara - James Sibley and Thomas Flattery and California Attorney General's office' Bud Frank used and obtained plaintiff's consumer credit report in violation of § 1681 et seq, for the impermissible purpose of a criminal investigation and prosecution. (See Allen v Calvo, supra)

Page 9/26

Plaintiff contends that even had City of Palo Alto Dave Flohr's reciept of plaintiff's consumer credit report(s) been deemed lawful that lawfulness did not somehow automatically extend to City of Menlo Park and/or F.B.I/REACT Officer Alex Bouja, Santa Clara County or California Attorney General.

"Lawful reciept of consumer credit report by vice president of collection agency did not somehow automatically extend to Attorney for the collection agency; Attorney did not obtain the report, pursuant to the Fair Credit Reporting Act (FCRA), from any "consumer Reporting agency" but, rather, he obtained it from vice president, and he did not obtain it for any purpose enumerated in the statute." See Chester v Purvis, supra.

"Provision of Fair Credit Reporting Act (FCRA) governing permissible purposes of consumer credit reports governs not merely obtaining such a report, but using one as well." See Chester v Purvis, supra.

Plaintiff contends that City of Menlo Park, FBI/REACT Officer Alex Bouja obtained and used plaintiff's consumer credit report(s) for the impermissible purpose of a criminal investigation and prosecution, negligently, willfully and/or in reckless disregard for plaintiff's rights pursuant to § 1681 et seq.
(Also see Duncan v Handmaker, (C.A.6(KY) 1998) 149 F.3d 424)
Plaintiff contends that the request for plaintiff's records by City of Palo Alto from Trans Union, Experian and/or Equifax should have been limited to "§ 1681f Disclosures to governmental agencies", not plaintiff's entire credit report/file.

Page 10/26

"Under Fair Credit Reporting Act (FCRA), credit reporting agency could not disclose identifying information about consumer to government unless it was of type specifically allowed by statutory provision, i.e., name, address, former addresses, places of employment, and former places of employment." See Soghomonian v U.S. (E.D. Cal 2003) 278 F.Supp. 2d 1151

Plaintiff contends that TransUnion, Experian and Equifax should not have complied with the City of Palo Alto search warrants which were not an order of a court having jurisdiction to issue such an order pursuant to §1681b, and they should not have complied with the search warrant's request for plaintiff's consumer credit report instead of being limited to §1681f.

"Under Fair Credit Reporting Act, corporation including division which provided subscribers with consumer credit information could not comply with grand jury subpoena duces tecum seeking credit information on particular individual where subpoena was not authorized by magistrate or district court." See In Re Green (C.A.9(Cal.) 1980) 633 F.2d 825

Plaintiff contends that the out-of-state/out-of-jurisdiction search warrants infringed and invaded plaintiff's privacy rights, unlike "Rakas v Illinois" cited by Santa Clara County D.A., Thomas Plattery, thereby giving plaintiff standing to at least challenge the seizure of plaintiff's consumer credit reports, financial records and other personal information. See U.S. v Kimball (C.A.1(Me.)1994) 25 F.3d 1

Plaintiff contends that the subsequent search warrants based on the obtaining, disclosing and use of plaintiff's consumer credit report(s), including but not limited to; Visa USA, T-Mobile, Avis, Hertz, Airline Reporting Corporation (A.R.C.), San Francisco International Airport, Public Storage, Plaintiff's laptop, plaintiff's Las Vegas residence should all be suppressed and/or ruled inadmissible, and deemed fruit of a poison tree.

Plaintiff contends that, as the search warrants were issued pursuant to California Government Code §7475, the California Right To Financial Privacy Act §7460 et seq clearly provides a remedy under State exclusionary Rule and standing for plaintiff to challenge the admissibility of evidence obtained in violation of State law, contrary to County of Santa Clara D.A. Thomas Flattery's stated belief.

Plaintiff contends that the citing of In re Lance W. supra, by County of Santa Clara D.A Thomas Flattery regarding Proposition 8 is misplaced.
   "The full text of section 28(d) states: "Right to Truth-in-Evidence. Except
   As provided by statute hereafter enacted by a two thirds vote of the membership
   in each house of the legislature, relevant evidence shall not be excluded in any criminal
   proceeding, including pretrial and postconviction motions and hearings, or in any trial
   or hearing of a juvenile court for a criminal offense, whether heard in a juvenile
   or adult court. Nothing in this section shall affect any existing statutory rule of
   evidence relating to privilege or hearsay, or Evidence Code sections 352, 782 or 1103.
   Nothing in this section shall affect any existing statutory or constitutional right
   of the press." See In re Lance, supra.

Plaintiff contends that the CRFPA §7460 et seq takes precedent and pro tanto overrides and annuls Proposition 8 referred to in In re Lance W., supra, and further allows plaintiff to challenge the search warrants under California's vicarious exclusionary rule, thus granting plaintiff a state and/or federal remedy/remedies.

"§7491 Chapter to supersede other laws

Should any other law grant or appear to grant power or authority to any person to violate the provisions of this chapter, the provisions of this chapter shall supersede and pro tanto override and annul such law, except those statutes hereinafter enacted which specifically refer to this chapter." (underlines added)

"7489 Admissibility of evidence

Evidence obtained in violation of this chapter is inadmissible in any proceeding except a proceeding to enforce the provisions of this article."

Plaintiff contends that since Proposition 8 and In re Lance W., supra, were after the CRFPA §7460 et seq and do not "specifically refer" to §7460 et seq in any way, then the CRFPA §7460 et seq "shall supersede and pro tanto override and annul", and therefore take precedent, regarding Proposition 8 and In re Lance W., supra. Plaintiff contends that if the legislature/adopting body in Proposition 8 and In re Lance W., supra, therefore would have or should have specifically referred to §7460 et seq. "The adopting body is presumed to be aware of existing laws and judicial construction thereof ...." See In re Lance W., supra.

Plaintiff contends that; under the familiar rule of construction, EXPRESSIO UNIUS EST EXCLUSIO AlterIus, where exceptions to a general Rule are specified by statute, other exceptions are not to be implied or presumed. So since the exception is clear in §7491 and Proposition 8 and/or In re Lance W., supra, do not "specifically refer to" §7460 et seq, then Proposition 8 and/or In re Lance W., supra, should NOT "be implied or presumed."

Plaintiff contends, and requests that this court apply, the well-established principles of construction are that any ambiguities regarding §7460 et seq, Proposition 8, In re Lance W., supra and/or California's exclusionary rule, should be resolved in favor of the plaintiff.

"Under California law, legality of a search and seizure may be challenged by anyone against whom evidence thus obtained is used."
See Zurcher v Stanford Daily (U.S. Cal. 1978) 98 S.Ct 1970, rev. on other grounds

Plaintiff contends that the TransUnion, Experian and Equifax search warrants violated the FCRA §1681 et seq, the Visa USA, T-Mobile, Avis, Hertz, ARC, Public Storage, plaintiff residence in Las Vegas, searches violated plaintiff's rights to privacy, the subsequent subpoenas duces tecums, were fruit from the poison tree, the TransUnion, Experian, Equifax, Visa USA, T-Mobile, Avis, Hertz and ARC search warrants were in violation of the (IV) fourth Amendment and should all be suppressed, quashed, ruled inadmissible as evidence in any criminal proceeding, and/or declaratory and/or injunctive relief should be granted by this court.

Page 13/26

Plaintiff contends that Santa Clara County D.A. Thomas Flattery's citing of United States v Miller, supra, is misplaced and does not apply.

"The Right To Financial Privacy Act

Congress enacted the Right to Financial Privacy Act in 1978 in response to United States v Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed 2d 71(1976) in which the Supreme Court held that a customer of a financial institution has no standing under the Fourth Amendment of the Constitution to contest government access to his financial records. H.R. Rep. No. 1383 95th Cong. 2nd. Sess. 33, reprinted in (1978) U.S. Code Cong. & Ad. News 9273, 9306 (hereinafter H.R. Rep No. 1383). Although the Court in Miller recognized the sensitive nature of a banking customer's financial records, it concluded that since the records are the property of the financial institution, the customer has no recognizable privacy interest in them. 425 U.S. at 440-441, 96 S.Ct. at 1622-23. Congress nevertheless, noting that the Fourth Amendment does not prevent or advise against legislative or executive efforts to establish nonconstitutional protections against possible abuse, see Zurcher v Stanford Daily, 436 U.S. 547, 567, 98 S.Ct 1970, 1982, 56 L.Ed 2d 525(1978), enacted the RFPA with substantial input on the part of the law enforcement agencies. H.R. Rep No. 1383 at 4. In so doing, Congress and most law enforcement agencies held the belief that privacy protection and effective law enforcement were compatible. Id. The basic thrust of the Act is that customers of financial institutions are entitled to notice of any government request for their financial records and an opportunity to challenge the request." (underlines added) See Hunt v U.S. S.E.C. (N.D. Tex 1981) 520 F. Supp. 580

PAGE 14/26

Plaintiff is a "customer" of the "financial institution" of Visa, and F.B.I/REACT Officer Alex Bouja is a "government authority" and person", within the meaning of §3401 et seq.

Plaintiff is a "customer" of the "financial institution" of Visa, and City of Palo Alto - Magistrate Charles Hayden, Officer Dave Flohr, City of Menlo Park - Alex Bouja, County of Santa Clara - D.A. James Sibley and Thomas Fletcher, and California Attorney General's Office - D.A.G. Bud Frank, are a "local agency", "person", and "state agency", within the meaning of §7460 et seq.

Plaintiff contends that TransUnion, Experian and Equifax failed to follow reasonable procedures, including but not limited to; by not obtaining the required certification of §1681e Compliance procedures, and disclosing plaintiff's consumer credit report(s) based on the invalid search warrants which contain "Non-Disclosure" stipulations, read "Pursuant to California Government Code §7475, were out-of-state search warrants, and were not the order of a court having jurisdiction to issue such an order, in violation of §1681 et seq.

Plaintiff contends that therefore TransUnion, Experian and Equifax acted negligently, willfully and/or in reckless disregard for plaintiff's rights pursuant to §1681 et seq. See Centuori v Experian Information Solutions, Inc., supra.

" § 1681e Compliance Procedures

(A) Identity and purposes of credit users

Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under Section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer Reporting Agency shall make a reasonable effort to verify the identity of the new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in Section 1681b of this title. "

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr, City of Menlo Park and F.B.I/REACT Alex Bouja, County of Santa Clara - D.A. James Sibley and Thomas Flattery, and California Attorney General's Office- DAG. Bud Frank violated the FCRA § 1681 et seq including but not limited to; § 1681b (f) by obtaining and using plaintiff's consumer credit report

Plaintiff contends that the search warrants' "Non-Disclosure" stipulation was not supported by probable cause, and violated plaintiff's right to be notified and to possibly contest the disclosures of the search warrants prior to their execution.

Page 16/26

"It is entirely possible, and even probable that the financial institution's of which the Plaintiff's are customers could have released the records without the Plaintiffs ever having knowledge of the disclosure. Without the availability of injunctive relief then, the entire purpose of the Act is gutted. . . . . . . . As a consequence, the customer's records are or may be released without the customer ever having the opportunity to challenge the request. The initial determination made by the requesting government authority that the RFPA does not apply effectively defeats the customer's challenge rights under the Act."

See Hunt v U.S. S.E.C., supra.

Plaintiff, likewise, makes the same analogy regarding the search warrants and their "Non-Disclosure" stipulations, as well as the Santa Clara County D.A. Thomas Flattery's argument and Santa Clara County's denial of plaintiff's objections to the disclosure, obtaining and use of plaintiff's consumer credit report(s), financial records(s) and other personal records.

Plaintiff requests that this Court grant relief for the enclosed multiple violations in the form of suppression, permanent injunctive relief, declaratory relief and/or rule that all evidence obtained be deemed inadmissible in any criminal proceeding, thereby reversing the state court's previous decisions regarding the disclosure, obtaining and use of plaintiff's consumer credit report(s), financial records(s) and all other information subsequently obtained therefrom.

Page 16(A)/26

"§1681b(f) Certain use or obtaining of information prohibited

A person shall not use or obtain a consumer report for

any purpose unless--

(1) the consumer report is obtained for a purpose for which

the consumer report is authorized to be furnished under this section;

and

(2) the purpose is certified in accordance with section 1681e

of this title by a prospective user of the report through a

general or specific certification. "

Plaintiff contends that VISA violated §3401 et seq. and/or §7460 et seq.
by providing F.B.I / REACT and City of Menlo Park - Alex Bonta with
plaintiff's financial record(s) without legal process and/or compliance with
§3401 et seq. And/or §7460 et seq. (See VISA USA search warrant affidavit in Exhibits)

"§3402 Access to financial records by Government authorities

prohibited; exceptions

Except as provided by section 3403(c) or (d), 3413 or 3414 of

this title, no Government authority may have access to or obtain

copies of, or the information contained in the financial records

of any customer from a financial institution unless the financial

records are reasonably described and--:...... "

Plaintiff also contends that VISA should not have provided plaintiff's financial
records based on the search warrants, in violation of §7460 et seq.

Page 17/26

" § 3403 Confidentiality of financial records

(b) Release of records by financial institutions prohibited

No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter. "

" § 7470 Requests for disclosures; particularity and scope; records; crimes

(a) Except as provided in Section 7480, no officer, employee, or agent of a state or local agency or department thereof, in connection with a civil or criminal investigation of a customer, whether or not such investigation is being conducted pursuant to formal judicial or administrative proceedings, may request or recieve copies of, or the information contained in, the financial records of any customer from a financial institution unless the financial records are described with particularity and are consistent with the scope and requirements of the investigation giving rise to such request and: . . . . "

"Further, the financial institutions may not release the requested financial records until the government "certifies in writing to the financial institution that it has complied with the applicable provisions" of the RFPA, including notice to the customer of the existence of the subpoena, summons, search warrant, or request, the nature of the government's inquiry, and permitting the customer sufficient time to respond to the notice."

Page 18/26 (See Anderson v LaJolla State Bank, infra.)

"§ 7471 Requests in connection with civil or criminal investigation of customer; nondisclosure; liability for disclosures and refusals to disclose

(A) Except in accordance with requirements of Title 11 (commencing with Section 14160) of Part 4 of the Penal Code or Section 7473, 7474, 7475, or 7476, no financial institution, may provide or authorize another to provide to an officer, employee, or agent of a state or local agency or department thereof, any financial records, copies thereof, or the information contained therein, if the director, officer, employee, or agent of the financial institution knows or has reasonable cause to believe that the financial records or information are being requested in connection with a civil or criminal investigation of the customer, whether or not an investigation is being conducted pursuant to formal judicial or administrative proceedings."

Plaintiff contends that City of Menlo Park F.B.I./REACT Alex Bouja violated plaintiff's rights to privacy by obtaining plaintiff's records from Visa, Avis, Hertz, ARC, United Airlines, plaintiff's luggage from United Airlines checked baggage system, and seizing and searching plaintiff's cellphone/cell phone numbers in violation of the Fourth Amendment, without legal process, along with City of Palo Alto Officer Dave Plohr. Plaintiff requests that all of which be suppressed and/or deemed inadmissible in any criminal proceedings.
(See Visa, Avis, Hertz and ARC search warrants, affidavits and Exhibits A-E, 1-23)

PAGE 19/26

"The Right to Financial Privacy Act has comprehensive provisions concerning the customer's Right to know of government's attempts to procure his/her/its financial records." . . . . .

"§ 3412(b) Requires notice to the customer that the agency that originally procured the records is transferring the records to another governmental agency or department, a practice which is generally prohibited by the Act "unless the transferring agency or department certifies in writing that there is notice to believe that the records are relevant to a legitimate law enforcement inquiry within the jurisdiction of the recieving agency or department." See In re Castiglione, supra.

Plaintiff contends that FBI/REACT Alex Bouja violated § 3401 et seg by obtaining plaintiff's financial records without legal process from Visa and then transferring plaintiff's financial records to City of Palo Alto Officer Dave Flohr, who then used and subsequently obtained plaintiff's financial records from Visa with the Visa USA search warrant, hence in violation of § 7460 et seg. See Visa USA search warrant affidavit

"Oral Response by bank Employee to oral Request by Air Force investigator Regarding bank records of service member was Request for disclosure of financial records and was governed by Right to Financial Privacy Act (RFPA), and thus, Employee's Response to inquiry, which was not proceeded by mandated procedural steps, violated RFPA; oral disclosure was bank-related information derived from service member's bank records, and RFPA does not require that such information be in writing to be protected." See Anderson v La Junta State Bank (C.A. 10 (Colo) 1997) 115 F.3d 756

PAGE 19A/26

" A credit card holder would reasonably expect that information about him disclosed by charges made on a credit card will be kept confidential unless disclosure is compelled by legal process, ... " See People v Blair (Cal 1979) 159 Cal. RPTR 818, 25 Cal. 3d 640 - motion granted on other grounds.

Plaintiff contends that the scope of the search warrants were too broad to comport with the particularity requirements of the Fourth Amendment and/or § 7470 and/or the reasonableness requirements of § 3402.

" Scope of search was unreasonable, where documents provided by credit card company to prosecution constituted entire file of company relating to defendant's account." See People v Blair, supra.

" Finally, I previously noted that section 3402 imposes the requirement that a government authority must "reasonably describe" the financial records which it is seeking if the request falls within the ambit of the RFPA. The legislative history of the Act states quite bluntly that "this term is intended to mean that records being sought must be described as specifically as possible, and that a blanket request for 'All records' is insufficiently specific. H.R. Rep. No. 1383 at 50" See Hunt v U.S.S.E.C., supra.

Plaintiff contends that due to the multiple violations aforementioned that all search warrants should be deemed invalid, suppressed and/or inadmissible, that the subsequent search warrants and subpoenas should be suppressed, quashed and/or ruled inadmissible and/or plaintiff should be granted declaratory and/or injunctive relief, and that this Motion for Summary Judgment should be granted.

"§ 3418 Injunctive Relief

"In addition to any other remedy contained in this chapter,
injunctive relief shall be available to require that the procedures
of this chapter are complied with. In the event of any successful
action, costs together with reasonable attorney's fees as determined
by the court may be recovered."

"§ 7487 Injunctive relief

In addition to any other remedy contained in this chapter
or otherwise available, injunctive relief shall be available to
any customer aggrieved by a violation, or threatened violation,
of this chapter. In any successful action by the customer,
costs together with reasonable attorney's fees as determined
by the court may be recovered."

"Injunctive relief is available under section of Right to Financial Privacy
Act to require that procedures of Act are complied with without regard
to whether or not government authority has actually obtained access to
customer's financial records." See Hunt v U.S. S.E.C. supra.

"Where government authority has acted with reckless disregard for rights
of individual under Right to Financial Privacy Act and failures to comply
with procedures of Act are not merely technical defects, injunctive
relief is warranted." See Hunt v U.S. S.E.C supra.

Plaintiff contends that City of Palo Alto - Magistrate Charles Hayden and Officer Dave Flohr did not have good faith in the Trans Union, Experian, Equifax, Visa USA, T-Mobile, A.R.C. or Hertz search warrants.

Visa USA is outside the jurisdiction of City of Palo Alto, pursuant to § 7473(d)(i), T-Mobile is located in the state of Washington, A.R.C. is located in the state of Virginia, Hertz is located in the state of Oklahoma, along with Trans Union, Experian and Equifax being located outside the state of California, as previously noted.

Plaintiff contends that a reasonable officer would have known that the search warrants' locations of the above-mentioned states, were outside the officer's jurisdiction, in violation of the Fourth Amendment.

"A judicial officer's writ cannot run outside the officer's jurisdiction."
    See U.S. v Strother, supra.

"The Government bears the burden of proving that in searching for and seizing the disputed evidence, the searching agents held an objective good faith belief that the Search Warrant was valid. Properly relying on the holdings of the 9th Circuit Court of Appeals in United States v Kow, 58 F.3d 423 (9th Cir 1995) and Center Art Galleries-Hawaii, Inc. v United States, 875 F.2d 747 (9th Cir 1989), the Magistrate Judge correctly found they did not."
    See U.S. v SDI Future Health, Inc., supra.

Page 22/26

In "Sears", the court discussed the three factors to be considered in determining whether the exclusionary rule should apply in a particular case: "(1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error." See United States v Sears, 411 F.3d 1124, 1128 (9th Cir 2005)

Plaintiff contends that plaintiff has a reasonable, objective and subjective expectation of privacy, as well as a privacy interest, in the credit reports and financial records, based on the (IV) Fourth Amendment, the FCRA § 1681 et seq, the RFPA § 3401 et seq, the CRFPA § 7460 et seq and the California Constitution, that society would recognize as objectively reasonable in this 21st Century, unlike in United States v Miller, supra, and that plaintiff's personal paper(s) consumer credit report(s) and/or financial record(s) will only be obtained by valid legal process, including, but not limited to; particularly when obtained by a search warrant.

"The Fourth Amendment warrant requirement insures that the inferences supporting probable cause be drawn by a neutral and detached magistrate, rather than by those engaged in gathering evidence of crime." See U.S. v SDI Future Health, supra.

Page 23/26

"For Pappas to prevail on his summary judgment motion, he must demonstrate that no genuine issue of material fact exists over four elements. First, Pappas must show that the Calumet Police Department is a "user" within the FCRA. Since the City admits that it is in fact a "user" under the FCRA, no genuine issue of material fact exists concerning this element. Second, Pappas must demonstrate that the credit report obtained by the Calumet Police is a "Consumer Report" under the FCRA. Third, Pappas must establish that the Calumet Police obtained his credit report under false pretenses. And fourth, Pappas must show that there is no dispute of fact that the Calumet Police acted willfully or negligently when it obtained his consumer report under false pretenses."
    See Pappas v City of Calumet City, supra.


Plaintiff contends that there are no genuine issues of material fact over the four elements noted in "Pappas" for plaintiff to prevail on his summary judgment motion, as follows;
    1) The City of Palo Alto, County of Santa Clara Admit that it is in fact a "user" within the FCRA


    2) There is no doubt that plaintiff's "consumer report" was disclosed, obtained and used. (See Exhibits A-E, 1-23) (Also, see attached Exhibit B-July 21, 2005-Opposition-"II. Factual and Procedural History")
    3) The City of Palo Alto, County of Santa Clara obtained plaintiff's consumer credit report under false pretenses, for impermissible purposes, with invalid search warrants that were not an order of a court having jurisdiction to issue such an order, and by subsequently using plaintiff's consumer credit report for other purposes not stated in their affidavits.

PAGE 24/26

4) City of Palo Alto, County of Santa Clara, City of Menlo Park, F.B.I./REACT, California Attorney General's Office, Magistrate Charles Hayden, Officer Dave Flohr, Officer Alex Bouja, D.A. James Sibley, D.A. Thomas Flattey and D.A.G. Bud Frank, acted negligently, willfully and/or in reckless disregard for plaintiff's rights, including but not limited to; by obtaining and/or using plaintiff's consumer credit report(s) without certifying with the credit reporting agencies pursuant to §1681b(f), by using plaintiff's consumer credit report(s) for impermissible purposes, and by obtaining plaintiff's consumer credit report(s) with invalid out of state/out of jurisdiction search warrants that were not an order of a court pursuant to §1681b.

"Any person who willfully or negligently fails to comply with any requirement under the FCRA with respect to any consumer may be civilly liable to that consumer. See 15 U.S.C. §§1681n, 1681o, and 1681q. Consequently, if a user acquires a consumer credit report under false pretenses in violation of §1681q, then the consumer may recover civil damages from that user." See Pappas v City of Calumet City, supra.

Plaintiff contends that for the enclosed/mentioned reasons, plaintiff has established a prima facie case as needed to prevail on summary judgment, and hereby requests that this court grant plaintiff summary judgment and allow plaintiff's case to proceed to trial for actual, compensatory and punitive damages. (Note: In 1996, Congress amended §1681n to expressly provide a cause of action against a party for "obtaining a consumer report under false pretenses or knowingly without a permissible purpose." See Duncan v Handmaker (C.A. 6 (KY.) 1998) 149 F.3d 424)

Plaintiff requests that this Court exercise pendent and/or ancillary jurisdiction over all subsequent issues which have sprung forth directly and/or indirectly from the violations of the FCRA § 1681 et seq, the RFPA § 3401 et seq, the CRFPA § 7460 et seq, federal and state constitutional rights, and/or plaintiff's rights to privacy. All of which, have been raised and/or exhausted in the California Supreme Court, and all of which this Court has jurisdiction.

Those claims include, but are not limited to; ineffective assistance of counsel, statute of limitation violations, illegal search and seizure, excessive bail, due process and equal protection violations, prosecutorial misconduct, and suggestive identification, as noted in California Supreme Court case numbers S156104, S157535 and the Petition for Review.

Plaintiff contends that plaintiff's participation in the Santa Clara County Regimented Correction Program (RCP) and subsequent completion triggers the due process rights and equal protection rights of the U.S. Constitution, where the state has created a liberty interest that upon successful completion of the RCP bootcamp-style diversion program pursuant to California Penal Code 1000-1001.75 and the Community-Based Punishment Act P.C. 8050 et seq, plaintiff would be released as other participants were released. (SEE the RCP certificates in Exhibits)

Plaintiff thereby request that this Court order plaintiff's immediate release, hold an evidentiary hearing and appoint counsel, and/or reverse plaintiff's state court criminal conviction and grant plaintiff immediate release on personal recognizance.

PAGE 25/26

"Appellant had remained incarcerated until November 4, 1998, at which time she was released to the Regimented Correction Program. This program included 12 weeks of treatment while incarcerated and release to a sober living environment. The final phase of the program involved strict supervision by a probation officer. Appellant was currently in the final phase of the program." See In re Brittany C, (Cal. App. 6 Dist 1999) 90 Cal RPTR. 2d 737

Plaintiff was a participant, and successfully completed the same Regimented Correction Program as In re Brittany C, supra, in the same Santa Clara County, and therefore should be given the same release, and not be treated arbitrarily, and now be granted an immediate order of release.

    "In Tracy, we held that a participant in a temporary release program must be provided with a Wolff-type hearing before he or she may be deprived of his or her liberty interest in participating in that program."
    See Anderson v Recore (C.A.2(N.Y.)2006) 446 F. 3d 342 -rev'd on other grounds, also see Wolff v McDonnell, 418 U.S. 539, 945. Ct 2963 and Morrissey v Brewer, 408 U.S. 471, 92 S. Ct. 2593

Lastly, plaintiff hereby demands a JURY TRIAL for compensatory, actual and/or punitive damages pursuant to §1681 N, §1681 o, §1681 g, §3417, §3415, §7485, §7486, §1983, and all other statutes that this court deems fit.
Wherefore, plaintiff prays for all relief which is just and proper.

Dated: MAY 16, 2008                
                          Signature of Plaintiff In Pro Se
            PAGE 26/26

EXHIBIT

A



Consumer Response Center

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

August   02, 2007

Howard Young
F44590 3A 04-143
PO Box 3461
Corcoran, CA  93212

Re:  FTC Ref. No.  11189923

Dear Howard Young:

   This is in response to your complaint concerning your credit report.  While the FTC does not collect or keep credit records on individual consumers, it is responsible for making sure that credit bureaus report accurate and up-to-date information.  We have enclosed a brochure that addresses your concerns.  Between the brochure and this letter we hope to be able to answer all of your questions.

   Credit bureaus are private information distributors which report credit information supplied by retailers who use their services.  Most credit bureaus operate locally and you should look in the yellow pages of your telephone book under "credit bureaus" or "credit reporting agencies" to find the credit bureau or bureaus most likely to have your file.  It is possible that you may have a file in more than one local agency.   In addition to the local credit bureaus, there are three national credit bureaus that may have you on file:

      - Equifax, P.O. Box 740241, Atlanta, GA 30374-0241
   (800) 685-1111

   - Experian, P.O. Box 949, Allen, TX 75013
   (888) 397-3742

   - Trans Union, 760 West Sproul Road, P.O. Box 390, Springfield, PA 19064-0390
   (800) 916-8800

   The Fair Credit Reporting Act ("FCRA") became effective in 1971 and was significantly amended in 1997.  It was designed to protect consumers against the circulation of inaccurate or obsolete information reported about them in consumer reports (a credit report is one type of consumer report).  Negative information, if accurate, generally may be reported for 7 years with the exception of a bankruptcy, which may be reported for 10 years.

   The Fair Credit Reporting Act allows a consumer reporting agency to issue a consumer report to a person ("user") which it has reason to believe has a legitimate business need for the information in connection with a business transaction involving the consumer.  When

permissible purposes exist, parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumer's permission with the exception of employment and medical purposes. Credit reports containing medical information or reports issued to present or perspective employers always require the consent of the consumer.

The FCRA provides that any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined, imprisoned for not more than 2 years, or both. Authority to bring criminal action for violation resides solely in the U.S. Department of Justice, not the Federal Trade Commission.

While it is permissible under the FCRA for credit reporting agencies to furnish lists of names and addresses to credit card and insurance companies, Section 604(e) allows consumers to "opt out" of these lists. Proper notification of the credit reporting agency will exclude the consumer's name and address from any list that the credit reporting agencies routinely provide to credit card and insurance companies. To properly notify the credit bureau, you should call the toll free number that shall be included in the unsolicited offers, or contact the credit bureau directly and fill out an "opt out" form. The phone call will remove your name for two years. Filling out the credit bureau's "opt out" form will permanently keep your name off the lists.

If you are denied credit because of a credit report, the FCRA requires the creditor to tell you the name and address of the credit bureau which provided the information. You should then contact that credit bureau to obtain your credit report. You have the right to learn the nature, substance, and sources of information in your file at the credit bureau at the time of your request. Most consumers request disclosures in written form, however, at your request, disclosures may be obtained in person, upon reasonable notice, during normal business hours, or by telephone if the consumer makes a written request for telephone disclosure and pays the cost of the telephone call. For either type of disclosure, section 610 of the FCRA requires that you must provide proper identification before you receive this information. If you request the credit report within 60 days of the denial notice, the report is free. At other times, the credit bureau may charge a fee of $9.00.

Section 611 of the FCRA provides the procedure to be followed if the consumer disputes the accuracy of the information in the consumer's file. If information in your file is inaccurate, you should write both the consumer reporting agency and the creditor or other party who furnished the inaccurate information to the consumer reporting agency. Tell both of them that a dispute exists. You should provide both of them with any information that you have that will assist them in investigating your dispute. You should clearly state the facts concerning the disputed item and include copies of any letters or other documents that support your position. We suggest that you send your letters via certified mail, and that you retain a copy for your records. Remember, the right to dispute information applies only to items that are incomplete or inaccurate. The FCRA does not give you the right to dispute information just because it is unfavorable.

Consumer reporting agencies are required to investigate your dispute usually within 30 days, unless the bureau has reasonable grounds for determining that the dispute is frivolous or irrelevant. The creditor or other entity must also conduct a reinvestigation and notify the consumer reporting agency of the results within that 30-day period. If the item is wrong or can no longer be verified, it must be corrected or dropped from your file. If the item is verified by the creditor (or other information furnisher) and accepted by the consumer reporting agency, the

information will remain in your file at the consumer reporting agency. After the investigation, the consumer reporting agency will send you an updated copy of your credit report if it has changed as a result of the investigation. If, after the credit bureau has concluded its reinvestigation, you still don't agree that your report is accurate, you should write a short statement of 100 words or less giving your side of the situation and ask the consumer reporting agency to include it in your file. This statement or a summary of it then becomes a part of your credit report. If your report has changed based on your dispute, you have the right to ask the credit bureau to send your updated report to anyone who has received a copy of your credit report within the last six months (two years if sent to an employer or potential employer). You may be charged a small fee for having these updated reports sent.

If information is inaccurate or has not been verified by the furnisher within the 30-day period, it must be removed from your file. It can only be reinserted in the file if the creditor or other furnisher of information certifies its accuracy to the credit bureau. In turn the credit bureau must notify you in writing that the information is being reinserted. If the furnisher finds the information to be accurate and you still dispute the information, the furnisher cannot continue to report that information unless the information is accompanied by a statement that it is disputed.

Applying for credit, insurance, or financing for large purchases creates credit record inquiries. A creditor may ask your local credit bureau for the number of inquiries it has received about you. Excessive inquiries may indicate to a creditor that you may become overextended with too many active credit accounts and may cause a creditor to deny your application for credit because of excessive inquiries.

The FCRA does not specifically state how long inquiries may remain on the credit report. However, the FCRA does require that credit bureaus disclose to consumers any recipient of a consumer report for a two year period regarding employment purposes and a six month period for any other purpose. The law does not require that inquiries stay on the credit report for any specified period of time, but only that the credit bureau must be able to provide consumers with this information upon request. Because the FCRA does not specifically state how long inquiries may remain on the credit report, credit bureaus have the right to set their own policy or procedure regarding how long inquiries will remain on the credit report.

If you feel that your credit report does not accurately portray your creditworthiness, Regulation B, which implements the Equal Credit Opportunity Act, provides that you have the right to present information to a prospective creditor to show that your credit report does not reflect your ability or willingness to repay. It is possible that the consumer reporting agency used by the firm to which you applied for credit does not include in their files those organizations with which you have already established credit (an occurrence which is not in violation of the FCRA). To overcome this you may wish to provide the creditor with copies of bill statements and other information about your credit history from other creditors with which you have done business. The creditor must consider this information at your request. Also, if you know there is adverse information on your credit report, it is often best to explain the circumstances surrounding that item and provide other positive information to the creditor at the time you complete an application.

We cannot act as your lawyer or intervene in a dispute between a consumer and a credit bureau or between a consumer and a creditor or furnisher of information. The private enforcement provisions of the FCRA permit the consumer to bring a civil suit for willful

noncompliance with the Act. You may receive actual damages or punitive damages up to $1,000 for willful noncompliance (Section 616). You may also sue for negligent noncompliance and recover actual damages sustained by you (Section 617). Attorney's fees, as determined by the court, will be allowed for both forms of action. If you believe that the FCRA has been violated, we suggest that you consult a private attorney or a local legal services organization.

Sincerely yours,

Consumer Response Center

Enclosures:
1. Fair Credit Reporting (CRE-17)
2. How to Dispute Credit Report Errors (CRE-21)

EXHIBIT
B

<pre>
 1    GEORGE W. KENNEDY,
      DISTRICT ATTORNEY, #52527
 2    THOMAS L. FLATTERY
      DEPUTY DISTRICT ATTORNEY, # 186856
 3    COUNTY GOVERNMENT CENTER, WEST WING
      70 W. Hedding Street
 4    San Jose, California 95110
      Telephone: (408) 792-2629
 5
 6    Attorneys for the People
</pre>



**F I L E D**

JUN 0 2 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By _____ DEPUTY

<pre>
 7           SUPERIOR COURT OF THE STATE OF CALIFORNIA,
 8              IN AND FOR THE COUNTY OF SANTA CLARA
 9
10    PEOPLE OF THE STATE OF          NO. CC454838
      CALIFORNIA,
11                                    OPPOSITION TO MOTION TO
                          Plaintiff,  TRAVERSE, QUASH, AND TO
12                                     SUPPRESS EVIDENCE
              v.
13                                    DATE: JUNE 2, 2005
      HOWARD YOUNG,                   TIME: 8:30 p.m.
14                                    DEPARTMENT: 23
                          Defendant.  ESTIMATED TIME : 10 min.
15
16                       I. Introduction.
17        DEFENDANT filed a motion to traverse and suppress evidence recovered with several

18    search warrants.  While he quarrels with the affiant's wording on a few points, he fails to establish

19    that the affidavits contain any false statements or that they would not contain sufficient information

20    to justify a warrant even if the challenged wording were changed too something more to

21    DEFENDANT's liking.  Moreover, DEFENDANT can not establish a constitutionally protected

22    expectation of privacy in records obtained from third parties.
23
24
25
</pre>

I.      **DEFENDANT Has No Privacy Interest**
**In Records Held By A Third Party.**

DEFENDANT challenges nine separate search warrants relating to business records maintained by various companies with which he did business. He has no standing to object to those warrants.

It is well settled that a defendant challenging a search, must first establish "a legitimate expectation of privacy in the invaded place." (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)  The United States Supreme Court clearly held that a person has no expectation of privacy in information that is voluntarily provided to a third party.  (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]).  As in the current case, the *Miller* defendant objected to disclosure of his personal banking records.  The High Court rejected his argument and explained:

> The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. (*United States* v. *White*, 401 U.S. 745, 751-752 (1971)). This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." (*Id.*, at p. 443 [48 L.Ed.2d at p. 79].)

Following Proposition 8, the admissibility of evidence in California criminal trials depends on the federal rules of exclusion. (*In re Lance W.* (1985) 37 Cal.3d 873, 873.)  Federal law does not provide a remedy for a challenged search of the third party records that are "voluntarily conveyed to the [businesses] and exposed to their employees in the ordinary course of business." (*People v. Pearson*, 169 Cal. App. 3d 319 (citing, *Miller*, supra 401 U.S. at 442)

Accordingly, DEFENDANT's motions regarding records from E-bay, Paypal, Transunion, Experian, Equfax, ARC, T-Mobile, Visa, Avis and Hertz all fail for lack of standing.

/ / /

/ / /

231

1       **II.    The Affidavit was proper.**

2           In the leading case of *Franks v. Delaware* (1978) 438 U.S. 154, the Court held a

3    defendant has a limited Fourth Amendment right to challenge the validity of a search warrant by

4    controverting the factual allegations made in the supporting affidavit.  A defendant is entitled to

5    an evidentiary hearing on the affidavit's veracity *only after* making a *substantial preliminary*

6    *showing* that (1) the affidavit includes a false statement made "knowingly and intentionally, or

7    with reckless disregard for the truth,"  and (2) "the allegedly false statement is necessary to the

8    finding of probable cause." (*Id.* at pp. 155-156; *People v. Hobbs* (1994) 7 Cal.4th 948, 974;

9
10   *People v. Luttenberger* (1990) 50 Cal.3d 1, 9-11.)

11          Because there is a presumption of validity in favor of the affidavit supporting a search

12   warrant, a challenger's attack,

13              must be more than conclusory and must be supported by more than a mere desire
14              to cross examine.  There must be allegations of deliberate falsehood or of reckless
                disregard for the truth, and those allegations must be accompanied by an offer of
15              proof.  They should point out specifically the portion of the warrant affidavit that
                is claimed to be false; and they should be accompanied by a statement of
16              supporting reasons.  Affidavits or sworn or otherwise reliable statements of
                witnesses should be furnished, or their absence satisfactorily explained.  Allega-
17              tions of negligence or innocent mistake are insufficient.
     (*Franks v. Delaware, supra,* 438 U.S. at p. 171.)
18
19              In addition to this substantial preliminary showing that a false statement knowingly

20   and intentionally, or recklessly was included in the affidavit, a defendant must also show that when

21   this misstatement is set to one side, the remaining content of the affidavit is insufficient to support a

22   finding of probable cause. (*Id.* at pp. 171-172.)  Only then is the defense entitled to an evidentiary

23   hearing.  If sufficient unchallenged information remains to support a finding of probable cause, the

24   motion to traverse must be denied without a hearing.

25          Here, DEFENDANT challenges two statements contained in the affidavit. Neither is false.

**232**

1    First, DEFENDANT cites a statement that "over the last year several possible suspects have

2    been considered, but no evidence has been found to tie them to this series of crimes."

3    DEFENDANT then lists three individuals who were investigated with respect to one separate

4    incident each. However, as the affiant clearly stated, this case involved *a series* of nearly identical

5    incidents spanning several years. *The series of crimes* is connected by the suspect's "M.O." as

6    described in detail by the affiant. While the affiant acknowledged that other suspects were

7    considered, he correctly stated that none could be tied to *the series of crimes*. DEFENDANT has

8    done nothing to suggest that this statement is in any way untrue.

9    

10    DEFENDANT next challenges a statement relating to an innocent buyer of stolen memory

11    chips who traced the chips back to a seller with the screen name of "Bro.H." DEFENDANT reads

12    that phrase to mean the buyer purchased the chips directly from Bro.H. The affiant makes no such

13    claim. Rather, the affiant correctly states that the buyer traced the chips and found that Bro.H had

14    listed 50 similar chips within about a week of when they were stolen. The statement is not false.

15    Moreover, even if the further explanation suggested by DEFENDANT were added, the result would

16    have no effect on probable cause.

17                **III.    Conclusion.**

18    Defendant has failed to make a substantial preliminary showing that the affidavit is false and

19    that the challenged statements are necessary for finding probable cause. The court should not allow

20    an evidentiary hearing.

21    

22    Dated: June 1, 2005                        Respectfully submitted,
                                               GEORGE W. KENNEDY
23                                             DISTRICT ATTORNEY

24                                             By
                                               Tom Flattery
25                                             Deputy District Attorney

**233**

1   GEORGE W. KENNEDY,
    DISTRICT ATTORNEY, #52527
2   THOMAS L. FLATTERY
    DEPUTY DISTRICT ATTORNEY, # 186856
3   COUNTY GOVERNMENT CENTER, WEST WING
4   70 W. Hedding Street
    San Jose, California 95110
5   Telephone: (408) 792-2629

6   Attorneys for the People

FILED

JUN 2 9 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
By _____
        S. CRUA        Deputy

7               SUPERIOR COURT OF THE STATE OF CALIFORNIA,
8                   IN AND FOR THE COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF                NO. CC454838
10  CALIFORNIA,
                                          OPPOSITION TO MOTION TO
11                          Plaintiff,    QUASH SUBPOENA DUCES
                                          TECUM
12          v.
                                          DATE: July 1, 2005
13  HOWARD YOUNG,                         TIME: 1:30 p.m.
                                          DEPARTMENT: 29 ℗
14                          Defendant.    ESTIMATED TIME : 10 min.
15

16

17

18                          I. Introduction.

19      DEFENDANT is charged in a 31 count Information with Burglary and Grand Theft

20  resulting from 16 separate break-ins at high technology companies over the last four years.

21  DEFENDANT is tied to the various crimes in several ways, including through air travel and rental

22  car records showing that he traveled to the Bay Area just before each burglary and left just after.

23  DEFENDANT is identified with the air travel records through several of his credit cards used to

24  purchase the tickets.

25

                                                                    640

1    Currently before the court is a motion to release subpoenaed documents relating to account

2    holder information for the various credit cards used by DEFENDANT and car rental records from

3    Hertz and Avis.[1]  On June 14, 2005, DEFENDANT filed a motion to quash each of those subpoenas

4    claiming that: (1) this court lacks jurisdiction to rule on the subpoenas; (2) police learned

5    DEFENDANT's credit card numbers though review of credit reports that DEFENDANT believes

6    police should not have obtained; and, (3) the subpoenas are overbroad.

7        DEFENDANT is wrong on each point.

8                                **II. Procedural History**

9        On April 21, 2005, DEFENDANT filed a Motion to Traverse, Quash and Suppress evidence

10   relating to thirteen Search Warrants executed while investigating this case.  Among

11   DEFENDANT's claims were that the police violated his privacy rights by using Search Warrants to

12   obtain his credit reports.  On April 25, 2005, the court entered a Not Guilty plea for DEFENDANT,

13   set a Preliminary Hearing Date for June 2, 2005 and continued his Motion to Traverse to be heard

14   with the Preliminary Hearing..

15

16       On May 10, 2005, DEFENDANT filed a Motion to Compel Discovery requesting, among

17   other things, various certifications, notices and jurisdictional agreements relating to the production

18   and use of his credit reports.  DEFENDANT apparently incorrectly interpreted 15 United States

19   Code, section 1681, et. seq. as requiring those certifications.  On May 16, 2005, Judge Lisk denied

20   DEFENDANT's motions relating to the certifications and agreements explaining that court

21   authorized Search Warrants justified production.

22

23       At the Preliminary Hearing on June 2, 2005, Judge Teilh denied DEFENDANT's motion to

24   traverse the search warrants.  DEFENDANT thereafter made an oral motion to suppress evidence

25   _____

[1] The car rental records were previously produced through Search Warrants.  The purpose of the current subpoena is

1   arguing essentially that all subsequent evidence was the fruit of the search warrants for his credit

2   reports. Judge Tielh also denied that motion and held DEFENDANT to answer as charged.

3       The documents at issue in the current motion were originally subpoenaed to the Preliminary

4   Hearing. However, at the time Judge Teilh issued his Holding Order, no documents had arrived in

5   court. The People's Motion to Release trailed. The instant motion followed in which

6   DEFENDANT essentially challenges, for the fourth time, the same warrants relating to his credit

7   reports, based on the same wrong interpretation of inapplicable law Federal law.

8

9

10                      III.    Law and Argument

11      A.     This Court Has Jurisdiction Over the Records.

12          DEFENDANT's argument appears to be as follows:  The current subpoenas identify

13   records relating to various credit card numbers. Police learned some of those credit card

14   numbers through credit reports obtained from Credit Reporting Agencies. Credit Reporting

15   Agencies are federally regulated.  Federal law provides Federal Courts with "original jurisdiction

16   of civil actions or proceedings arising under any act of Congress regulating commerce."

17   Therefore since the current subpoenas are the product of information developed from companies

18   that are federally regulated, then only Federal courts have jurisdiction over the subpoenas.

19          Defendant should be commended that the enthusiasm of his argument is not diminished

20   by the total absence of legal support.

21          Defendant stands charged before this Court.  This Court has physical possession of

22

23   documents that will be offered into evidence at trial before this Court.  Accordingly, this court

24   has jurisdiction over the documents.

25

merely to obtain the necessary custodian's declaration for their admission at trial.

**B.    The Subpoenaed Documents Are The Product Of A Proper Investigation.**

It is well settled that a person has no expectation of privacy in information that is voluntarily provided to a third party. (*United States* v. *Miller* (1976) 425 U.S. 435 [48 L.Ed.2d 71, 96 S.Ct. 1619]). Much like the current case, the *Miller* defendant objected to disclosure of his personal banking records. The High Court rejected his argument, explaining that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities . . ." (*Id.*, at p. 443 [48 L.Ed.2d at p. 79].)

Following Proposition 8, the admissibility of evidence in California criminal trials depends on the federal rules of exclusion. (*In re Lance W.* (1985) 37 Cal.3d 873, 873.) Federal law does not provide a remedy for a challenged search of the third party records that are "voluntarily conveyed to the [businesses] and exposed to their employees in the ordinary course of business." (*People v. Pearson*, 169 Cal. App. 3d 319 (citing, *Miller*, supra 401 U.S. at 442)

DEFENDANT's argument relating to the civil regulation of credit reporting companies failed twice before Judge Tielh and once before Judge Lisk. He has presented nothing new here. Nowhere has DEFENDANT been able to cite a suppression remedy even in civil cases where his federal regulations might be applicable.

**C.    The Subpoenas Are Not Overbroad.**

With the exception of conclusory statements regarding previously validated search warrants, DEFENDANT fails to explain how he believes the current subpoenas are overbroad.

The subpoenas relating to credit card information request only information that could identify the users, and not all transactions. Moreover, they are limited to the timeframe of DEFENDANT's charged offenses.

643

1  GEORGE W. KENNEDY,
   DISTRICT ATTORNEY, #52527
2  THOMAS L. FLATTERY
   DEPUTY DISTRICT ATTORNEY, # 186856
3  COUNTY GOVERNMENT CENTER, WEST WING
4  70 W. Hedding Street
   San Jose, California 95110
5  Telephone: (408) 792-2629

6  Attorneys for the People

**FILED**

JUL 2 1 2005


KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By _____ Deputy
S. CHUA

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA,
8            IN AND FOR THE COUNTY OF SANTA CLARA

9   PEOPLE OF THE STATE OF            NO. CC454838
    CALIFORNIA,
10
                                     OPPOSITION TO MOTION TO
11                      Plaintiff,   SUPPRESS EVIDENCE (PC
                                     1538.5) AND SET ASIDE THE
12              v.                   INFORMATION (PC 995)

13  HOWARD YOUNG,                    DATE: July 22, 2005
                                     TIME: 9:00 p.m.
14                      Defendant.   DEPARTMENT: 29
                                     ESTIMATED TIME : 10 min.
15

16

17

18                          I. Introduction.

19      DEFENDANT is charged in a 31 count Information with Burglary and Grand Theft

20  resulting from 16 separate break-ins at high technology companies throughout Santa Clara County

21  over the last four years.  DEFENDANT is tied to these crimes, and 11 similar out-of-county

22  burglaries, in several ways, including air travel and rental car records, e-mail and E-Bay records,

23  surveillance photos and stolen property recovered at his home in Las Vegas.

24      On July 7, 2005, DEFENDANT filed notices of motions to suppress essentially all evidence

25  in the case pursuant to Penal Code section 1538.5 and to set aside the Information pursuant to Penal

                                                              747

1   Code section 995. As of the writing of this response, the People have not been served with Points

2   and Authorities or declarations to support DEFENDANT's motions. However, given several

3   similar motions that were previously denied, the People anticipate that DEFENDANT will argue

4   that his Fourth Amendment rights were violated by several Search Warrants served on third party

5   businesses for their records relating to DEFENDANT.

6       If his history is a guide, DEFENDANT' will rely on: (1) outdated, pre-Prop 8 California

7   cases to suggest that he has a privacy interest in third party business records; (2) inapplicable

8   Federal regulations to suggest that some the records were produced improperly; and, (3) incorrect

9   claims that all later evidence is the fruit of those records. DEFENDANT believes that his arrest and

10  evidence gained from later search warrants were the fruit of initial warrants for his credit reports.

11  However, DEFENDANT ignores current binding authority that unquestionably confirms that

12  DEFENDANT has no privacy interest in business records held by third party companies.

13

14

## II.  Factual and Procedural History

15      On April 14, 2004, police detectives learned that in March, 2004 DEFENDANT had sold

16  several memory chips on E-Bay. Those chips were stolen from Google on February 28, 2004. On

17  April 15, 2004, an FBI agent in Hawaii identified DEFENDANT in a surveillance photo from a

18  burglary at Silicon Graphics from January 24, 2004. While detectives learned his name, they did

19  not know where DEFENDANT was living.

20      On April 22, 2004, Judge Charles Hayden signed a search warrant for DEFENDANT's E-

21  Bay records, including billing addresses and credit card numbers associated with the account. On

22  May 1, 2004, DEFENDANT burglarized Cisco Systems in San Jose, stealing over $50,000 worth of

23  computer equipment.

748

1   On May 4, 2004, Judge Hayden signed search warrants for each of the three major credit

2   reporting agencies for their records relating to DEFENDANT.    On May 15, 2004, DEFENDANT

3   burglarized Amgen in South San Francisco and Cisco Systems in Pleasanton.  In those two cases, he

4   stole well over $60,000 worth of computer equipment.  From the credit reports, detectives learned

5   that DEFENDANT used Visa cards and a T-Mobile account.  Detectives were still not able to locate

6   DEFENDANT.

7

8   On May 21, 2004, Judge Hayden signed search warrants for T-Mobile and Visa for their

9   business records relating to DEFENDANT.  Soon thereafter, detectives learned that DEFENDANT

10  had purchased tickets to fly into San Francisco on May 28, 2004.

11  On May 28, 2004, Judge Hayden signed an arrest warrant for DEFENDANT and a Search

12  warrant for DEFENDANT's property.  DEFENDANT was arrested as he came off the airplane.

13  During a search of his property, detectives found a receipt for a storage locker rented in Oakland on

14  May 15, 2004 – the day of the Amgen and Cisco burglaries.  On May 28, 2004, Judge Danner

15  signed a search warrant for the storage locker.  While executing Judge Danner's warrant, Detectives

16  recovered a metal folding cart that can be seen in the surveillance video from the Cisco burglary.

17

18  On June 2, 2004, Judge Hayden signed Search Warrants for a computer seized from

19  DEFENDANT at his arrest, as well as the for business records from the Airline Reporting

20  Corporation, Hertz and Avis.  These later warrants were "piggyback warrants" and included copies

21  of the Visa affidavit that was originally filed on May 21, 2004.

22  On February 14, 2005, DEFENDANT relieved his second attorney and entered *Pro Per*

23  status.

24  On April 21, 2005, DEFENDANT filed a Motion to Traverse, Quash and Suppress

25  evidence relating to all Search Warrants executed while investigating this case.  DEFENDANT

749

1  noticed the motion to be heard on the Department 23 pretrial calendar on April 25, 2005. Among

2  DEFENDANT's claims were that the police violated his privacy rights by using Search Warrants to

3  obtain his credit reports. On April 25, 2005, DEFENDANT filed a second, similar Motion to

4  Traverse, Quash and Suppress Evidence, again noticed for hearing on that day's pre-trial calendar.

5      On April 25, 2005, the court entered a Not Guilty plea for DEFENDANT, set a Preliminary

6  Hearing Date for June 2, 2005 and continued his motions to be heard with the Preliminary Hearing..

7

8      On May 10, 2005, DEFENDANT filed a Motion to Compel Discovery requesting, among

9  other things, various certifications, notices and jurisdictional agreements relating to the production

10  and use of his credit reports. DEFENDANT incorrectly interpreted 15 United States Code, section

11  1681, et. seq. as requiring those certifications.

12      On May 13, 2005, DEFENDANT filed a third Motion to Traverse, Quash and Suppress,

13  which appears to be a fairly identical copy of the motion he filed on April 25, 2005. Defendant

14  noticed this motion to be heard on Department 23's pretrial calendar on May 16, 2005.

15      On May 16, 2005, Judge Lisk denied DEFENDANT's Motion to Compel relating to the

16  certifications and agreements explaining that court authorized Search Warrants justified production.

17  DEFENDANT's suppression motion again trailed to the Preliminary Hearing.

18      On May 17, 2005, the People filed motions to release records pursuant to Subpoena Duces

19  Tecum to be heard with the Preliminary Hearing. On May 25, 2005, DEFENDANT filed a Motion

20  to Quash those subpoenas. Also on May 25, 2005, DEFENDANT filed a Supplemental Points and

21  Authorities in support of his Motion to Traverse and Suppress, which was essentially another copy

22  of his April 25, 2005 motion.

23

24      At the Preliminary Hearing on June 2, 2005, Judge Teilh denied DEFENDANT's motion to

25  traverse the search warrants. DEFENDANT thereafter made an oral motion to suppress evidence

750

1   suggesting essentially that all subsequent evidence was the fruit of the search warrants. Judge Tielh

2   also denied that motion and held DEFENDANT to answer as charged. No documents responsive to

3   the People's subpoenas had arrived in court and therefore, the motion to release trailed.

4          On June 14, 2005, DEFENDANT filed a Motion to Quash the People's subpoenas. On June

5   28, 2005, DEFENDANT filed a Supplemental Motion to Quash the same subpoenas. On July 6,

6   2005, DEFENDANT filed an Amended-Supplemental Motion to Quash the same subpoenas. On

7   July 7, 2005, DEFENDANT filed a second copy of his Amended-Supplemental Motion to Quash.

8   Also on July 7, 2005, DEFENDANT filed the two motions pursuant to Penal Code sections 995 and

9   1538.5 currently before this Court.

10         On July 8, 2005, Jude Lee denied DEFENDANT's Motion to Quash relating to three sets of

11  documents that had arrived in court. He did not rule on the motion with respect to three other sets

12  of documents and the People's motion to release continues to trail.

13

14

15                     III.     Law and Argument

16

17         A.      DEFENDANT CAN NOT DEMONSTRATE A
                   LEGITIMATE EXPECTATION OF PRIVACY IN
18                 THE RECORDS SEIZED OR THE PLACE
                   SEARCHED.

19         It is well settled that a defendant challenging a search, must first establish "a legitimate

20  expectation of privacy in the invaded place." (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)

21  Fourth Amendment rights are personal rights which may be asserted only by a defendant who

22  has a legitimate expectation of privacy in the invaded place or the thing searched. (*Rakas v.*

23  *Illinois* (1978) 439 U.S. 128, 133-134, 143.) To succeed on a motion to exclude evidence based

24  on a claim of unreasonable search and seizure, a defendant must first establish a personal,

25  reasonable, and legitimate expectation of privacy. (Cal. Const., art. I, § 28, subd. (d); *United*

                                                                                    751

1   their employees in the ordinary course of business." (*People v. Pearson*, 169 Cal. App. 3d 319

2   (citing, *Miller*, supra 401 U.S. at 442).

3       Here, the with respect to the search warrants for the credit reports, DEFENDANT

4   voluntarily provided information to various credit card companies. His information was available to

5   employees of those companies in the normal course of their businesses. Each of those credit card

6   companies thereafter voluntarily shared defendant's information with credit reporting companies

7   who then shared it with police.

8       Any claimed irregularities in the warrants can not create a suppression remedy where there

9   is no privacy interest.

10

11      Likewise, Federal Regulations cited by DEFENDANT do not create a suppression remedy.

12

13      **B.    THERE WAS SUFFICIENT EVIDENCE TO HOLD
             DEFENDANT TO ANSWER.**

14      DEFNDANT cites no failure of proof as to any charge or element. In his motion

15  pursuant to Penal Code section 995, he merely claims that "the commitment was based on

16  incompetent evidence." DEFENDANT cites no legal or factual error. Therefore, the People

17  assume that he relies on his mistaken Motion to Suppress.

18      Whereas DEFENDANT has no privacy interest in the challenged records, and the records

19  were properly produced pursuant to search warrant, DEFENDANT's motion must be denied.

20

21  ///

22  ///

23  ///

24  ///

25  ///

752

1

**IV.     Conclusion.**

2      The People respectfully request that the Court deny DEFENDANT's Motions as he is

3  unable to establish a Constitutionally protected privacy right in the challenged documents and the

4  Information is supported by probable cause.

5

6  Dated: July 21, 2005                                Respectfully submitted,
                                                       GEORGE W. KENNEDY
7                                                      DISTRICT ATTORNEY

8                                                      By _____

9                                                         Tom Flattery
                                                          Deputy District Attorney
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**753**

# EXHIBIT

# B

Court of Appeal, Sixth Appellate District - No. H030682
**S163787**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

HOWARD ALLEN YOUNG, Defendant and Appellant.

The petition for review is denied.

George, C.J. and Corrigan, J., were absent and did not participate.

SUPREME COURT
**FILED**

JUN 2 5 2008

Frederick K. Ohlrich Clerk

_____
Deputy

CHIN
_____
Acting Chief Justice

MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO
—
NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES



☐ SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000
—
☐ LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570
—

# Supreme Court of California

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

February 25, 2008

Mr. Howard Young  F-44590
P.O. Box 8800
Corcoran, CA 93212-8800

Re:    **Petition for Review**

Dear Mr. Young:

Your documents, received February 25, 2008, in the above-entitled matter cannot be considered by this court due to lack of jurisdiction.

Our records indicate that for Case No. H030682, the Court of Appeal Sixth Appellate District filed its order on May 3, 2007. The last day we could have entertained any pleading was June 2, 2007. As for the order dated July 17, 2007 on the same case number, the last day we could have entertained any pleading was August 16, 2007. Without this jurisdiction, this court is unable to consider your request for legal relief.

Also attached, per your request, are copies of your petition for writ of habeas corpus, case numbers S156104 (filed 09/07/07) and S157535 (filed 10/25/07), both of which are still pending.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By: I. Catanoc, Deputy Clerk

Enclosure

To the Clerk, Supreme Court Of California,

Greetings and Best Wishes,

1-31-08

Enclosed are copies of the Petition For Review that I'd like filed with this Court. I'm unable to acquire more copies at this time. Please send me back a filed copy. I originally filed an identical Petition For Review in July 07, but I've now been informed that this Court may not have recieved the previous Petition For Review. Please Review Your records to see if you did recieve the previous Petition For Review in July-Aug 07. Also, I've now been informed that there was some action on May 7, 07 by Santa Clara County which was denied on June 13 07, but I have not recieved copies of any of those documents. Please send me copies of those documents, along with the Docket Sheets of the legal actions in this Court on my behalf. I've also attached a copy of the letter from Attorney J. Frank McCabe to the Petition For Review, dated August 13, 2007, which shows that I sent him a handwritten copy of the previously mentioned Petition For Review that I thought this Court recieved. My previous Request to this Court regarding the previous Petition For Review has gone unanswered.

Your consideration, help and response are greatly appreciated.

Thank You And Best Regards,

Mr. Howard Young

F-44590

P.O. Box 8800

Corcoran, CA. 93212-8800

RECEIVED
FEB 2 5 2008
CLERK SUPREME COURT

Mr. Howard Young - In Pro Se
E 44590
P.O. Box 8800
Corcoran, CA. 93212-8800

# SUPREME COURT OF CALIFORNIA

The People of The State                No. _____
of California,

       Plaintiff and Respondent          H030682

       v.                                Sixth Appellate Court

Howard Allen Young,                      CC454838

       Defendant and Appellant           Santa Clara Superior Court


                  Petition for Review, and
                  Consolidation of Cases

To The Honorable Court;


Appellant, In Pro Se, hereby, moves this Honorable Court with this Petition for Review from the Sixth Appellate Court's denials of Appellant's Supplemental Opening Brief, Request for Rehearing, Supplemental Request for Rehearing, Writ of Prohibition and Supplemental Writ of Prohibition dated July 17, 2007 and May 3, 2007. (See Exhibit A)

Appellant requests that this Court now consider, rule and/or deem all the issues raised in the above-mentioned pleadings, exhausted at this Supreme Court of California level, so Appellant can have all those enclosed issue's determined by the U.S. District Court for the Northern District of California in case # D.C. No. CV-06-00114-MJJ which the Ninth Circuit has instructed "to stay the action until the state court proceeding was completed." (See Exhibit B)

RECEIVED
FEB 25 2008
CLERK SUPREME

Page 1/2

Appellant previously filed a Petition For Review with this Court within 10 days of the denial of the Sixth Appellate Court's July 17 2007, but appellant has been recently informed by this Court's clerk that the previous Petition For Review was not recieved. (See Exhibit C)

Appellant, hereby, Requests that this Court either now Review, consider and Rule on all issues previously raised in the Sixth Appellate Court pleadings that Appellant filed, including, but not limited to; the Writ of Prohibition, Supplemental Writ of Prohibition, Request For Rehearing, Supplemental Request For Rehearing and/or Supplimental Opening Brief, or that this Court deem all those issues Exhausted at this Supreme Court of California level, so that they can now be heard in the U.S. District Court For the Northern District of California CASE No. D.C. No. CV-06-00114-MJJ. Appellant lastly requests that this Court consolidate cases #S156104 and #S157535 currently pending in this Court, with this Petition For Review and they be heard, decided and/or deemed Exhausted at the same time. Wherefore, Appellant prays for all relief which is just and proper.

Appellant declares under penalty of perjury that the foregoing is true and correct.


Dated: 1-31-08

Signature Of Appellant In Pro Se

SUPREME COURT OF THE STATE OF CALIFORNIA

THE PEOPLE OF THE STATE
OF CALIFORNIA,

       Plaintiff AND Respondent,

       V.

HOWARD ALLEN YOUNG,

       Defendant AND Appellant

No.

H030682
Sixth Appellate Court

CC 454838
Santa Clara Superior Court

Petition for Review

TO THE HONORABLE COURT:

Appellant, In Pro Se, hereby, moves this Honorable Court for a Petition for Review from the Sixth Appellate Court's denial filed July 17, 2007 and May 3, 2007 of the appellant's, In Proper, Supplemental Opening Brief AND the Appellant's Request for Rehearing AND Supplemental Request for Rehearing. Appellant Requests that this Court now consider AND Rule on those issues and/or deem them Exhausted at this Appellate level so appellant can move for federal Habeas Corpus.

Whereby, Appellant, prays for relief which is just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Is is not an Exact copy of the Original Bill ...

Declaration Of Service By U.S. Mail

Case Name: People v Howard Allen Young

I declare that I, Howard Young, did place copies addressed below in the U.S. Mail Box here At Corcoran State Prison on August 2, 2007. I am over 18 years of Age. I, hereby, served the Motion to Deny Any Further Time Extensions by Respondent in a sealed envelope with postage prepaid, addressed as follows: (Also served in the same envelope is Appellant's Petition For Review in California Supreme Court)

J. Frank McCabe
Attorney At Law
500 Sansome Sta., Suite 212
San Francisco, CA. 94111

Joan Killeen
Deputy Attorney General
455 Golden Gate Ave, suite 11000
San Francisco, CA. 94102-7004

Sixth District Appellate Program
100 North Winchester Blvd., suite 310
Santa Clara, CA. 95050

Santa Clara County Court
191 North First Sto.
San Jose, CA. 95113

Santa Clara County District Attorney
70 West Hedding Sto.
San Jose, CA. 95110

TELEPHONE (415) 397-1757

**J. FRANK McCABE**
ATTORNEY AT LAW
500 SANSOME STREET, SUITE 212
SAN FRANCISCO, CALIFORNIA 94111

FAX (415) 433-7258

August 13, 2007

Howard Young
F44590  3A-05/150
P.O. Box 3461
Corcoran, Ca. 93212

Re: People v. Young

Dear Mr. Young:

I have received copies of your motion to the 6th District and your petition for review to the California Supreme Court.

I have not filed a motion to get the attorney general to file his brief because, in my experience, that does no good whatsoever. The court of appeal is very generous in granting extensions to the AG (and, usually, also to defense counsel.)

In your petition for review, you state that you want to exhaust issues so that you can "move for federal habeas corpus." I want to warn you again that, with very few exceptions, you get to file one and only one federal petition for a writ of habeas corpus, so even if the California Supreme Court denies your petition, do not file a federal petition too soon or else you may be barred from filing another petition on other issues.

Yours sincerely,

J. FRANK McCABE



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SIXTH APPELLATE DISTRICT

THE PEOPLE,
Plaintiff and Respondent,
v.
HOWARD ALLEN YOUNG,
Defendant and Appellant.



Court of Appeal - Sixth App. Dist.

F I L E D

JUL 17 2007

MICHAEL J. YERLY, Clerk

By _____
DEPUTY

H030682
Santa Clara County No. CC454838

BY THE COURT:

　　Appellant's in pro per request for rehearing from the order denying his request to file a supplemental opening brief dated May 3, 2007, is denied.

　　Permission to file in pro per appellant's supplemental request for rehearing received by the court on July 2, 2007, is granted. The request for a supplemental rehearing of the court's order dated May 3, 2007, is denied.

Date: ___JUL 17 2007___          _____ P.J.
                                            P.J.

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal · Sixth App. Dist.

**F I L E D**

MAY 3 - 2007

MICHAEL J. YERLY, Clerk

By_____

DEPUTY

THE PEOPLE,

Plaintiff and Respondent,

v.

HOWARD ALLEN YOUNG,

Defendant and Appellant.

No. H030682
(Super. Ct. No. CC454838)
Santa Clara County

BY THE COURT:

The clerk of the court is directed to file in pro per appellant's motion requesting to file a supplemental opening brief, supplemental writ of prohibition, motion for rehearing of denial of writ of prohibition and motion for a complete copy of the record, received from counsel for appellant on April 10, 2007, forthwith. The court having considered said motion and various requests made by the above named appellant hereby orders said motion and all requests made therein, denied.

The motion by counsel for appellant for permission to file a supplemental opening brief is granted and the clerk of the court shall file said supplemental opening brief received by the court on April 18, 2007, forthwith.

Time to file respondent's brief is extended to 15 days from the date of this order.

Dated    MAY 3 - 2007                    RUSHING, P.J.

                                                                        P.J.

**COPY**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H030682 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC454838) |
| v. | |
| HOWARD ALLEN YOUNG, | APR 1 7 2008 |
| Defendant and Appellant. | MICHAEL J. YERLY, Clerk |
| | DEPUTY |

Defendant Howard Allen Young was convicted after jury trial of 14 counts of second degree burglary (Pen. Code, §§ 459, 460, subd. (b)),[1] 14 counts of grand theft (§§ 484, 487, subd. (a)), and one count of selling stolen property (§ 496, subd. (a)). The jury found as to three counts of grand theft that the loss exceeded $50,000, and as to another count of grand theft that the loss exceeded $150,000 (§ 12022.6, subds. (a)(1) & (2)). In addition, the jury found that defendant had a prior serious felony conviction for kidnapping that qualified as a strike. (§ 1170.12.) After denying defendant's *Romero*[2] motion, the trial court sentenced defendant to state prison for a term of 30 years, eight months.

---

[1] Further unspecified statutory references are to the Penal Code.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

On appeal, defendant contends: (1) the admission of evidence of four uncharged offenses under Evidence Code section 1101, subdivision (b), violated his rights to due process and a fair trial; (2) the admission of hearsay evidence of three other uncharged burglaries violated his rights to confrontation and a fair trial, and counsel rendered ineffective assistance by failing to raise an objection to the evidence on those grounds; (3) the court abused its discretion by allowing him to be impeached with all four of his prior felony convictions; (4) the standard of proof in Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 375 violated his right to be convicted only by proof beyond a reasonable doubt; (5) the cumulative effect of the above errors denied him a fair trial and due process; and (6) imposition of an upper term sentence violated his rights to a jury trial and due process. As we find no error requiring reversal, we will affirm the judgment.

## BACKGROUND

Defendant was charged by information with 16 counts of second degree burglary (§§ 459, 460, subd. (b); counts 1, 3, 6, 7, 9, 11, 13, 15, 17, 19, 21, 22, 24, 25, 27 & 30), 14 counts of grand theft of personal property valued over $400 (§§ 484, 487, subd. (a); counts 2, 4, 5, 8, 10, 12, 14, 16, 18, 20, 23, 26, 28 & 31), and one count of selling stolen property (§ 496, subd. (a); count 29). The information further alleged as to counts 14 and 31 that the loss exceeded $50,000 (§ 12022.6, subd. (a)(1)), and as to counts 16 and 18 that the loss exceeded $150,000 (§§ 12022.6, subd. (a)(2), 1203.045). In addition, the information alleged that defendant had a prior serious felony conviction that qualified as a strike (§ 1170.12).

Prior to trial, the court granted defendant's motion to bifurcate trial on the alleged prior. The court granted the prosecutor's motion to admit evidence of four uncharged offenses, finding the uncharged offenses "material to the issues of identity and common plan." During trial, after defendant informed the court that he wished to testify, the court ruled that defendant's prior kidnapping and three prior second degree burglary

2

convictions could be used for impeachment purposes. The court also ruled, over defendant's objection on Evidence Code section 352 grounds, that the prosecutor could present evidence of three additional out-of-county uncharged burglaries as rebuttal evidence.

The prosecution's case was that, based on the testimony of witnesses, pictures taken from security surveillance videotapes and security computer records, the same person committed a series of similar burglaries and grand thefts in and around Santa Clara County between 2001 and 2004. The prosecution contended that the person who committed all of these burglaries and thefts was defendant, as defendant's airline flight and rental car records coincided with the burglaries, defendant sold on eBay some of the property that was stolen during the burglaries, he had other stolen property at his home, and he was identified as being the person seen at the scene of two burglaries at the time of those burglaries. Defendant's defense was that he traveled often for business, so it was just coincidental that his flight and car rental records coincided with the burglaries and thefts.

### *The Trial Evidence*

### Counts 1 and 2

Stephen Quan, a performance engineer for Silicon Graphics, Incorporated, (SGI) in Mountain View, was called into work on the night of Saturday, May 26, 2001, because there had been a burglary at his lab. He found pry marks on the lab door. He also found the computers inside the lab pulled out of their racks and bent open, and a supply cabinet open. Quan determined that memory cards were missing from the computers and the supply cabinet, and that new CPUs were also missing from the cabinet. The total value of the missing memory cards was about $50,000, and each of the missing CPUs were worth about $5,000. Quan suggested to a responding Mountain View police officer that the burglary might have been committed by a recently-laid-off employee.

The security system at SGI reported that at 8:35 a.m. on May 26, 2001, the door of the building housing the lab was forced open. Then, at 8:43 a.m., a lab door was forced open. The security surveillance video showed a tall African-American man inside the building lobby wearing a suit and a hat and carrying a white box toward the building doors.

Defendant flew from Honolulu to Los Angeles on May 23, 2001; from Los Angeles to San Francisco on May 25, 2001; from San Francisco to Los Angeles on May 27, 2001; and from Los Angeles to Honolulu on May 29, 2001. He paid for the flights with cash. He rented a vehicle from Hertz in San Francisco on May 25, 2001, and returned it on May 26, 2001, at 1:10 p.m.

### Counts 3 Through 8

In September 2001, the companies Accenture, Game Change, and Novation Biosciences shared building space in Palo Alto. On Saturday, September 29, 2001, at 9:00 a.m., when Michael Stanton arrived at Game Change for work, he found the door to the Game Change server room propped open. The door had been pried open, the server was missing, and the rack where it had been was broken. On Monday, October 1, 2001, Accenture employees found that the door to their server room and other interior doors and some cabinets had been pried open and about 10 laptop computers valued at about $13,000 were missing. A security surveillance video showed that a man in a suit and baseball cap had been in the building. He had entered through a fire exit around 7:02 a.m. on September 29, 2001, and left near the main entrance. Robert Dickinson, vice president of engineering for Novation Biosciences, found that four of their notebook computers were missing, and that hard drives, processors and the memory had been taken from their main server. The value of the notebook computers was about $8,000, and the value of the parts taken from the server was over $4,000.

Defendant flew from Honolulu to Los Angeles on September 26, 2001; from Los Angeles to San Francisco on September 28, 2008; from San Francisco to Los Angeles on

September 29, 2001; and from Los Angeles to Honolulu on October 8, 2001. He paid for the flights with cash. He rented a vehicle from Hertz in San Francisco on September 28, 2001, and returned it on September 29, 2001, at 3:50 p.m.

### Counts 9 and 10

Around 11:00 a.m. on Saturday, December 8, 2001, Steven Okler, a security officer for Agilent Technologies in Palo Alto, noticed on a security monitor a man wearing a black suit, gloves, and a driving cap, and carrying a computer bag, inside one of their buildings. Okler walked over to that building and encountered the man outside. The man, who was approximately 6'4" tall, and who weighed between 200 and 240 pounds, was propping the door open and pushing a cart. Okler asked the man for his identification. The man said, " 'My badge is in my car,' " and started pushing the cart towards the parking garage. Okler followed the man at a distance. When the man got close to the garage, he abandoned the cart, ran to a silver Dodge Caravan, and sped away. The abandoned cart held 14 laptop computers, each worth about $2,000, and some with cut security cables still attached; an espresso machine; and a black canvas computer bag. Inside the computer bag were a small L-shaped pry bar and cable cutters. Okler identified defendant at trial as the man he had confronted that day.

Defendant flew from Honolulu to Los Angeles on November 29, 2001, and from Los Angeles to San Francisco on November 30, 2001, and he used a credit card to pay for the flights.

### Counts 11 and 12

Maria Lazarte, a systems administrator for SGI in Mountain View, found on Monday, August 12, 2002, that one of her lab doors had been pried open. She also discovered that some equipment had been moved around and boxes had been opened, and

that two new CPUs, two graphic boards, and a cart were missing from inside the lab. The total value of the missing items was about $7,100.[3]

The SGI security system reported that the building door was forced open at 10:34 a.m. on Saturday, August 10, 2002. The lab door was forced open at 10:44 a.m. The security surveillance video showed an African-American man in a suit and hat in the building. The man had a bag sitting on a metal cart like those in the lab. Mountain View Police Detective Sean Thompson determined from the video that the man was about six feet tall and had a large build. SGI security officers gave Thompson a photograph of an employee named Hancock, but Thompson did not interview Hancock.

A few days earlier, on August 7, 2002, the security system reported that somebody with a terminated badge for Terence Hancock tried to access one of the buildings. Around this time, the security system was reporting a lot of false terminated badge alerts. When Leonel Dijols, a security officer, went to check the building after this alert, he saw an African-American man walking away from the building towards the parking lot. The man was about six feet tall, and weighed about 230 pounds. Dijols asked the man if he needed any help. The man replied negatively, and got into an older purple Corvette. Dijols later learned that the man he spoke to was Bill Plummer, who still works for SGI.

Defendant flew from Los Angeles to Oakland on August 9, 2002, and from Oakland to Los Angeles on August 10, 2002, and he used a credit card to pay for the flights. He rented a vehicle from Avis at Oakland on August 9, 2002, and returned it at 4:49 p.m. on August 10, 2002, and he paid for the rental with a credit card.

---

[3] One CPU was worth about $1,000, the other about $1,300. The two graphic boards were each worth $2,400.

6

## Counts 13 and 14

Anoop Rajkumar, a lab administrator for Cisco Systems in San Jose, was notified on Sunday, October 27, 2002, around 7:00 p.m., that some of the Cisco systems were inaccessible. When he arrived at the lab, he found four servers lying on the floor with their tops removed and with some processing and memory parts missing. The value of the missing parts was approximately $80,000. Allied Security surveillance videos showed that an exterior door had been forced open at 10:34 a.m. on Saturday, October 26, 2002, and that an African-American man later left the lab carrying a garbage can. The man was approximately 30 to 40 years old, about 5'7" tall, with a heavy build, wearing a suit, a dark baseball cap and dark shoes, and carrying a laptop bag.

Defendant flew from Honolulu to Los Angeles on October 24, 2002; from Los Angeles to Oakland on October 25, 2002; from Oakland to Los Angeles on October 26, 2002; and from Los Angeles to Honolulu on October 30, 2002. He paid for the flights with a credit card. He rented a vehicle from Avis in Oakland on October 25, 2002, and returned it on October 26, 2002 at 2:57 p.m., and he paid for the rental with the same credit card.

## Counts 15 and 16

When Kirk Lim, a senior I.T. specialist with Entrust in Santa Clara, dropped by his lab on Saturday, April 12, 2003, he found one of their carts in the parking lot. He took the cart back inside the building, but did not notice anything missing. On the following Monday, when Lim returned to work, he learned that equipment was missing from the lab. Some servers had been pried opened and parts, including memory components, had been forcibly removed. Thirteen computers were affected and had to be replaced. The value of the missing items was over $84,000.[4] Security surveillance video showed a

---

[4] The individual items that they could determine a value for were valued at $6,817; $12,300; $12,300; $12,300; $8,140; $12,300; $4,120; $4,120; and $12,300, respectively. The other items they could not determine a value for.

7

person entering the building then later exiting the building with the cart, on which were two moving boxes from the lab. Yvonne Sieber, a human resources manager for the office, believed that the man in the video resembled a recently-laid-off employee. Sieber provided the man's name to the police.

Defendant flew from Honolulu to Los Angeles on April 3, 2003; from Los Angeles to Oakland on April 4, 2003; from Oakland to Los Angeles on April 5, 2003; from Los Angeles to Oakland on April 11, 2003; from Oakland to Los Angeles on April 12, 2003, and from Los Angeles to Honolulu on April 15, 2003. He paid for the flights with credit cards. He rented a vehicle from Avis at Oakland on April 11, 2003, and returned the vehicle on April 12, 2003, at 2:49 p.m., and he paid for the rental with a credit card.

### Counts 17 and 18

Dennis Hughes, a facilities project manager for Portal Software, was called into work on Saturday, April 19, 2003, because the engineering data center had been broken into. Exterior and interior doors had been pried open and six servers worth about $216,000 were missing. The security surveillance video showed a man prying open the doors around 9:15 a.m., and leaving with the servers around 9:35 a.m., on April 19, 2003. Officers found a large shoeprint in the mud outside the exterior door.

Defendant rented a vehicle from Hertz in Oakland on April 18, 2003, and returned it on April 19, 2003, at 3:30 p.m.

### Counts 19 and 20

When he arrived at work on Monday, June 16, 2003, Edward Robitaille, facilities manager for Marvell Semiconductor in Sunnyvale, learned that six boxed-up servers valued at about $7,000 were missing from shipping and receiving. Security surveillance videos showed an African-American man, who Robitaille had never seen before and who was wearing a suit and carrying a black bag, walking into the building through the loading dock on the previous Saturday morning and leaving the building with a hand

8

truck loaded with the boxed-up servers. From the videos Robitaille estimated that the man was about 6'1" or 6'2" tall, and weighed 215 to 220 pounds. The videos also showed a light-colored SUV that Robitaille had never seen before leaving the building parking lot shortly after the servers were removed.

Defendant flew from Los Angeles to Oakland on June 13, 2003, and from Oakland to Los Angeles on June 14, 2003, and he paid for the flights with a credit card. He rented a vehicle from Avis in Oakland on June 13, 2003, and returned the vehicle on June 14, 2003 at 3:41 p.m., and he paid for the rental with a credit card.

## Count 21

In July 2003, Allied Security provided corporate security for Netscreen in Sunnyvale. On Monday, July 21, 2003, Bryan Wade from Allied Security learned that there had been a break-in at a Netscreen lab during the prior weekend. Wade found that an emergency exit door had been pried open but nothing was missing. Security surveillance videos showed that an African-American man who was over six feet tall and who was wearing a suit and a hat had been in the building around 9:45 a.m. on Saturday, July 19, 2001. The videos also showed the same man walking to a mid-size Buick in the parking lot, and then the Buick leaving after the break-in.

## Counts 22 and 23

When Albert Tang, a technical marketing engineer for Cisco in San José, arrived at his lab on the morning of Monday, December 22, 2003, he found that two laptop computers and a video camera were missing. The camera was worth between $5,000 and $7,000, and the laptops were each worth about $2,500. Tang contacted security, who determined that an exterior door had been forced open at 10:30 a.m. on Saturday, December 20, 2003, and that interior doors were also forced open. Security surveillance videos showed a man about 6'6" tall inside the building and exiting the building with one or two laptops.

9

Defendant flew from Los Angeles to Oakland on December 19, 2003, and from Oakland to Los Angeles on December 20, 2003, and he paid for the flights with a credit card. He rented a vehicle from Avis in Oakland on December 19, 2003, and returned the vehicle on December 20, 2003, at 7:29 p.m., and he paid for the rental with the same credit card.

### Count 24

Larry Kistler, a hardware instructor at SGI in January 2004, was out of town when he received a call from SGI security telling him that his training lab had been burglarized. When Kistler returned to the lab he found that the double doors to the lab were broken and parts of a mainframe computer were broken, but nothing was missing.

The SGI security system reported that the lab door was forced open at 8:07 a.m. on Saturday, January 24, 2004. A video from the security camera Kistler had installed inside the lab showed a man whom Kistler had never seen before inside the lab at 8:11 a.m. on January 24, 2004. The building security surveillance video showed the man in the lobby walking toward the exit at 8:11 a.m. with nothing in his hands.

Defendant flew from Los Angeles to San Francisco on January 23, 2004, and from San Francisco to Los Angeles on January 24, 2004, and he paid for the flights with a credit card. He rented a vehicle from Avis in San Francisco on January 23, 2004, and returned the vehicle on January 24, 2004, at 5:12 p.m., and he paid for the rental with the same credit card.

### Counts 25 and 26

Benchiao Jai, an engineer with Google in Mountain View, discovered on the morning of Monday, March 1, 2004, that one of the Google labs had been broken into. The lock on the lab door was broken and three computer servers, each worth around $2,000, and 200 memory modules from other computers, each worth about $200, had been removed. Jai reported the theft to security. Security officers found that the lock on the building door was broken. Security program logs indicted that the memory modules

10

were removed from the computers at 8:23 a.m. on Saturday, February 28, 2004. A security surveillance video showed a man prying the building door open and later exiting the building through another door carrying a box containing three Google servers. The video also showed a white SUV approaching the building moments before the forced entry and leaving approximately 90 seconds after the man left the building.

Fingerprints taken from the scene were later identified as belonging to Steven Allen Mendoza. Mendoza's driver's license printout states that he has brown hair and hazel eyes, is 5'4" tall, and weighs 180 pounds.

Defendant flew from Las Vegas to San Francisco on February 27, 2004, and from San Francisco to Las Vegas on February 28, 2004, and he paid for the flights with a credit card. He rented a vehicle from Avis in San Francisco on February 27, 2004, and returned the vehicle on February 28, 2004, at 1:59 p.m., and he paid for the rental with the same credit card. One-gigabyte memory modules like those taken from Google were found during a search of defendant's residence shortly after his arrest.

### Counts 27 and 28

Gary McLeod, an engineer with Cisco Systems in San Jose, went into work on Saturday, May 1, 2004, around midmorning. When he arrived, he saw a white SUV parked close to an emergency exit. The back door of the SUV was open and an African-American man who was about six feet tall was moving a large box from a lab cart into the back of the SUV. McLeod approached the man and asked him if he could be of some help. The man was so startled that he almost dropped the box. He said that he was almost finished, so McLeod walked back to his car and watched him. The man left the cart in the parking lot and drove off. McLeod wrote down the license plate number of the SUV and sent an email to Cisco investigators about the incident. He identified defendant at trial as the man he saw.

Anthony Poulos, an engineering manager for Cisco Systems in San Jose, was notified that a large server worth about $50,000 was missing from a lab. Security

11

surveillance videos showed a man inside the building on May 1, 2004, at 10:01 a.m. The man loaded a cart and pushed the loaded cart out of the building.

Defendant flew from Las Vegas to San Francisco on April 30, 2004, and from San Francisco to Las Vegas on May 2, 2004, and he paid for the flights with a credit card. He rented a vehicle from Avis in San Francisco on April 30, 2004, and returned it on May 1, 2004, at 7:10 p.m., and he paid for the rental with the same credit card.

### Count 29

Elegant Networks is a family-owned business that buys and resells used Cisco network equipment. Between March 30 and April 2, 2004, Dong Nguyen, an employee of Elegant Networks, negotiated to buy some Cisco switches through eBay. The seller used the email address rsoapdish@aol.com. The seller claimed that the switches worked, so Nguyen bought two of them for $3,450. When the switches arrived, they were missing their serial number tags. Nguyen ran a test and determined their serial numbers and also determined that the switches worked. The switches were later turned over to the police. On May 19, 2004, the same seller offered to sell Cisco routers to Elegant Networks. Nguyen never met or talked to the seller.

In early April 2004, Gil Leaño, I.T. manager for Dorado Corporation in San Mateo, learned that nine packaged Cisco switches and routers and the cart that they had been on were missing. Also missing were a couple of laptop computers. Security surveillance videos showed defendant, who did not work for Dorado, removing the cart and equipment on Saturday, March 27, 2004. Leaño provided the serial numbers of the missing parts to the police. Included in the list were the serial numbers for the two Cisco switches Elegant Network bought from rsoapdish@aol.com. The switches were each worth between $3,000 and $4,000.

Defendant flew from Las Vegas to Oakland on March 26, 2004, and from Oakland to Las Vegas by way of Phoenix on March 27, 2004, and he paid for the flights with a credit card. He rented a vehicle from Avis in Oakland on March 26, 2004, and returned

12

the vehicle on March 27, 2004, at 2:52 p.m., and he paid for the rental with the same credit card.

### Counts 30 and 31

Portal Software was burglarized a second time on Saturday, August 9, 2003.[5] The same kinds of computer parts that were taken in April 2003 were missing again after this burglary. Perry Zhu, a systems administrator for Portal, determined that the value of the items taken this time was about $155,000. Security surveillance video showed the same man as before forcing entry around 9:03 a.m. and exiting through the same back door around 9:05 a.m.

Defendant flew from Los Angeles to Oakland on August 8, 2003, and from Oakland to Los Angeles on August 9, 2003, and he paid for the flights with a credit card. He rented a vehicle from Avis in Oakland on August 8, 2003, and returned the vehicle on August 9, 2003, at 3:50 p.m., and he paid for the rental with the same credit card.

### Uncharged Acts

Lester Hellum, a corporate investigator for Sun Microsystems, testified that Sun maintains a system to track their own and customers' assets using serial numbers. Detective Alex Bouja gave him a serial number for a Sun blade server, and he determined that the server was shipped May 6, 2003, to a Sun employee in Broomfield, Colorado. Sun has no record of it ever having been resold after that. The Sun blade server with that serial number was found during a search of defendant's residence after his arrest. Sun computer memory chips were found in defendant's car during the same search. Around 7:30 a.m. on Saturday, May 17, 2003, the Sun security system for their Broomfield campus indicated that both an exterior door to one of their buildings and an interior door to a lab had been forced open. David King, a security officer, entered the building and

---

[5] The first burglary, in April 2003, was the subject of counts 17 and 18.

13

found a large African-American man inside whom he did not recognize. The man was wearing a coat, tie, hat and gloves, and was not wearing an employee badge. King asked to see the man's badge, and the man said that it was in his vehicle. The man gave him a name but left while King was calling in to verify the information. Defendant flew from Los Angeles to Denver on May 16, 2003, and from Denver to Los Angeles on May 17, 2003, and he paid for the flights with a credit card. He rented a vehicle from Avis in Denver on May 16, 2003, and returned it on May 17, 2003, at 2:04 p.m., and he paid for the rental with the same credit card.

On Monday, December 22, 2003, employees of Siebel Systems in Emeryville reported to their security contractor that there had been a burglary at their site. Some items had been moved and damaged and a number of laptop computers were missing. Daniel Ruiz, an employee of the security contractor, reviewed the security surveillance videos and saw an unauthorized person enter the building through the receiving dock at 9:25 a.m. on Saturday, December 20, 2003, with a laptop bag, and exit the building with a Seibel equipment case at 9:35 a.m. The property tag for a laptop computer stolen during this burglary was found during a search of defendant's residence after his arrest.

On Monday, January 26, 2004, Siebel reported to the same security contractor that there had been a burglary at one building at their San Mateo site. Ruiz reviewed the security videos from that site and did not see any unauthorized entries into that building because the building's security camera was not working. Ruiz did see a man who appeared similar to the man in the December 2003 Emeryville videos attempting to enter a second building at the San Mateo site through the loading dock at 11:18 a.m. on Saturday, January 24, 2004.

Jason Sousley, an investigator with Cisco Systems in Pleasanton, was notified on Saturday, May 15, 2004, at approximately 12:15 p.m., of a break-in there. He determined that several doors had been pried open and several items, including two servers, were missing, and that one glove had been left behind. Security surveillance videos showed a

14

man rolling a loaded Cisco cart out of the building, and a pickup truck exiting the parking lot shortly thereafter with items in the bed of the truck. Defendant flew from Las Vegas to Oakland on May 14, 2004, and from Oakland to Las Vegas on May 15, 2004, and he paid for the flights with a credit card. He rented a Ford F-150 pickup truck from Hertz in Oakland on May 14, 2004, and returned the truck on May 15, 2004, at 4:44 p.m. The truck defendant rented looked like the one in the Cisco security video.

Detective Bouja testified that he looked into additional flights taken by defendant and additional burglaries outside Santa Clara County. He became aware of a similar suspected burglary at Oracle in Colorado Springs on February 3, 2001. Defendant flew from Los Angeles to Denver on February 2, 2001, and from Denver to Los Angeles on February 3, 2001, and he paid for the flights with cash. A similar suspected burglary occurred at Sun Microsystems in Newark, California, on August 17, 2002. Defendant flew from Los Angeles to Oakland on August 16, 2002, and from Oakland to Los Angeles on August 17, 2002, and he paid for the flights with cash. A similar suspected burglary occurred at Open Wave in Redwood City on May 3, 2003. Defendant flew from Los Angeles to San Francisco by way of Las Vegas on May 2, 2003, and from San Francisco to Los Angeles by way of Las Vegas on May 3, 2003, and he paid for the flights with a credit card.

### Other Evidence

Patrick Dean, who works on and builds computers as a hobby, bought two memory chips through eBay in March 2004 from a seller who had 40 or 50 chips for sale. The chips did not work well so Dean resold them through eBay. About three weeks later, the woman he sold them to contacted him and he told her who he had bought them from.

Patrick Murphy, a botanist, bought some memory chips over eBay in March 2004, from a seller who used the email address rsoapdish@aol.com. When the first chip arrived, it did not work, so Murphy contacted the seller again. He mailed back the first chip and the seller sent a second one that did not work either. Murphy tried to resell the

15

second chip, but had to buy it back because it did not work for the new buyer either. He gave the second chip, the envelope in which he received it from the seller, and copies of his emails to the police. The emails said that the payment address for the seller was "Howard Young" in Los Angeles, and the return address on the envelope says "H. Young" in Las Vegas, Nevada. The invoice says, " 'Thank you again for your purchase. Bro.h.' "

Verta Tannehill, who was building a desktop computer, bought two chips over eBay in March 2004 from Patrick Dean. The chips did not work so she contacted the manufacturer, who informed her that they might be stolen. Tannehill then contacted Dean and other buyers of similar chips to find out where they got the chips. She traced sales back to somebody who used the eBay screen name "bro.h." She contacted "bro.h," asking to buy more chips and also asking where he got the chips. The responses she received on April 13, 2004, were from rsoapdish@aol.com. She gave the two chips she bought and copies of her emails to the police.

EBay fraud investigators determined that defendant registered the screen name of "bro.h" and the email address of rsoapdish@aol.com with them. At the time defendant registered with eBay, he gave them a Pearl City, Hawaii address.

Defendant was arrested at the San Francisco airport on May 28, 2004. Defendant had a black baseball cap and credit cards in his name on his person; some suits, four pairs of brown gloves, computer chips, receipts, emails to rsoapdish@aol.com, bolt cutters, a wrench, and a Hawaii license plate inside his suitcases; and a laptop computer, receipts, and various other papers inside a black laptop case. One of the receipts defendant had was for a storage locker that had been rented in Oakland on May 15, 2004. A second receipt was a FedEx shipping receipt from defendant with a Hollywood, California address to Elegant Networks in San Jose, and with a delivery date of April 5, 2004. A third receipt was a Delta shipping receipt dated March 27, 2004, for eight computers from the San Francisco airport to defendant at a Hollywood, California address. A fourth

16

receipt was for an Avis car rental at the San Francisco airport, out on February 27, 2004, and returned on February 28, 2004.

Officers searched the Oakland storage locker pursuant to a search warrant. There officers found a large cement pump and a chrome luggage cart. The man in the security surveillance videos from Cisco in Pleasanton on March 15, 2004, was using a similar luggage cart.

During a search of defendant's Las Vegas residence, Detective Bouja found in the garage a large, hard-plastic case like those often used to ship large computer components. A property tag from Seibel Systems was affixed to the case, and Seibel records indicated that the property tag was for a laptop computer that had been stolen from their Emeryville location. Bouja found a laptop computer inside a black bag sitting on a shelf of an entertainment center, and a Sun blade server inside the residence. Bouja gave the serial number of the Sun blade server to Lester Hellum at Sun in order to determine if the server was stolen property. Inside the residence Bouja also found emails to Bro.h and rsoapdish@aol.com relating to one-gigabyte memory modules like those stolen from Google, and brown cloth gloves. Inside a vehicle parked in the driveway of the residence were a few Sun memory chips.

Defendant testified in his own behalf. He admitted that he was convicted of three counts of second degree burglary in 1990, and that he pleaded guilty to kidnapping in 1992, but testified that he has not been convicted of a felony since then. He is married and has three children. He is 6'7" tall and weighs 265 pounds.

Defendant testified that he is the owner-operator of a business that does carpet cleaning, mold remediation, parking lot cleaning, and grease and septic tank pumping. His business is listed with the websites "Blacks in Vegas," and Pumper.com, and is a member of the International Institute of Cleaning Restoration Certification. His business base is Las Vegas, but he does not have a business license or a contractor's license there and he does work in a variety of places. He could not produce a customer list or

17

cancelled checks used for business supplies. He recently purchased the cement pump officers found in his storage unit in Oakland, because he wanted to expand his business. When he was arrested in San Francisco, he had bolt cutters with him that he expected to use to cut the lock off his storage unit. He had lost the keys to the lock but he wanted to pick up the cement pump on this trip.

Defendant also buys and sells items, including used computer parts, on eBay, as "Bro.h" and rsoapdish@aol.com. Some of the items he buys he uses in his business, other items he resells. He travels on weekends to pick up his purchases because he runs his business during the week. He never traveled to Santa Clara County, or visited the computer firms who were the victims of the burglaries at issue here. He usually bought computer parts from his friend Charles Brown or from Cleveland Beasley in San Francisco, and he paid for them with cash. Whenever he thought that the items he bought were stolen, he called or emailed the manufacturer with the serial numbers.

### The Verdicts and Sentencing

On April 11, 2006, the prosecutor dismissed the burglary charges in counts 6 and 7, and amended count 16 to allege a taking in excess of $50,000 rather than $150,000. On April 14, 2006, the jury found defendant guilty of all remaining counts, and found the excess taking allegations as to counts 14, 16, 18 and 31 to be true. Following a bifurcated trial, the jury found true the allegation that defendant had a prior serious felony conviction for kidnapping that qualified as a strike. (§ 1170.12.) On September 22, 2006, the court denied defendant's *Romero* motion and sentenced him to state prison for 30 years, eight months.

## DISCUSSION

### Uncharged Acts

Defendant first contends that the trial court violated his rights to due process and a fair trial by admitting over his Evidence Code sections 1101, subdivision (b), and 352 objection, evidence of four uncharged burglaries: (1) at Cisco in Pleasanton on May 15,

18

2004; (2) at Siebel in San Mateo on January 24, 2004; (3) at Siebel in Emeryville on December 20, 2003; and (4) at Sun in Bloomfield, Colorado, on May 17, 2003. He argues the evidence was inadmissible pursuant to Evidence Code sections 1101, subdivision (b), and 352 on the issues of identity and common plan because the burglaries were not distinctive, the evidence took substantial jury time, and he did not suffer any convictions as a result of the burglaries.

Under Evidence Code section 1101, subdivision (b), evidence of uncharged acts by the defendant is admissible to prove any issue in dispute, including identity or common design or plan, but not criminal disposition. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393; *People v. Lewis* (2001) 25 Cal.4th 610, 636-637 (*Lewis*).) In establishing a common design or plan, the evidence of uncharged acts "must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.]" (*Ewoldt, supra,* 7 Cal.4th at p. 402.) "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Id.* at p. 403.) To prove identity, however, "[t]he greatest degree of similarity is required." (*Ibid.*) "[T]he uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*Ibid.*; see also, *People v. Kipp* (1998) 18 Cal.4th 349, 369-370 (*Kipp*).)

The court may exclude evidence of uncharged acts under Evidence Code section 352 if its probative value is substantially outweighed by an undue prejudicial effect or if its admission will necessitate undue consumption of time. On appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for

19

abuse of discretion. (*Kipp, supra,* 18 Cal.4th at p. 369; *Lewis, supra,* 25 Cal.4th at p. 637.)

The uncharged burglaries were relevant here to show common design or plan and identity when taken in connection with evidence of the charged burglaries. Evidence of the charged burglaries showed that defendant repeatedly flew into the Bay Area on a Friday, rented a vehicle and, before returning the vehicle on Saturday, gained unauthorized entry into a closed computer company in Santa Clara County while wearing a suit, hat, and gloves, and stole computers and computer parts, some of which he sold on eBay. Defendant was identified at trial by two witnesses as the man they saw outside burglarized businesses at the time those businesses were burglarized. When defendant was arrested he had suits, gloves, a cap, bolt cutters, a wrench, and paperwork related to his travel and sales on eBay with him, and computer parts at his home like those stolen during some charged burglaries.

The four uncharged burglaries at issue here were relevant to the extent they were substantially similar to the charged burglaries. (*People v. Rivera* (1985) 41 Cal.3d 388, 392-393.) The uncharged burglaries occurred at computer companies on Saturdays when the businesses were closed, after defendant had flown into an area airport and rented a vehicle but before the vehicle was returned. Computers and computer parts were taken during the burglaries, and security surveillance videos showed that the burglaries involved the unauthorized entry of an African-American man wearing a coat, hat and gloves. In addition, defendant had computer parts at his home shortly after his arrest that were taken during some of the uncharged burglaries.

The trial court found that "the characteristics common in both the charged and uncharged act[s] are substantial and distinctive," and that "the evidence regarding these uncharged acts is material to the issues of identity and common plan." The court further found "[w]ith respect to the [Evidence Code section] 352 analysis," "that the probative value of the evidence regarding these uncharged acts is not substantially outweighed by

20

the prejudicial effect. The jury will already hear about more than a dozen commercial burglaries. . . . [¶] Therefore, the evidence regarding these four additional uncharged acts would not be prejudicial and would be highly probative. It will not take an undue consumption of time." Moreover, during trial and at the prosecutor's request, the court instructed the jury on the limited purpose of the uncharged acts evidence each time a witness testified regarding that evidence.

We agree with the trial court that the evidence was highly probative and that it did not take an undue consumption of time given the 16 charged burglaries. That defendant had not suffered convictions based on the uncharged acts was only one factor for the trial court to consider in assessing prejudice. " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citations.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

We find that the trial court did not abuse its discretion in admitting the evidence of the four uncharged burglaries on the issues of common design or plan and identity. Accordingly, defendant has not shown that he was denied due process or a fair trial. (See *Estelle v. McGuire* (1991) 502 U.S. 62, 68-72.)

Defendant further contends that the court's admission of hearsay evidence of three additional uncharged burglaries violated his rights to confrontation and to a fair trial, and that his counsel rendered ineffective assistance by failing to object to the evidence on these grounds. The burglaries were: (1) at Oracle in Colorado Springs on February 3, 2001; (2) at Sun in Newark on August 17, 2002; and (3) at Open Wave in Redwood City on May 3, 2003. Defendant argues that the admission of evidence of these burglaries based on the hearsay evidence of police reports was prejudicial because it suggested

21

defendant committed additional burglaries based only on his flights to the areas where the burglaries occurred.

Prior to defendant's testimony, Detective Bouja testified during his cross-examination that defendant's airline flight records showed that he had taken flights other than those that coincided with the charged counts. Outside the presence of the jury, the prosecutor sought to rebut that testimony by introducing additional flight records which coincided with three similar out-of-county burglaries. The prosecutor argued that defendant had been charged with those burglaries and that he would be facing those charges after this trial. Defense counsel opposed the request on Evidence Code section 352 grounds, arguing that the evidence was prejudicial because it suggested based only on defendant's flight records that he committed additional burglaries. Defense counsel did not contend that admission of the evidence would violate defendant's rights to confrontation and to a fair trial. The court ruled that "it's an appropriate area to allow the People to go into. I think it's an area that you questioned the detective, and I think the People have a right to follow-up." Detective Bouja testified to the three out-of-county burglaries during redirect questioning, and defense counsel cross-examined the detective about this testimony during recross-examination.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.] Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

22

outcome.' " ' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)

" 'Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [citations], failure to object seldom establishes counsel's incompetence.' [Citation.] 'Generally, failure to object is a matter of trial tactics as to which we will not exercise judicial hindsight. . . . A reviewing court will not second-guess counsel's reasonable tactical decisions.' [Citation.]" (*People v. Riel* (2000) 22 Cal.4th 1153, 1185.) " '[I]n the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings.' " (*Id.* at p. 1197.) Thus, "where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

Detective Bouja testified that airline records showed that there were many flights taken by defendant in addition to the ones coinciding with the burglaries in Santa Clara County. Bouja further testified that three of the additional flights coincided with burglaries outside Santa Clara County that were similar to the ones in Santa Clara County. The evidence was presented in an attempt to rebut defendant's claim that, because he often flew into the Bay Area on weekends to pick up items he had purchased, it was just coincidental that his flights coincided with the Santa Clara County burglaries. Defense counsel was allowed to cross-examine Bouja about what made these three out-of-county burglaries similar to the Santa Clara County burglaries, and Bouja testified that his opinion as to the similarities was based on the police reports regarding the out-of-county burglaries.

We conclude that, even if the evidence of the three additional burglaries had been excluded, there is no reasonable probability that the result of the proceeding would have

been different.  Detective Bouja's testimony regarding these three burglaries and defendant's coinciding flights did not take an undue consumption of time, and the testimony regarding the three additional flights was based on the same records as were the flights coinciding with the Santa Clara County burglaries.  In addition, there was overwhelming evidence linking defendant to the numerous Santa Clara County burglaries and thefts.  Accordingly, defendant has not shown that he was prejudiced by his counsel's failure to object to admission of the evidence of the three additional burglaries on the grounds that it would deny defendant his rights to confrontation and a fair trial.  (*People v. Anderson, supra*, 25 Cal.4th at p. 569; *Strickland v. Washington, supra*, 466 U.S. at pp. 687-688.)

### *Impeachment with Priors*

Defendant contends that the trial court abused its discretion when it allowed the prosecution to impeach him with all four of his prior felony convictions.  Three of the prior convictions were for second degree burglary, and the fourth was for kidnapping.  Defendant argues that all four of the convictions were remote in time, three were for the same offense as the charged offense, and the fourth was for the very serious offense of kidnapping.  He urges this court to find that it would have been sufficient for the trial court to have allowed impeachment with only two of the prior convictions.

Article I, section 28, subdivision (f), of the California Constitution provides in pertinent part that "[a]ny prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding."  (See also, Evid. Code, § 788.)  However, a trial court has discretion to exclude a prior felony conviction under Evidence Code section 352 if it finds the probative value of such conviction is substantially outweighed by its prejudicial effect.  (*People v. Clair* (1992) 2 Cal.4th 629, 654.)  "The rule is settled that the trial court's discretion to exclude or admit relevant evidence under Evidence Code section 352 'is as broad as necessary to deal with the great variety of factual

24

situations in which the issue arises, and in most instances the appellate courts will uphold its exercise whether the conviction is admitted or excluded.' [Citation.]" (*People v. Kwolek* (1995) 40 Cal.App.4th 1521, 1532; see also, *People v. Ballard* (1993) 13 Cal.App.4th 687, 695.)

In performing an Evidence Code section 352 analysis the trial court is to consider the following factors: (1) whether the prior conviction " 'rest[s] on dishonest conduct' "; (2) the " 'nearness or remoteness of the prior conviction' "; (3) whether the " 'prior conviction is for the same or substantially similar conduct for which the accused is on trial' "; and (4) " 'what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions.' " (*People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*).)

First, we disagree with defendant's assertion that the remoteness of his priors favored their exclusion. Cases have concluded that convictions of up to 20 years, while remote, may have probative value for impeachment purposes. (See e.g., *People v. Massey* (1987) 192 Cal.App.3d 819, 825; *People v. Burns* (1987) 189 Cal.App.3d 734, 737-738.) Here, defendant's most recent prior conviction was in 1992, he was sentenced to prison as a result of the conviction, he was released on parole in 1993, and the conduct underlying the charged offenses began in 2001.

Also, "[t]here is no steadfast rule regarding the precise number of prior convictions which may be admitted in a particular case. '[W]hether or not more than one prior felony should be admitted is simply one of the factors which must be weighed against the danger of prejudice. [Citation.]' [Citation.] [¶] Prior convictions for the identical offense are not automatically excluded. 'The identity or similarity of current and impeaching offenses is just one fact to be considered by the trial court in exercising its discretion.' [Citation.]" (*People v. Green* (1995) 34 Cal.App.4th 165, 183 (*Green*).) In *Green*, where the defendant was charged with unlawful vehicle taking (Veh. Code, § 10851, subd. (a)), the appellate court held that it would not be an abuse of discretion to

allow the prosecution to impeach the defendant with six prior auto theft convictions, reasoning that "a series of crimes may be more probative than a single crime." (*Green, supra*, 34 Cal.App.4th at p. 183.) Here, the trial court properly found that to preclude the prosecution from impeaching defendant with his three prior second degree burglary convictions along with his prior kidnapping conviction would have given defendant a "false aura of veracity." (*People v. Beagle, supra*, 6 Cal.3d at p. 453.) We will not disturb the trial court's exercise of discretion in this case.

### CALCRIM No. 375

Defendant contends that the trial court erred by instructing the jury pursuant to CALCRIM No. 375 that the prosecution's burden of proving the uncharged offenses was by a preponderance of the evidence.[6] Defendant argues that the instruction is constitutionality defective in light of *Cunningham v. California* (2007) 549 U.S. ___ [127 S.Ct. 856] (*Cunningham*), in that it allowed the jury to find that he is the person who

---

[6] The court instructed the jury pursuant to CALCRIM No. 375 as follows: "The People presented evidence that the defendant committed other offenses that were not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses/acts. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses/acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] The defendant was the person who committed the offenses alleged in this case. [¶] The defendant had a plan or scheme to commit the offenses alleged in this case. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses or acts and the charged offenses. [¶] Do not consider this evidence for any other purpose except for the limited purpose of identity and common plan. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged offenses. The People must still prove each element of every charge beyond a reasonable doubt."

26

committed the charged offenses using a standard of proof lower than beyond a reasonable doubt.

Defendant acknowledges that our Supreme Court has rejected a similar argument regarding CALJIC No. 2.50.1. (See *People v. Medina* (1995) 11 Cal.4th 694, 762-764 (*Medina*); *People v. Carpenter* (1997) 15 Cal.4th 312, 380-383 (*Carpenter*).) In *Medina*, the court held that CALJIC No. 2.50.1 is a correct statement of the law. "[T]he facts tending to prove the defendant's other crimes for purposes of establishing his criminal knowledge or intent are deemed mere 'evidentiary facts' that need not be proved beyond a reasonable doubt as long a the jury is convinced, beyond such doubt, of the truth of the 'ultimate fact' of the defendant's knowledge or intent. [Citation.]" (*Medina, supra*, 11 Cal.4th at p. 763.) In *Carpenter*, after discussing the conflicting authority on the issue of the standard of proof for other crimes evidence, including *Medina*, the court stated that it would "adhere to the preponderance standard and disapprove any language suggesting the clear and convincing evidence standard." (*Carpenter, supra*, 15 Cal.4th at p. 382.)

The version of CALJIC No. 2.50.1 considered in *Medina* is similar in all material respects to CALCRIM No. 375 as given here in its explanation of the burden of proof. There is no material difference in the manner in which each of the instructions allows the jury to conclude from the prior conduct evidence that defendant was the person who committed the offenses alleged in this case and/or that defendant had a plan or scheme to commit the offenses alleged. CALCRIM No. 375 cautions the jury that it is not required to draw these conclusions and, in any event, that such a conclusion is insufficient, alone, to support a conviction. Based on *Medina* and *Carpenter*, we therefore reject defendant's contention that CALCRIM No. 375 violated his due process rights. (Cf. *People v. Cromp* (2007) 153 Cal.App.4th 476, 480; see also *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

27

### *Cumulative Error*

Defendant contends that the cumulative effect of the above errors so infected the trial with unfairness as to make his conviction a denial of due process. Our Supreme Court has recognized that "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) However, as we discussed above, we find that the trial court did not err or abuse its discretion in admitting evidence of uncharged acts, in allowing impeachment of defendant with his prior convictions, or in instructing the jury. Further, we find that defendant was not prejudiced by any alleged ineffective assistance of counsel and that no cumulative error has been shown.

### *Sentencing Error*

At sentencing, the court chose count 16 (grand theft, §§ 484, 487, subd. (a)) as the principal term, and imposed the upper term of six years, which was doubled pursuant to the Three Strikes law (§ 1170.12). The court stated that it chose the upper term "[b]ecause of the defendant's extensive criminal history, the prolonged scope of the instant three-year crime spree, and the [manner] in which these crimes were carried out, which indicates extensive planning and sophistication; moreover, items of great monetary value were taken." The probation report states that defendant's prior criminal history includes three convictions for second degree burglary, and one conviction each for kidnapping, intimidation of a witness, assault with a deadly weapon, and possession of an unlicensed firearm. Defendant was sentenced to state prison in 1992 for the kidnapping and burglary convictions. In addition, defendant has outstanding warrants for burglary charges in San Mateo and Alameda counties.

Defendant contends that the imposition of the upper term violated the federal Constitution because the court relied on factors not found true beyond a reasonable doubt by a jury. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*); *Blakely v.*

28

*Washington* (2004) 542 U.S. 296, 303 (*Blakely*); *Cunningham, supra*, 127 S.Ct. at p. 868.)

In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra*, 530 U.S. at p. 490.) The *Blakely* court further considered the issue and determined that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." (*Blakely, supra*, 542 U.S. at p. 303, italics omitted.) In *Cunningham*, the court concluded that under California's determinate sentencing law the middle term is the "statutory maximum" for *Apprendi* purposes. (*Cunningham, supra*, 127 S.Ct. at p. 868.) The court held that, by allowing imposition of an upper term sentence based on aggravating circumstances found solely by the judge, California's determinate sentencing law "violates *Apprendi's* bright-line rule" (*ibid.*), and that the upper term may be imposed only if the factors relied upon comport with the requirements of *Apprendi* and *Blakely*. (*Cunningham, supra*, 127 S.Ct. at p. 871.)

Subsequent to *Cunningham*, in *People v. Black* (2007) 41 Cal.4th 799, at page 816, our Supreme Court held that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." In imposing the upper term in the case before us, the trial court relied in part on defendant's "extensive criminal history." In addition to the prior kidnapping conviction that was used to double defendant's sentence under the Three Strikes law, defendant had three prior second degree burglary convictions as well as convictions for intimidation of a witness, assault with a deadly weapon, and possession of an unlicensed firearm. Thus, this case falls under the "prior conviction" exception recognized in *Apprendi, Blakely,* and

29

*Cunningham.* (*People v. Black, supra,* 41 Cal.4th at p. 818; see also, *People v. Thomas* (2001) 91 Cal.App.4th 212, 216-223; *Apprendi, supra,* 530 U.S. at p. 490; *Blakely, supra,* 542 U.S. at p. 301; *Cunningham, supra,* 127 S.Ct. at p. 868.)

The prior conviction exception derives from the United States Supreme Court's opinion in *Almendarez-Torres v. United States* (1998) 523 U.S. 224. In that case, the court concluded that the fact of a prior conviction was not an element of the charged offense and, thus, need not be charged in the indictment even though it may be used to increase the defendant's maximum penalty. (*Id.* at pp. 226-227, 240-247.) At this time, *Almendarez-Torres* is controlling law and this court is bound by it. (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at p. 455.) Therefore, we find that defendant's right to a jury trial was not violated by the trial court's imposition of the upper term sentence in this case. (*People v. Black, supra,* 41 Cal.4th at pp. 816, 820.)

## DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:



_____
MIHARA, J.




_____
MCADAMS, J.




*People v. Young*
H030682

31

# CALIFORNIA APPELLATE COURTS

Case Information

## 6th Appellate District

Change court

Court data last updated: 07/27/2007 01:05 PM

Welcome
Search
E-mail
Calendar
Help
Opinions

C|C
home

Case Summary   Docket   Scheduled Actions   Briefs
Disposition   Parties and Attorneys   Trial Court

## Docket (Register of Actions)

**The People v. Young**
**Case Number H030682**

| Date | Description | Notes |
|------|-------------|-------|
| 10/03/2006 | Notice of appeal lodged/received (criminal). | |
| 10/03/2006 | Counsel appointment order filed. | SDAP apptd as cnsl for applt |
| 10/04/2006 | Court reporter extension granted. | Reporter: Fontana, Irene (001838). Deadline extended to: 12/11/06. |
| 10/05/2006 | Notice to reporter to prepare transcript. | Amended ntce to ctrrs dtd 10/4/06 to reflect that the ctrr for 8/12/05 was ctrr Hunter & not ctrr Pendergraft (Note: Minute Order was incorrect) (Note: Ctrr Pendergraft is deleted from ctrr scrn) |
| 10/06/2006 | Court reporter extension granted. | Reporter: Johnson, Cindi (010125). Deadline extended to: 11/13/06. per signed acknowledgment |
| 10/06/2006 | Court reporter extension granted. | Reporter: Mohr, Cindy (004450). Deadline extended to: 11/13/06. per signed acknowledgment |
| 10/10/2006 | Notice to reporter to prepare transcript. | Amended ntce to ctrrs dtd 10/6/06 (Note: Amended to add date of 4/18/06) |
| 10/11/2006 | Court reporter extension granted. | Reporter: Vaughan, Susan (009673). Deadline extended to: 11/13/06. Per signed acknowledgment |
| 10/11/2006 | Court reporter extension granted. | Reporter: Hunter, Marcia (002801). Deadline extended to: 11/13/06. per signed acknowledgment |
| 10/18/2006 | Recommendation of counsel by SDAP filed. | J. Frank McCabe, Esq., is assctd as cnsl for applt |
| 10/24/2006 | Telephone conversation with: | Laura at appeals; Ctrr Pendergraft's tx is in |
| 11/13/2006 | Telephone conversation with: | csr, Vaughan is sending out a ext. of time req. |

| 11/14/2006 | Telephone conversation with: | Joyce, csr's Mohr and Johnson has handed in transcript, but Hunter has not. |
|---|---|---|
| 11/15/2006 | Telephone conversation with: | Laura at appeals section; Ctrr Hunter's tx is in |
| 11/17/2006 | Court reporter extension granted. | CSR: Vaughan, Susan A (9673) Extended Due Date: 12/11/2006 |
| 12/08/2006 | Telephone conversation with: | Laura at appeals section; Ctrr Fontana's tx is in |
| 12/12/2006 | Telephone conversation with: | Laura at appeals section; Ctrr Vaughan has not turned in her txs |
| 12/12/2006 | Osc issue on court reporter re: unfiled record. | csr Vaughan for Csr Vaughan (not: hearing set for January 3, 2007) |
| 12/18/2006 | Telephone conversation with: | ctrr Vaughn she will have rt in by wed 12/27/06. |
| 12/28/2006 | Telephone conversation with: | Laura she states ctrr Vaughn has turned in |
| 01/02/2007 | Order filed. | Csr Vaughan now having submitted her rt the court will hereby discharge the osc issued 12/12/06 |
| 01/04/2007 | Mail returned, unable to forward. | Susan Vaughan |
| 01/05/2007 | Notice of completion of transcripts received/filed. | Re record on appeal |
| 01/05/2007 | Record on appeal filed. | Call Laura if not rcvd C-6; R-21 (Note: Vol. 2 of RT is a sealed Marsden Hrg tx) |
| 01/05/2007 | Probation report filed. | |
| 01/05/2007 | Filed document entitled: | 1 volume of Master Index re Reporter's transcripts on appeal |
| 01/05/2007 | Marsden transcript filed****** | R-3 (In sealed envelopes); C-1 (Marsden hearing Motion in 1 sealed envelope) |
| 01/05/2007 | Sealed document filed********* | 1 sealed envelope containing sealed order re appointment of investigator (Note: Item not distributed to any party) |
| 01/05/2007 | Record in box. | Record on appeal is in two (2) boxes |
| 01/05/2007 | Certificate filed of: | Ctrr Robin Pendergraft dtd 10/4/06 indctng that she was not the ctrr for procs of 8/12/05 in this matter (See certificate) |
| 02/07/2007 | Granted - extension of time. | |
| 03/09/2007 | Granted - extension of time. | |
| 04/02/2007 | Appellant's opening brief. | |

| 04/04/2007 | Note: | Applt's pro per supplemental opening brief routed to SDAP this day |
|---|---|---|
| 04/10/2007 | Request filed to: | By SDAP staff atty to file applt's in pro per supplemental opening brief (TCT for order) |
| 04/10/2007 | Received document entitled: | Appellant's in pro per supplemental opening brief (TCT for order) |
| 04/18/2007 | Motion filed. | By cnsl for applt for permission to file supplemental opening brief (TCT for order) |
| 04/18/2007 | Received document entitled: | Appellant's Supplemental opening brief (TCT w/mtn for order) |
| 05/03/2007 | Order filed. | The clerk of the court is directed to file in pro per appellant's motion requesting to file a supplemental opening brief, supplemental writ of prohibition, motion for rehearing of denial of writ of prohibition and motion for a complete copy of the record, received from counsel for appellant on April 10, 2007, forthwith. The court having considered said motion and various requests made by the above named appellant hereby orders said motion and all requests made therein, denied. The motion by counsel for appellant for permission to file a supplemental opening brief is granted and the clerk of the court shall file said supplemental opening brief received by the court on April 18, 2007, forthwith. Time to file respondent's brief is extended to 15 days from the date of this order. (CLR) |
| 05/03/2007 | Supplemental brief filed by: | (See crt's order-event #530) |
| 05/03/2007 | Filed document entitled: | Appellant's in pro per motion rqstng to file a supp opng brf, supp writ of prohibition, etc., rcvd frm cnsl for applt on 4/10/07 (see order-event #530) |
| 05/18/2007 | Granted - extension of time. | |
| 05/21/2007 | Received document entitled: | Appellant's in pro per rqst for rehearing from denial of rqst to file supp AOB, etc. (TCT for permission to file) |
| 05/25/2007 | Request filed to: | By appellant for rehearing from denial of rqst for lve to file applt's in pro per supplemental opening brief (Note: Permission to file granted this day) |
| 06/14/2007 | Modified criminal address. | Per applt's ltr dtd 6/8/07 w/rqst for cpy of crt's order his rqst for rehearing (Crim/address modified accrdngly) |
| 06/18/2007 | Granted - extension of time. | 2nd |
| 07/02/2007 | Received document entitled: | Applt's in pro per supplemental request for rehearing (TCT for permission to file) |
| 07/16/2007 | Requested - extension of time | By rspdt to 8/16/07 to file RBF (3rd rex-TCT for order) |

| 07/17/2007 | Filed document entitled: | Applt's in pro per supplemental request for rehearing (Note: Permission to file granted this day) |
| 07/17/2007 | Order filed. | Applt's in pro per rqst for rhrg from the order dnyng his rqst to file a supp opng brf dtd 5/3/07 is denied; Permission to file in pro per applt's supp rqst for rhrg rcvd by the crt on 7/2/07, is granted; The rqst for a supp rhrg of th crt's ordr dtd 5/3/07, is denied (CLR) |
| 07/19/2007 | Granted - extension of time. | |

**Click here** to request automatic e-mail notifications about this case.

© 2004 Judicial Council of California



IN THE COURT OF APPEAL

FOR THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | NO. H030682 |
| Plaintiff and Respondent, | ) ) ) ) | [Santa Clara County Superior Court No. CC 454838] |
| v. | ) ) | |
| HOWARD ALLEN YOUNG, | ) ) | |
| Defendant and Appellant. | ) ) ) | |

ON APPEAL FROM A JUDGMENT
OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA
HON. ANDREA Y. BRYAN, JUDGE

---

**SUPPLEMENTAL OPENING BRIEF FOR APPELLANT**

---

J. FRANK McCABE (SBN 48246)
500 Sansome Street, Suite 212
San Francisco, California 94111
Telephone:  (415) 397-1757

Counsel for Appellant Young
By Appointment of the Court of
Appeal Under the Sixth District
Appellate Program's
Independent-Case System

# TABLE OF AUTHORITIES

## CASES

Crawford v. Washington (2004) 541 U.S. 36 .................... 5

In re Jones (1996) 13 Cal.4th 552 ........................... 3

People v. Asbury (1985) 173 Cal.3d 362 .................... 3, 4

People v. Anderson (2001) 25 Cal.4th 543 .................... 3

People v. Cage (2007) ____ Cal.4th ____ .................... 5

People v. Fosselman (1983) 33 Cal.3d 572 .................... 4

People v. Howard (1987) 190 Cal.App.3d 41 .................... 4

People v. Ledesma (1987) 43 Cal.3d 171 .................... 2, 4

Strickland v. Washington (1984) 466 U.S. 668 .............. 3, 4

United States v. DeCoster (D.C. Cir. 1973) 487 F.2d 1197 ...... 3

Wiggins v. Smith (2003) 539 U.S. 510 ........................ 3

## STATUTE

Evidence Code section 352 .................................... 2

## CONSTITUTIONAL

California Constitution, article I, section 15 ............... 2

United States Constitution, Sixth Amendment .................. 2

IN THE COURT OF APPEAL

FOR THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | NO. H030682 |
| Plaintiff and Respondent, | ) ) ) ) | [Santa Clara County Superior Court No. CC 454838] |
| v. | ) ) | |
| HOWARD ALLEN YOUNG, | ) ) | |
| Defendant and Appellant. | ) ) ) ) | |

APPELLANT'S SUPPLEMENTAL BRIEF

Appellant Howard Allen Young submits the following brief to supplement his opening brief, filed April 2, 2007:

ARGUMENT

APPELLANT WAS DEPRIVED OF HIS
CONSTITUTIONAL RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL AT TRIAL BECAUSE
COUNSEL FAILED TO OBJECT ON HEARSAY,
SIXTH AMENDMENT OR DUE PROCESS GROUNDS
TO THE ADMISSION OF THREE ADDITIONAL
UNCHARGED BURGLARIES

A.    Procedural History.

In Argument II. at pp. 30-34 of his opening brief, appellant argued that the trial court's admission of hearsay evidence of three additional uncharged burglaries, inferentially committed by appellant, violated his federal and state

1

constitutional rights to confrontation and to a fair trial,
requiring the reversal of his judgment of conviction.

However, although appellant's trial counsel objected to
this evidence on Evidence Code section 352 grounds (14 RT 1346-
47), it does not appear that he objected on the ground that the
profferred evidence constituted hearsay, or that admission of the
evidence violated appellant's Federal and State Constitutional
right of Confrontation or his due process right to a fair trial.
Thus, this Court may conclude that, because of the absence of an
objection on these grounds, appellant has waived his right to
present this argument on appeal.

Therefore, appellant Young now argues that counsel's
failure to object on the above-stated grounds constitutes
prejudicial ineffective assistance of counsel.

B.    <u>Counsel's Failure To Object To The
      Court's Admission Of Hearsay Evidence
      On Hearsay And Constitutional Grounds
      Constitutes Ineffective Assistance Of
      Counsel</u>.

Under both the Sixth Amendment to the United States
Constitution and article I, section 15 of the California
Constitution, a criminal defendant has the right to the
assistance of counsel.  "The ultimate purpose of this right is to
protect the defendant's fundamental right to a trial that is both
fair in its conduct and reliable in its result."  (<u>People</u> v.
<u>Ledesma</u> (1987) 43 Cal.3d 171, 215.)  This right "entitles the

defendant not to some bare assistance but rather to <u>effective</u>
assistance.  Specifically, it entitles him to 'the reasonably
competent assistance of an attorney acting as his diligent
conscientious advocate." (<u>Ibid</u>., quoting <u>United States</u> v.
<u>DeCoster</u> (D.C. Cir. 1973) 487 F.2d 1197, 1202; italics in
original.)

     In order to obtain relief on the ground of ineffective
assistance of counsel, appellant must establish two components:
First, that trial counsel failed to act in a manner to be
expected of reasonably competent attorneys acting as diligent
advocates.  Second, he must establish that there is a reasonable
probability that but for counsel's errors the result of the case
would have been different.  (<u>Wiggins</u> v. <u>Smith</u> (2003) 539 U.S.
510, 534; <u>Strickland</u> v. <u>Washington</u> (1984) 466 U.S. 668, 687;
<u>People</u> v. <u>Anderson</u> (2001) 25 Cal.4th 543, 569.)

     The performance of appellant Young's counsel fell below
this constitutional standard.

     The failure of defense counsel to make objections is
generally a matter of trial tactics, but the fact that
appellant's trial counsel <u>did</u> strongly object to the admission of
the evidence but on insufficient grounds "refutes any inference
that he was pursuing some tactical advantage...." (<u>People</u> v.
<u>Asbury</u> (1985) 173 Cal.3d 362, 365-366; accord, <u>In re Jones</u> (1996)
13 Cal.4th 552, 571-573.)  There is absolutely no reason why

3

counsel, having objected on one ground, would not have objected
on meritorious grounds.

        C.   <u>Appellant Was Prejudiced By His</u>
              <u>Counsel's Ineffectiveness.</u>

      Counsel's omission prejudiced appellant and requires
that his judgment of conviction be reversed because there is a
reasonable probability that, absent counsel's omission, the
result of the case would have been different. (<u>Strickland</u> v.
<u>Washington</u>, <u>supra</u>, 466 U.S. at p. 687; <u>People</u> v. <u>Ledesma</u>, <u>supra</u>,
43 Cal.3d at pp. 215-218.) A reasonable probability is a
"probability sufficient to undermine confidence in the outcome."
(<u>Strickland</u>, <u>supra</u>, at p. 694.) <u>Strickland</u> "requires a
significant but something-less-than-50 percent likelihood of a
more favorable verdict." (<u>People</u> v. <u>Howard</u> (1987) 190 Cal.App.3d
41, 48.)

      This standard is clearly met in the case at bench.
Appellant suggests that, as in <u>Asbury</u>, <u>supra</u>, had the proper
objection been raised, the court "cannot say that a determination
more favorable to the defendant would not have resulted. (<u>People</u>
v. <u>Fosselman</u> (1983) 33 Cal.3d 572, 574.)" (173 Cal.App.3d at p.
366.)

      Appellant was prejudiced for the reasons discussed at
pp. 27-29 and 34 of the opening brief. The prosecutor emphasized
burglaries other than those charged in the instant case in his
closing argument. <u>Moreover, the case was a close one, as</u>

4

evidenced by three jury questions during deliberations, and by the fact that those deliberations extended over parts of four days. It cannot be said that a determination more favorable to appellant would not have resulted if officer Bouja's hearsay testimony of additional burglaries, clearly inadmissible under Crawford v. Washington (2004) 541 U.S. 36, and People v. Cage (2007) ____ Cal.4th ____, 07 C.D.O.S. 3682, had been excluded.

## CONCLUSION

For the foregoing reasons and the reasons discussed in his opening brief, appellant Howard Allen Young respectfully requests this Court to reverse his judgment of conviction.

DATED: April 16, 2007.

Respectfully submitted,

J. FRANK McCABE
Counsel for Appellant Young
Under the Sixth District Appellate
Program's Independent-Case System

5

IN THE COURT OF APPEAL

FOR THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>HOWARD ALLEN YOUNG,<br><br>   Defendant and Appellant. | NO. H030682<br><br>[Santa Clara County Superior Court No. CC 454838] |

## CERTIFICATE OF WORD COUNT

Appellant hereby certifies that the software used in preparing the Supplemental Opening Brief for Appellant is Corel WordPerfect 8 and contains approximately 858 words.

DATED:  April 16, 2007.

Respectfully submitted,

J. FRANK McCABE
Counsel for Appellant Young
Under the Sixth District Appellate
Program's Independent-Case System

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the City and County of San Francisco, State of California; I am over the age of 18 years and not a party to the within action; my business address is 500 Sansome Street, Suite 212, San Francisco, California 94111.  On April 17, 2007, I served the within **SUPPLEMENTAL OPENING BRIEF FOR APPELLANT** on the parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office Mail Box at San Francisco, California, addressed as follows:

EDMUND G. BROWN, JR.
ATTORNEY GENERAL
STATE OF CALIFORNIA
455 GOLDEN GATE AVE STE 11000
SAN FRANCISCO, CA 94102-7004

HOWARD ALLEN YOUNG
F44590   3A-02/126
P O BOX 3461
CORCORAN CA 93212

DISTRICT ATTORNEY
COUNTY OF SANTA CLARA
70 W HEDDING ST
SAN JOSE CA 95110

CLERK, SUPERIOR COURT
COUNTY OF SANTA CLARA
191 N FIRST ST
SAN JOSE CA 95113
(for delivery to
HON. ANDREA Y. BRYAN)

WILLIAM M. ROBINSON, ESQ.
SIXTH DISTRICT APPELLATE PROGRAM
100 N WINCHESTER BLVD STE 310
SANTA CLARA CA 95050

Executed at San Francisco, California, on April 17, 2007.

KIMBERLY COOKE

# SIXTH DISTRICT APPELLATE PROGRAM
A Non-Profit Corporation

---

100 N Winchester Blvd., Suite 310
Santa Clara, CA 95050

(408) 241-6171 - Main
(408) 241-2877 - Fax

Executive Director
*Michael A. Kresser*

Law Office Manager
*Yolanda G. Edwards*



Assistant Director
*Dallas Sacher*

Staff Attorneys
*Lori A. Quick*
*Vicki I. Firstman*
*William M. Robinson*
*Jonathan Grossman*
*Paul Couenhoven*

April 9, 2007

Michael J. Yerly, Clerk
Court of Appeal
Sixth Appellate District
333 W. Santa Clara Street
San Jose, CA 951

Re:    People v. Howard Allen Young, H030682
       Pro Per Motion and Supplemental Brief

Dear Mr. Yerly:

As a staff attorney with Sixth District Appellate Program ("SDAP"), I recently
received from your office an original and four copies of a document prepared *in
propria persona* by the appellant in the above-named case, Howard Allen Young,
which is entitled "Supplemental Appellant's Opening Brief and/or Supplemental Writ
of Prohibition/Motion for Rehearing of denial of Writ of Prohibition and Motion for
Complete Copy of Record" (hereinafter "SAOB"). It is apparent that Mr. Young sent
the SAOB to your office for filing, and that your office forwarded it to SDAP based
on the fact that Mr. Young is represented by SDAP and by our associated attorney
Frank McCabe in this appeal.

My review of the materials submitted by Mr. Young for filing indicates to me that the
document includes, in paragraph (1) of the first page, a motion for leave to file a pro
per supplemental opening brief, together with an explanation of Mr. Young's stated
reasons for filing such a brief. As the motion/SAOB was presented to the court in
proper form, with a proof of service, and with the requisite number of copies
provided, in my professional opinion the matter should properly be filed by the Court

Michael J. Yerly letter, page 2
April 9, 2007 (People v. Howard Young, H030682)


and submitted for a ruling. I am thus returning the original and four copies of the
SAOB to the Court for filing. I have altered the original documents only by separating
the original and copies, stapling each separate document, and marking them with the
appropriate stamp for "Original" and "Copy."

Thank you for your attention to this matter. Please feel free to telphone me if you
have any questions about this matter.


                                    Very truly yours,


                                    William M. Robinson, Staff Attorney

cc: Howard Young, Frank McCabe

FILED

JUL 7 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY _____ DEPUTY
S. CHUA

1  Howard Young
   Du1864
2  885 N. San Pedro St.,
   San Jose, Ca., 95110
3  Defendant in Pro Per

4

5         SUPERIOR COURT FOR THE STATE OF CALIFORNIA

6              FOR THE COUNTY OF SANTA CLARA

7  PEOPLE OF THE STATE)
   OF CALIFORNIA      )          No. CC454838
8                     )
                      )          NOTICE OF MOTION
                      )          SET ASIDE
9         Plaintiff   )          INFORMATION
                      )          (Pen. C # 995)
10        v.          )          Date: JULY 8,2005
              Defendant)         Time: 9:00am
11                    )          2:00 HOURS
   HOWARD YOUNG       )          Place:DEPT.29

12      TO THE DISTRICT ATTORNEY OF SANTA CLARA COUNTY
              AND/OR HIS REPRESENTATIVE:
13  PLEASE TAKE NOTICE that on July 8, 2005, at the hour of 1:00pm

14  Or as soon thereafter as the matter may be heard in the

15  courtroom of the above-entitled court, the defendant will move

16  for an order setting aside the information filed herein.

17  The motion will be made on the grounds that the defendant was

18  committed without reasonable or probable cause, that before the

19  filing of the information the defendant had not been legally

20  committed by a magistrate, and that because the commitment was

21  based upon incompetent evidence.

22  The motion will be based on this notice of motion, on the

23  memorandum of points and authorities as may be filed hereafter

24  with the court, and on such oral argument as may be presented at

25  the hearing on this motion.

26  Dated: July 5,2005

27

28                              Attorney for Defendant
                                In Pro Per

                    I

                                               721



1   Howard Young
    Dul864
2   885 N. San Pedro St.,
    San Jose, Ca., 95110
3   Defendant in Pro Per

4

5              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

6                    FOR THE COUNTY OF SANTA CLARA

    PEOPLE OF THE STATE)
7   OF CALIFORNIA      )              No. CC454838
                       )
·8                     )              NOTICE OF MOTION
                       )              TO SUPPRESS
9           Plaintiff  )              EVIDENCE
                       )              (Pen. C #1538.5(i))
10         v.          )              Date: JULY 8,2005
                       )              Time: 9:00am
           Defendant)                 2:00 HOURS
11  HOWARD YOUNG       )              Place:DEPT.29

12       TO THE DISTRICT ATTORNEY OF SANTA CLARA COUNTY
               AND/OR HIS REPRESENTATIVE:
13  PLEASE TAKE NOTICE that on July 8, 2005, at the hour of 1:00pm

14  Or as soon thereafter as the matter may be heard in the

15  courtroom of the above-entitled court, the defendant will move

16  for an order suppressing the following evidence: the VISA USA

17  SEARCH WARRANT, the TRANSUNION SEARCH WARRANT, the EXPERIAN

18  SEARCH WARRANT, the EQUIFAX SEARCH WARRANT , the T-MOBILE SEARCH

19  WARRANT, the  EBAY/PAYPAL SEARCH WARRANT, the SAN FRANCISCO

20  INTERNATIONAL AIRPORT SEARCH WARRANT, the PUBLIC STORAGE SEARCH

21  WARRANT, the HERTZ SEARCH WARRANT, the AVIS SEARCH WARRANT, the

22  AIRLINE REPORTING CORPORATION(ARC) SEARCH WARRANT, the LAS VEGAS

23  SEARCH WARRANT, (or should be disallowed), the SEARCH OF THE

24  DEFENDANT'S IBM LAPTOP SEIZED AT THE DEFENDANT'S ARREST, any and

25  all other searches and seizures made in the above mentioned

26  case, including but not limited to, all the information,

27  documentation, evidence, and  property listed on the attached

28  Property Reports seized before, during, and after the

                              *1

                                          703

1  defendant's arrest.

2  The motion will be made on the grounds that the search and

3  seizures were unreasonable in violation of the Fourth and

4  Fourteenth amendments to the United States Constitution, and

5  violated the defendant's reasonable expectation of privacy. More

6  specifically, some of these search warrants were facially

7  defective, some of these search warrants were too broad to

8  comport to constitutional standards, and some of these search

9  warrants derived information from illegal search and seizures.

10 Additionally, some of the search warrants were illegal due to

11 federal law/federal regulation. We also note that the LAS VEGAS

12 search and seizure was initially done, as was the VISA USA

13 search and seizure, without a search warrant.

14 The motion will be based on this notice of motion, on the

15 transcript of the preliminary hearing (which to date we have not

16 received) and the memorandum of points and authorities served

17 and filed hereafter, on such supplemental memoranda of points

18 and authorities as may hereafter be filed with the court or

19 stated orally at the conclusion of the hearing on the motion, on

20 all papers and records on file in this present action, and on

21 such oral and documentary evidence as may be presented at the

22 hearing of the motion.

23

24 Dated: July 5,2005

25

26                                    ----------------------
                                      Attorney for Defendant
27                                    Defendant In Pro Per

28

704

NO. _____

(PLEASE NOTE THAT RED INK IS NOT AVAILABLE TO PRO PER INMATES)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

RECEIVED

AUG 12 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
DEPUTY

| | |
|---|---|
| Howard Young, | ) |
| Petitioner | ) |
| | ) (Santa Clara County) |
| -vs.- | ) Superior Court No. CC454838) |
| | ) |
| THE SUPERIOR COURT OF CALIFORNIA | ) |
| COUNTY OF SANTA CLARA | ) |
| Respondent | ) |
| | ) |
| PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| Real Party in Interest | ) |

FILED

AUG 12 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By_____ DEPUTY

_____/

PETITION FOR WRIT OF PROHIBITION AND REQUEST FOR STAY OF
PROCEEDINGS PRESENTLY SET FOR SEPTEMBER 12,2005, AND EXHIBITS

IN SUPPORT THEREOF

After Denial of Motion to Set Aside

Pursuant to Penal Code 995

By the Honorable Randolf Rice

Judge of the Superior Court

County of Santa Clara

Howard Young,

#04030028  DUL864

885 N.SAN PEDRO ST.

SAN JOSE, CA.95110

PETITIONER PROCEEDING IN PRO PER.

1045

NO.
(PLEASE NOTE THAT RED INK IS NOT AVAILABLE TO PRO PER INMATES)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Howard Young,                          )
                       Petitioner      )
                                       ) (Santa Clara County
            -vs.-                      ) Superior Court No.: 454838)
                                       )
THE SUPERIOR COURT OF CALIFORNIA       )
COUNTY OF SANTA CLARA                  )
                       Respondent      )
                                       )
PEOPLE OF THE STATE OF CALIFORNIA,     )
            Real Party in Interest )
_____/

PETITION FOR WRIT OF PROHIBITION AND REQUEST FOR STAY OF
PROCEEDINGS PRESENTLY SET FOR SEPTEMBER 12,2005, AND EXHIBITS
                     IN SUPPORT THEREOF

        After Denial of Motion to Set Aside

        Pursuant to Penal Code 995

        By the Honorable Randolf Rice

        Judge of the Superior Court

        County of Santa Clara

                              Howard Young,

                              #04030028  DUL864

                              885 N.SAN PEDRO ST.

                              SAN JOSE, CA.95110

                              PETITIONER PROCEEDING IN PRO PER.


                              1046

--i

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES CITED                          iii

PETITION

INTRODUCTION, PETITION, PRAYER                       1

VERIFICATION                                        11

MEMORANDUM OF POINTS AND AUTHORITIES

1047

TABLE OF AUTHORITIES CITED

Cases                                                          Page

Alford v Superior Court                                         13

(1972) 29 Cal.App.3d 724,105 Cal.Rptr.713

Hines v Superior Court                                          13

(1988) Cal.App.3d 1231,251 Cal.Rptr.28

Irving v People                                                 12

(1979) 93 Cal.App.3d 596,155 Cal.Rptr.654

Jennings v Superior Court                                       13

(1967) 66 Cal.2d 867,428 P.2d 304,59 Cal.Rptr.440

Serrato v Superior Court                                        12

(1978) 76 Cal.App.3d 459,469-470,142 Cal.Rptr.882,887




Statutes


California Penal Code 859b

California Penal Code 999a

California Penal Code 118

California Penal Code 127

-iii-

1048

1  Howard Young
   04030028-DUL-864
2  885 N. San Pedro str.
   San Jose, Ca. 95110
3  Defendant In Pro Per

4  No.

5              IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

6                        SIXTH APPELLATE DISTRICT

7  Howard Young,                          )

8                      Petitioner         )

9                                         ) (Santa Clara County

10               -vs.-                     ) Superior Court No.: 454838)

11                                         )

12 THE SUPERIOR COURT OF CALIFORNIA        )

   COUNTY OF SANTA CLARA                   )
13
                        Respondent         )
14
                                           )
15
   PEOPLE OF THE STATE OF CALIFORNIA,      )
16
                   .Real Party in Interest )
17 _____/

18        PETITION WITH MEMORANDUM OF POINTS AND AUTHORITIES

19

20 TO THE HONORABLE PRESIDING JUSTICE AND TO THE HONORABLE ASSOCIATE

21 JUSTICES OF THE COURT OF APPEAL OF THE STATE OF CALIFORNIA:

22                        INTRODUCTION

23 Petitioner, Howard Young, respectfully petitions this Court for a

24 writ of prohibition and stay of proceedings directed to respondent

25 court, and by this verified petition alleges that the petitioner was

26 Illegally committed, pursuant to a violation of Penal Code 859b, and

27 that the petitioner was denied substantial rights at the preliminary

28 examination.

                                              1049

                            --1

PETITION

I

1 Petitioner is the defendant in the above-entitled action now pending
2 in respondent court. The plaintiff in the above action is named in
3 this petition as the real party in interest.

II

4 Petitioner was arraigned on June 9,2005, on an accusatory pleading
5 numbered CC454838, alleging violations of Penal Codes 459-460(b),
6 484-487(a), and 496(a).
7 A copy of the accusatory pleading will be sent separately to the
8 Court, made part of this petition, and labeled Exhibit A.

III

9 On July 22,2005, in Department 29, of respondent court, the Honorable
10 Randolf Rice presiding, petitioner moved to set aside the
11 information, pursuant to Penal Code 995.

12 The motion was denied. A copy of the motion will be sent separately
13 to the Court, made part of this petition, and labeled Exhibit B.

14 A copy of the order of minutes and transcripts of said proceeding was
15 requested from respondent court. The transcripts have not been
16 received to date. We have filed a motion requesting these transcripts
17 and the order of minutes, to be produced. A copy of the preliminary
18 hearing transcript, as well as a copy of the motion requesting these
19 transcripts, will be sent separately to the Court, made part of this
20 petition, and labeled as Exhibit C .

IV

--2

1050

1  Petitioner is particularly aggrieved by respondent court's actions,

2  which will result in irreparable damage to petitioner in that the

3  petitioner will face trial after being illegally committed.

4  V

5  The parties directly affected by the instant proceeding now pending

6  in respondent court are petitioner, by and through counsel;

7  respondent court; and Real Party in interest, the People of the State

8  of California.

9  All the proceedings about which this petition is concerned have

10  occurred within the territorial jurisdiction of the respondent court

11  and of this court.

12  VI

13  No other petition for a writ has been made by, or on behalf of, this

    petitioner relating to this matter.

14  VII

15  Petitioner has no other plain, speedy, or adequate remedy at law. The

16  sole remedy is by petition for extraordinary writ, pursuant to Penal

17  Code 999a.

18  VIII

19  Respondent court should be restrained from further proceedings for

20  the reasons that: Petitioner was illegally committed by the

21  magistrate and denied substantial right's as follows:

22  VIOLATION OF PENAL CODE 859b

23  On October 14, 2004, Petitioner and Real Party in Interest pled not

24  guilty, entered in a 60 day time waiver, and was scheduled for

25  preliminary examination on January 5,2005.

26  On January 5,2005, Petitioner's Attorney agreed to remove himself

27  from the case. At which time the Santa Clara County Public Defenders

28  Office was assigned.

--3

1051

1   On January 10,2004, the defendant refused to enter a time waiver, but
2   the court continued the setting of the preliminary examination until
3   January 18,2005, at which time the defendant filed a Marsden motion
4   to remove the Santa Clara County Public Defenders Office and enter
5   into Pro Per status. Eventually, the defendant's preliminary
6   examination was held on June 2-3,2005, at which time the defendant
7   entered a time waiver.

8                        DENIAL OF SUBSTANTIAL RIGHT'S

9   Additionally, we seek review where the defendant was denied his
10  substantial right's at the preliminary examination by not being able
11  to cross-examine People's witnesses.

12  As noted in the preliminary examination transcripts, Exhibit A, on
13  page # 90, lines 13-26, during cross-examination of one of the
14  investigating officers, Det.Flohr, the court denied the defense the
15  right to continue cross-examining the witness, after the defense
16  clearly stating: " I'm not, Your Honor", in response to the courts
17  question of: "Were you through? You weren't through with the witness
18  were you?", and instead turned the proceedings over to the District
19  Attorney Mr. Flattery. We assert that this was prejudicial, and it
20  denied the defense the substantial right to cross-examine the witness
21  any further. We also note that on page #222, lines 25-28, and on page
22  #223, lines 1-10, of the preliminary examination transcripts, that
23  the defense was again denied the substantial right to cross-examine
24  the People's witness, Det.Bouja, who also is an investigating officer
25  in this case. While the defense was cross-examining the witness,
26  Deputy District Attorney Mr. Flattery objected twice. First, by
27  saying "I don't think it could be properly challenged in this
28  jurisdiction", which was sustained. Then, Deputy District Attorney
    Mr. Flattery objected by saying "as discovery". Yet, the questioning

                                            --4

                                        1052

1  by the defense was after Deputy District Attorney Mr. Flattery had
2  introduced evidence from the Las Vegas search, and, as noted on page
3  # 183, lines 19-28, and page # 184, lines # 1-15, Det.Bouja had
4  already spoken regarding the Las Vegas search, and the subject which
5  the defense was merely attempting to cross-examine. We assert the it
6  was prejudicial, and it was a denial of the defendant's substantial
7  right's to be denied to cross-examine the witness, Det.Bouja in this
8  area.

9                  PERJURY AND SUBORNATION OF PERJURY
10 We assert perjury, pursuant to Penal Code 118, by Det.Bouja whose
11 testimony appears on pages 157-223. On page 205,lines 10-28,page
12 213,lines 11-28, of the preliminary examination transcript, where
13 items#,48,49,and 50, were introduced into evidence as having been
14 seized at the defendant's Las Vegas residence. We further assert that
15 items# 35,37,and 45 were also seized from the defendant's bags at the
16 San Francisco International Airport, and not the defendant's Las
17 Vegas residence as testified to by Det.Bouja.  We also note that
18 Det.Bouja stated that he had a search warrant when he went to the
19 defendant's house in Las Vegas, on page # 222,lines 14-22, which he
20 did not as noted from the Las Vegas search warrant. We assert that
21 this perjury was procured and instigated by Deputy District Attorney
22 Mr. Flattery during the preliminary examination, which is subornation
23 of perjury, pursuant to Penal Code 127. We assert that Deputy
24 District Attorney Mr. Flattery knew or should have known the truth
25 regarding this evidence, yet chose to instigate and procure this
26 perjured testimony from Det.Bouja
27 We assert perjury, pursuant to Penal Code 118, by Ms.Tannehill Crews
28 on page 125, lines 26-28, and on page 126,lines 8-18, of the
   preliminary examination transcript. Ms.Crews claimed to have

--5

1053

1  identified stolen memory modules by serial numbers listed on the
2  defendant's Ebay account, but those Ebay records show that that was a
3  lie, and of which was the root of the investigation of the defendant.
4  All of which we brought to the attention of the court in the Motion
5  to Set Aside, pursuant to Penal Code 995. On July 22,2005, the
6  Superior Court denied the defendant's motion to Set Aside, pursuant
7  to Penal Code 995. We assert that the respondent court acted in
8  excess of its jurisdiction in denying petitioner's motion to set
9  aside.

10
11  WHEREFORE, petitioner prays that:
12  This prayer should be deemed notice that Real Party in Interest seeks
13  a peremptory writ of prohibition in the first instance restraining
14  the respondent court, its officers and agents, and all persons acting
15  by and through its orders from taking any further steps or
16  proceedings, including trial, in the above-captioned criminal action
17  against petitioner.
18  Dated:  August 4, 2005
19  Respectfully Submitted
20
21                              Howard Young,
22                              Petitioner/Pro Per
23
24
25
26
27
28

—6                                        **1054**

1          VERIFICATION

2

3      I am Petitioner representing and proceeding In Pro Per. All
facts alleged in the
4

5
Above documents, not otherwise supported by citations to the record,
6  exhibits, or other

7

8  Documents, are true of my own personal knowledge.

9

10     I declare under penalty of perjury that the foregoing is true
11  and correct and that

12

13  This declaration was signed on August 4,2005

14

15

16

17

18                        Howard Young

19                        Petitioner/Pro Per.

20

21

22

23

24

25

26

27

28


                              1055

                    --7

1

MEMORANDUM OF POINTS AND AUTHORITIES

2

I

3

VIOLATION OF PENAL CODE 859b

4 Penal Code section 859b, insofar as pertinent provides "Both the
5 defendant and the People have the right to a preliminary examination
6 at the earliest possible time, and unless both waive that right for
7 good cause for a continuance is found is provided for in section
8 1050, the preliminary examination shall be held within 10 days of the
9 date the defendant is arraigned or pleads, whichever occurs later. In
10 no instance shall the preliminary examination be continued beyond 10
11 days from the arraignment or plea whenever the defendant is in
12 custody at the time of such arraignment or plea ant the defendant
13 does not personally waive his right to a preliminary hearing within
14 such 10 court days."
15 On October 14, 2004, Petitioner and Real Party in Interest pled not
16 guilty, entered in a 60 day time waiver, and was scheduled for
17 preliminary examination on January 5,2005.
18 On January 5,2005, Petitioner's Attorney agreed to remove himself
19 from the case. At which time the Santa Clara County Public Defenders
20 Office was assigned.
21 On January 10,2004, the defendant refused to enter a time waiver, but
22 the court continued the setting of the preliminary examination until
23 January 18,2005, at which time the defendant filed a Marsden motion
24 to remove the Santa Clara County Public Defenders Office and enter
25 into Pro Per status. Eventually, the defendant's preliminary
26 examination was held on June 2-3,2005, at which time the defendant
27 entered a time waiver. We assert that this violated the defendant's
28 right to a preliminary examination within 10 days of the defendant
pleading not guilty, within the meaning of Penal Code 859b. The

--8

1056

1  defendant did not enter a time waiver after the scheduled preliminary
2  examination date of January 5,2005, hence making the defendant's
3  commitment illegal. The court held in Serrato v Superior Court
4  (1978) 76 Cal.App.3d 459,469-470,142 Cal.Rptr.882,887, and in Irving
5  v People(1979) 93 Cal.App.3d 596,155 Cal.Rptr.654that: "An accused is
6  not legally committed within the ambit of section 995 if the
7  magistrate denies him the right to have his preliminary examination
8  held within the mandatory time limit prescribed by section 859b and
9  can obtain relief under section 995."

10                                    II
11                      DENIAL OF SUBSTANTIAL RIGHT'S
12  Additionally, we seek review where the defendant was denied his
13  substantial right's at the preliminary examination by not being able
14  to cross-examine People's witnesses.
15  As noted in the preliminary examination transcripts, Exhibit A, on
16  page # 90, lines 13-26, during cross-examination of one of the
17  investigating officers, Det.Flohr, the court denied the defense the
18  right to continue cross-examining the witness, after the defense
19  clearly stating: " I'm not, Your Honor", in response to the courts
20  question of: "Were you through? You weren't through with the witness
21  were you?", and instead turned the proceedings over to the District
22  Attorney Mr. Flattery. We assert that this was prejudicial, and it
23  denied the defense the substantial right to cross-examine the witness
24  any further. We also note that on page #222, lines 25-28, and on page
25  #223, lines 1-10, of the preliminary examination transcripts, that
26  the defense was again denied the substantial right to cross-examine
27  the People's witness, Det.Bouja, who also is an investigating officer
28  in this case. While the defense was cross-examining the witness,
    Deputy District Attorney Mr. Flattery objected twice. First, by

                                    --9

1   saying "I don't think it could be properly challenged in this
2   jurisdiction", which was sustained. Then, Deputy District Attorney
3   Mr. Flattery objected by saying "as discovery". Yet, the questioning
4   by the defense was after Deputy District Attorney Mr. Flattery had
5   introduced evidence from the Las Vegas search, and, as noted on page
6   # 183, lines 19-28, and page # 184, lines # 1-15, Det.Bouja had
7   already spoken regarding the Las Vegas search, and the subject which
8   the defense was merely attempting to cross-examine. We assert the it
9   was prejudicial, and it was a denial of the defendant's substantial
10  right's to be denied to cross-examine the witness, Det.Bouja in this
11  area.   The court in *Jennings v Superior Court*
12  *(1967) 66 Cal.2d 867,428 P.2d 304,59 Cal.Rptr.440* , held that "Where
13  it appears that, during course of preliminary examination, defendant
14  has been denied substantial right, commitment is unlawful and must be
15  set aside upon timely motion. West's Ann.Pen.Code # 995."
16  The court held in *Alford v Superior Court (1972) 29 Cal.App.3d*
17  *724,105 Cal.Rptr.713*, that, as in *Alford v United States,282*
18  *U.S.687,691-692,51 S.Ct.218,219,75 L.Ed.624*, that " It is the essence
19  of a fair trial that reasonable latitude be given the cross-examiner,
20  even though he is unable to state to the court what facts a
21  reasonable cross-examination might develop. Prejudice ensues from a
22  denial of the opportunity to place the witness in his proper setting
23  and put the weight of his testimony and his credibility to a test,
24  without which the jury cannot fairly appraise them. To say that
25  prejudice can be established only by showing that the cross-
26  examination, if pursued, would necessarily have brought out facts
27  tending to discredit the testimony in chief, is to deny a substantial
28  right and withdraw one of the safeguards essential to a fair trial.

1058

1    (Alford v United States,282 U.S at p.692,51 S.Ct. at p.219.) Alford

2    dealt with cross-examination at trial. We see no reason, however, why

3    the same principles should not apply at preliminary hearings since

4    the defendant is entitled to present evidence at such hearing to

5    establish that there is no probable cause to hold him for trial."

6    The court in Hines v Superior Court (1988) Cal.App.3d 1231,251

7    Cal.Rptr.28, held that: "once statutory privilege was invoked, thus

8    depriving the defendant of right to cross-examine officer on material

9    issue, magistrate should have stricken testimony...." We make this

10   analogy to our case by stating where magistrate deprived the

11   defendant of right to cross-examine officer on material issue, to

12   wit, the Las Vegas search, particularly after the People questioned

13   the officer and introduced evidence said to have been seized from the

14   Las Vegas search, then the magistrate should have stricken

15   Det.Bouja's testimony. Otherwise, we assert this was prejudicial and

16   denied the defendant his substantial right to cross-examine these

17   witnesses.

18                                    III

19                   PERJURY AND SUBORNATION OF PERJURY

20    We assert perjury, pursuant to Penal Code 118, by Det.Bouja whose

21   testimony appears on pages 157-223. On page 205,lines 10-28,page

22   213,lines 11-28, of the preliminary examination transcript, where

23   items#,48,49,and 50, were introduced into evidence as having been

24   seized at the defendant's Las Vegas residence. We further assert that

25   items# 35,37,and 45 were also seized from the defendant's bags at the

26   San Francisco International Airport, and not the defendant's Las

27   Vegas residence as testified to by Det.Bouja.  We also note that

28   Det.Bouja stated that he had a search warrant when he went to the

     defendant's house in Las Vegas, on page # 222,lines 14-22, which he

                                    --11

1 | did not as noted from the Las Vegas search warrant. We assert that
2 | this perjury was procured and instigated by Deputy District Attorney
3 | Mr. Flattery during the preliminary examination, which is subornation
4 | of perjury, pursuant to Penal Code 127. We assert that Deputy
5 | District Attorney Mr. Flattery knew or should have known the truth
6 | regarding this evidence, yet chose to instigate and procure this
7 | perjured testimony from Det.Bouja
8 | We assert perjury, pursuant to Penal Code 118, by Ms.Tannehill Crews
9 | on page 125, lines 26-28, and on page 126,lines 8-18, of the
10 | preliminary examination transcript. Ms.Crews claimed to have
11 | identified stolen memory modules by serial numbers listed on the
12 | defendant's Ebay account, but those Ebay records show that that was a
13 | lie, and of which was at the root of the investigation of the
14 | defendant.

15

16 | Dated:  August 4, 2005

17 | Respectfully Submitted

18

19

20 | Howard Young,

21 | Petitioner/Pro Per

22

23

24

25

26

27

28

—12

**1060**

1

2

3  Date: July 26,2005

4

5

6

7                                    Respectfully submitted by,

8

9                                    Howard Young

10                                   Defendant in Pro Per

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

758

1  Howard Young
   885 N. San Pedro str.
2  San Jose, Ca. 95110
   04030028 DUL 864
3  Defendant in Pro Per



# FILED

JUL 2 7 2005

KIRI TORRE
Chief Executive Officer
Superior Court of the County of Santa Clara

BY _____ DEPUTY
NICK RESZ

4

5            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

6                FOR THE COUNTY OF SANTA CLARA

7  PEOPLE OF THE STATE                    No. CC454838
   OF CALIFORNIA,
              Plaintiff,                  POINTS AND AUTHORITIES
8                                         IN SUPPORT OF MOTION
                                          TO REDUCE BAIL
9

10       v.                               Date: July 29,2005
              Defendant                   Time: 1:30 pm
11 HOWARD YOUNG                           Place:Dept.29

12     Defendant submits the following points and authorities in

13 support of the motion to reduce bail:

14

15                              I

16       A COURT MAY NOT CONSTITUTIONALLY REQUIRE A
              DEFENDANT TO POST EXCESSIVE BAIL
17

18     The right to bail is contained in California Constitution

19 Article I, section 12, which provides in part:

20     "A person shall be released on bail by sufficient sureties,

21     for capital crimes when the facts are evident or the

22     presumption great. Excessive bail may be required."

23                             II.

24       DUE PROCESS REQUIRES THE BURDEN OF PROOF
         CONCERNING THE DEFENDANT'S REAPPEARANCE
25             TO BE BORNE BY THE PROSECUTION

26     In *Van Atta v. Scott*(1980)27 cal 3d 424, 444, 166 Cal Rptr

27 149, 613 P2d 210, the California Supreme Court examined the due

28 process procedural requirements related to the burden of

-3-

759

1  presenting proof of the likelihood of a defendant's appearance

2  in court. The court stated:

3      "Accordingly, it is concluded that due process requires

4      the burden of proof concerning the defendant's likelihood

5      of appearing for future court proceedings to be borne by

6      the prosecution a the O.R. hearing."

7                                    III.

8              DEFENDANT'S FUNDAMENTAL LIBERTY INTEREST
        MANDATES DUE PROCESS RIGHTS TO A HEARING INCLUDING THE
9                    RIGHT TO CROSS-EXAMINE WITNESSES

10

11      The deprivation of a defendant's liberty can be
    accomplished only if the state observes basic due process
    requirements. A defendant deprived of liberty is deprived of a
12  fundamental interest 'second only to life itself in terms of
    constitutional importance." Such deprivation can result after
13  the defendant has been accorded due process rights. (Van Atta v.
    Scott (1980) 27 cal. 3 424, 435, 166 cal. Rptr. 149, 613 P 2d
14  210; Morrissey v. Brewer 408 US 471, 33 1 ed 2d 484, 92 S Ct
    2593

15

16      The extent of due process rights guaranteed by the state and
    Federal constitution depends on the balancing of four factors:
17  (1) the private interest affected; (2) the risk of an erroneous
    deprivation of that interest able value of additional
    safeguards; (3) the interest in giving notice to the individual
18  and allowing the individual to defend against the government
    action; and (4) the governmental burden in according the due
19  process rights to the individual. (Mathews v Elderidge (1976)
    424 US 319, 335, 47 L Ed 2d 18, 96 s ct. 893; Van Atta v. Scott
20  27 Cal 3d 424, 166 Cal Rptr 148, 613 p2d 210; People v Ramirez
    (1979) 25 cal 3d 260, 269, 158 Cal Rptr 316.599 P2D 622.)

21

22      A.   THE RISK OF AN ERRONEOUS DEPRIVATION OF LIBERTY IS
             EXTREMELY HIGH WHEN BASED ON A PREDICTION OF FUTURE
23           BEHAVIOR

24      As the California Supreme court clearly states in Van Att
    v. Scott(1980) 27 cal. 3d 260, 269,158 cal Rptr P 2d 210.
25  "_[T]he threat of an unwarranted restraint on an
    individual's liberty is its greatest when the decision
26  being made is predictive in nature."

27      In numerous opinions, the cali8fornia Supreme court has
    declared to be unreliable and unreliable and frequently
28  erroneous expert predictions that persons will engage in

                                    -4-
                                                            760

1   future violent conduct.(*People v. Burnick (1975) 14 cal 3*
2   *306,326-327, 121 cal rptr 488, 535 p2d 352; Conservateon*
    *of Roulet(1979) 23 Cal 3d 219, 234-235, 152 Cal Rptr*
3   *425,590 P2d 1; people v. Murtishaw (1981) 29 Cal. 3d 733,*
    *767-775, 175 Cal Rptr 738, 631 P2d 446).*
4
    B.   IN ORDER TO PROTECT AGAINST THIS RISK, DUE
5   PROCESS REQUIRES, AT A MINIMUM, THE RIGHT TO CONFRONT AND
    CROSS-EXAMINE WITNESSES
6
    The United Supreme in *Goldberg v. Kelly (1970) 397 US*
7   *254,269, 25 L Ed. 2d 287, 90 s Ct. 1011,* emphasized the
    Importance of cross examine in determining the truth or
8   falsity of factual allegations:
9    "{I}n almost every setting where important decisions turn
    on questions of facts, due process requires an opportunity
10   to confront and cross-examine the witness."

11   The due process rights of a defendant facing trial are
    certainly no less than those of defendants who face a
12   parole or probation revocation.

13      A defendant who has not been convicted of any crime has
    at least the due process rights of those convicted persons
14   facing parole or probation revocation.(*Morrissey v Brewer*
    *(1972) 408 US 471, 33 l Ed 2d 484, 92 S ct 2593; Gagnon*
15   *Scpelli   US 778, 36 L Ed 2d 656, (3 S Ct. 1756,71 Ohio*
    *Ops 2d 279.)*
16

17                            VI.

18      ARTICLE I, SECTION 12 OF THE CALIFORNIA CONSTITUTION
         DOES NOT AUTHORIZE THE SETTING OF BAIL ON THE
19                   BASIS OF PERCEIVED VIOLENCE

20      Nowhere does the constitution allow the court to take into

21   account general consideration of public safety in setting bail.

22   There is no implied" public safety exception to a defendant's

23   guarantee to the right to bail. (*Re Underwood (1973) 9 Cal 3d*

24   *345, 107 Cal Rptr 401, 508 P2d 721.)*

25      In determining the amount of bail, the court is limited to

26   considering" the seriousness of the offense charged, the

27   previous criminal record of the defendant, and the probabilities

28   of his or her appearing at the trial or hearing of the case."

                              -5-

                                             **761**

1  (Cal Const, Art I, section 12). Based on these considerations,
2  the amount of the court is unreasonable.

3      Further defendant ask the court to take judicial notice
4  that he has in countered numerous infringements and or
5  violations of his rights to proceed as pro per that have
6  prejudiced him. Defendant's ability to adequately and properly
7  prepare his case will be impossible if not released from
8  custody. For example the inadequate law library provided for pro
9  per inmates is through a paging system that does not meet
10 constitutional muster. Defendants work product privilege is
11 violated because any other person having access to the pro per
12 word processor may copy or expose to anyone another inmate's
13 information. Pro per inmates may not conduct confidential
14 interviews with witnesses whether they are in custody or out of
15 custody. Defendants pro per phone is ran through the EVERCOM
16 phone system that can also be monitored. Also, it doesn't allow
17 you to call private parties or business that have automated
18 answering services. The pro per phone will not call long
19 distance calls unless there has been a account set up by the
20 Defendant through EVERCOM, for pre-paid long distance calling.

21     FOR THE FORGOING REASONS defendant here by request that his
22 Bail be reduces from $5,000,000 to $250,000 or that he be
23 released on his own recognizance.

24 Dated:                        Respectfully submitted by,

25

26                               Defendant In Pro Per
27

28

                                                        762

-6-

1 | Howard Young
885 N. San Pedro str.
2 | San Jose, Ca. 95110
04030028 DUL '864
3 | Defendant in Pro Per

4

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

5

### FOR THE COUNTY OF SANTA CLARA

6

7 | PEOPLE OF THE STATE              No. CC454838
OF CALIFORNIA,
           Plaintiff,              NOTICE OF MOTION
8 |                                 TO REDUCE BAIL

9

10 |       v.                        Date: July 29,2005_____
           Defendant                Time: 1:30 pm
11 | HOWARD YOUNG                     Place:Dept.29_____

12

13 |     TO THE DISTRICT ATTORNEY OF SANTA CLARA COUNTY

        AND/OR HIS REPRESENTATIVE:
14 | PLEASE TAKE NOTICE that on July 29, 2005, at the hour of 9:30 am

15 | Or as soon after as the matter can be heard in the courtroom of

16 | Department 29 of the above-entitled court, the defendant  will

17 | move for an order reducing the amount of bail hereto set in the

18 | above-captioned action from $5,000,000 to $250,000.

19

20 |     The motion will be made, on the grounds, that the bail set is

    excessive within the meaning of the Eighth Amendment to the
21
    United States Constitution and of Article I, section 12 of the
22
    California Constitution.
23
        The motion will be based on this notice of motion, on the
24
    attached declaration; the memorandum of points and authorities
25
    served and on such oral and documentary evidence as may be
26
    presented at the hearing of the motion.
27

28

                            -1-                    **757**

# EXHIBIT D

GENERAL DOCKET FOR
Ninth Circuit Court of Appeals

Court of Appeals Docket #: 06-16051                        Filed: 6/13/06
Nsuit: 3550  Prisoner civil rights (Fed)
Young v. Trans Union, et al
Appeal from: Northern District of California (San Francisco)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Case type information:
    1) prisoner petition
    2) state
    3) Civil rights
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

    District: 0971-3 : CV-06-00114-MJJ
    presiding judge: Martin J. Jenkins, District Judge
    Date Filed: 1/10/06
    Date order/judgment: 5/25/06
    Date NOA filed: 5/31/06
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ee status: partially paid

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
  None
Current cases:
  None
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Panel Assignment:
    Panel: EL   SRT  MSB  : **/**/**
    Date of decision: **/**/**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Proceedings include all events.
06-16051 Young v. Trans Union, et al

HOWARD YOUNG
    Plaintiff - Appellant

Howard Young
# F-44590
[NTC prs]
COSP - 3A CORCORAN STATE PRISON
Level 3A Facility
P.O. Box 3461
Corcoran, CA 93212-3461


  v.

TRANS UNION
    Defendant - Appellee

No appearance
No appearance

XPERIAN
    Defendant - Appellee

No appearance
(See above)

QUIFAX
    Defendant - Appellee

No appearance
(See above)

ISA USA
    Defendant - Appellee

No appearance
(See above)

Proceedings include all events.
06-16051 Young v. Trans Union, et al

HOWARD YOUNG

        Plaintiff - Appellant

  v.

TRANS UNION; EXPERIAN; EQUIFAX; VISA USA

        Defendants - Appellees

Proceedings include all events.
06-16051 Young v. Trans Union, et al

6/13/06          DOCKETED CAUSE AND ENTERED APPEARANCES OF APLT IN PRO PER
                 AND NO APPR FOR APLES. CADS SENT (Y/N): NO. setting
                 schedule as follows: Fee payment is due 6/27/06 ;
                 appellant's opening brief is due 7/24/06; [06-16051] (ji)

6/13/06          Filed certificate of record on appeal  RT filed in DC none
                 stated. [06-16051] (ji)

6/19/06          Received Appellant Howard Young's motion to expedite appeal
                 and to grant preliminary injunction; served on [no appr for
                 aples) (MOATT) [06-16051] (ji)

7/5/06           Filed order (Deputy Clerk: jw) A review of the district
                 court docket reflects that aplt has not paid the docketing
                 and filing fees for this appeal. Within 21 days from the
                 date of entry of this order, aplt shall: (1) file a motion
                 with this court to proceed in forma pauperis; (2) pay
                 $455.00 to the district court as the docketing and filing
                 fees for this appeal and provide proof of payment to this
                 court; or (3) otherwise show cause why the appeal should
                 not be dismissed for failure to prosecute. If aplt fails to
                 comply with this order, the appeal will be dismissed
                 automatically by the Clerk under Ninth Cir. R. 42-1.
                 [06-16051] (bb)

7/14/06          Received copy of District Court order filed on 6/27/06
                 Motion to proceed in forma pauperis granted. (PROSE)
                 [06-16051] (bb)

7/20/06          Received letter from pro se re: ifp status. (PROSE) (bb)

7/26/06          Filed order MOATT (NMG) The district court has granted aplt
                 leave to proceed in forma pauperis on appeal....Accordingly,
                 within 21 days after the filing date of this order, aplt
                 shall complete and file with this court the enclosed
                 authorization form....If aplt fails to comply with this
                 order, the Clerk shall dismiss this appeal for failure to
                 prosecute....CITE. The court has reviewed aplt's motion to
                 appeal and related motions, filed herein on 6/7/06. The
                 court construes these motions as aplts opening brf. The
                 Clerk shall file the motions as aplt's opening brf. This
                 appeal is ready for calendaring. [06-16051] (bb)

7/26/06          Filed (per 7/26/06 order) original and 7 copies Appellant
                 Howard Young's motion construed as an opening brief
                 (Informal: yes) 4 pages; no service; [06-16051] (bb)

8/3/06           Rec'd PLRA authorization response from appellant. (MOATT)
                 (Date: 8/1/06)  [06-16051] (bb)

8/3/06           Filed Appellant Howard Young's motion to appoint counsel of
                 record. no service (MOATT) [5911727] [06-16051] (bb)

Proceedings include all events.
06-16051 Young v. Trans Union, et al

8/3/06            Filed Appellant Howard Young's motion titled: "Motion for
                  temporary/permanent restraining order and/or injunctive
                  relief." no service. (MOATT)   [5911759] [06-16051] (bb)

9/15/06           CLERK ORDER FILED (Deputy Clerk: NG) Prisoner fee
                  authorization order sent to CA Atty. Gen.   [06-16051] (bb)

9/21/06           Filed order (A. W. TASHIMA, Susan P. GRABER,): Aplts motion
                  for appt of counsel is denied because this appeal does not
                  present "exceptional circumstances" warranting the appt of
                  counsel....CITE. [5911727-1] No motions for
                  reconsideration, clarification, or modification of this
                  denial shall be filed or entertained. Aplts motion for
                  injunctive relief is denied. [5911759-1] This appeal is
                  ready for calendaring.   [06-16051] (bb)

/26/06            No appellee's brief will be filed in this case. Case ready
                  for inventory. [06-16051] record on appeal due 10/3/06;  (bb)

/27/06            Rec'd notice of change of address from Howard Young for
                  Appellant Howard Young  dated 9/24/06.   [06-16051] (bb)

0/12/06           Rec'd notice of change of address from Appellant Howard
                  Young dated 10/7/06.   [06-16051] (bb)

0/31/06           Calendar check performed [06-16051] (th)

1/13/06           Rec'd notice of change of address Appellant Howard Young
                  dated 11/9/06.   [06-16051] (bb)

1/30/06           FILED CERTIFIED RECORD ON APPEAL: 1 CLERK'S RECORD & 2
                  EXPANDO FILES OF BULKY DOCUMENTS. [06-16051] (sd)

2/13/06           Filed Appellant Howard Young's request for a "prehearing
                  settlement conference and/or appeal case management
                  conference" (MOATT) [06-16051] (No proof of svc req'd - no
                  aple apperance) [06-16051] (mhf)

2/28/06           Filed Appellant Howard Young's motion to to appear and
                  argue merits of the case. no service (MOATT)   [6054269]
                  [06-16051] (bb)

/11/07            Rec'd errata to brief from Appellant Howard Young;
                  (RECORDS) (bb)

/11/07            Filed Appellant Howard Young's motion for complete copy of
                  record [06-16051] served on [PROMO] [06-16051] (mhf)

/19/07            Received Appellant Howard Young  letter dated 3/9/07 re:
                  status of his appeal (Sent public dkt to aplt pro se)
                  [06-16051] (mhf)

/5/07             Filed Appellant Howard Young's motion for summary reversal
                  (no service) (MOATT) [6142508] [06-16051] (bb)

Proceedings include all events.
06-16051 Young v. Trans Union, et al

6/6/07        Received letter from pro se re: all legal documents taken
              and aplt is unable to continue to litigate this appeal.
              (MOATT) (bb)

6/25/07       Received letter from pro se re: Case Status. (sent public
              dkt rpt) (bb)

7/5/07        Received letter from pro se re: bringing "exceptional
              circumstances to the Court's attention" (STAFF) (bb)

7/9/07        SUBMITTED TO SCREENING PANEL 456. ( Oral)  [06-16051]
              [06-16051] (th)

7/16/07       FILED MEMORANDUM DISPOSITION: AFFIRMED IN PART, REVERSED
              AND REMANDED IN PART. (Terminated on the Merits after
              Submission Without Oral Hearing; Affirmed (in part),
              Reversed (in part) and Remanded (in part); Written,
              Unsigned, Unpublished. Edward LEAVY, Sidney R. THOMAS,
              Marsha S. BERZON) FILED AND ENTERED JUDGMENT.   [06-16051]
              (bb)

'/26/07       Filed original and 50 copies Appellant Howard Young
              petition for panel rehearing and petition for rehearing en
              banc; 2 p.pages, served on 7/22/07 (STAFF)  [06-16051] (mhf)

'/26/07       Received Howard Young's request for publication of
              memorandum disposition ( Timely ); served on 7/22/07 (to
              STAFF) [06-16051] (mhf)

/30/07        Received Appellant Howard Young bill of costs. Not served;
              no entry of costs. Sent deficiency letter to aplt
              [06-16051] (gar)

/1/07         Received letter from pro se re: request for dkt sheet. Sent
              to aplt (gar)

*Note —*
*Mandate will*
*not issue*
*until 7 days*
*from PFR*
*denial.*
*— Clerk*

APPEAL, CLOSED, ProSe

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:06-cv-00114-MJJ
#### Internal Use Only

Young v. Trans Union et al
Assigned to: Hon. Martin J. Jenkins
Case in other court: 06-16051
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 01/10/2006
Date Terminated: 05/25/2006
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Howard Young**                represented by  **Howard Young**
                                                California State Prison
                                                Prisoner Id F-44590
                                                P.O. Box 3461
                                                Corcoran, CA 93212
                                                PRO SE

V.

**Defendant**

**Trans Union**

**Defendant**

**Experian**

**Defendant**

**Equifax**

**Defendant**

**Visa USA**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/2006 | 1 | COMPLAINT (no process) against Trans Union, Experian, Equifax, Visa USA (Filing fee: IFPP). Filed byHoward Young. (slh, COURT STAFF) (Filed on 1/10/2006) (Entered: 01/11/2006) |
| 01/10/2006 | 2 | EXHIBITS re [1] Complaint filed byHoward Young. (Related document (s)[1]) (slh, COURT STAFF) (Filed on 1/10/2006) (Entered: 01/11/2006) |
| 01/10/2006 | 3 | CLERK'S NOTICE re completion of In Forma Pauperis affidavit or payment of filing fee due within 30 days. (slh, COURT STAFF) (Filed |

| | | on 1/10/2006) (Entered: 01/11/2006) |
|---|---|---|
| 01/18/2006 | ●4 | Prisoner Trust Fund Account Statement by Howard Young. (slh, COURT STAFF) (Filed on 1/18/2006) (Entered: 01/18/2006) |
| 01/19/2006 | ●5 | AMENDED COMPLAINT against Trans Union, Experian, Equifax, Visa USA. Filed byHoward Young. (slh, COURT STAFF) (Filed on 1/19/2006) (Entered: 01/23/2006) |
| 01/19/2006 | ●6 | MOTION for Leave to Proceed in forma pauperis filed by Howard Young. (slh, COURT STAFF) (Filed on 1/19/2006) (Entered: 01/23/2006) |
| 01/26/2006 | ●7 | Prisoner Trust Fund Account Statement by Howard Young. (slh, COURT STAFF) (Filed on 1/26/2006) (Entered: 01/30/2006) |
| 01/30/2006 | ● | Filing fee received: $ 250; receipt number 3380967. (slh, COURT STAFF) (Filed on 1/30/2006) (Entered: 01/30/2006) |
| 01/30/2006 | ●8 | Letter dated 1/20/06 from Howard Young. (slh, COURT STAFF) (Filed on 1/30/2006) (Entered: 02/06/2006) |
| 03/02/2006 | ●9 | EXHIBIT (transcript) filed byHoward Young. (slh, COURT STAFF) (Filed on 3/2/2006) (Entered: 03/03/2006) |
| 03/07/2006 | ●10 | Letter from Howard Young requesting service of process. (slh, COURT STAFF) (Filed on 3/7/2006) (Entered: 03/08/2006) |
| 03/07/2006 | ●11 | MOTION for Temporary Restraining Order filed by Howard Young. (slh, COURT STAFF) (Filed on 3/7/2006) (Entered: 03/08/2006) |
| 03/15/2006 | ●12 | MOTION for Temporary Restraining Order, MOTION to Appoint Counsel filed by Howard Young. (slh, COURT STAFF) (Filed on 3/15/2006) (Entered: 03/21/2006) |
| 03/17/2006 | ●13 | MOTION for Discovery filed by Howard Young. (slh, COURT STAFF) (Filed on 3/17/2006) (Entered: 03/22/2006) |
| 03/20/2006 | ●15 | Letter dated 3/16/06 from Howard Young requesting to have summons issued. (slh, COURT STAFF) (Filed on 3/20/2006) (Entered: 04/03/2006) |
| 03/21/2006 | ●14 | Letter re: Exhibits 19 filed byHoward Young. (slh, COURT STAFF) (Filed on 3/21/2006) (Entered: 03/22/2006) |
| 04/25/2006 | ●16 | MOTION for Summary Judgment filed by Howard Young. (slh, COURT STAFF) (Filed on 4/25/2006) (Entered: 04/27/2006) |
| 04/28/2006 | ●17 | MOTION to Appoint Counsel filed by Howard Young. (slh, COURT STAFF) (Filed on 4/28/2006) (Entered: 05/03/2006) |
| 05/23/2006 | ●18 | MOTION for Summary Judgment filed by Howard Young. (ys, COURT STAFF) (Filed on 5/23/2006) (Entered: 05/25/2006) |
| 05/25/2006 | ●19 | ORDER OF DISMISSAL by Judge Martin J. Jenkins DENYING the Motions for a TRO or a preliminary Injunction [11] [12]; dismissing case |

| | | |
|---|---|---|
| | | without prejudice; DENYING [6] Motion to Proceed In Forma Pauperis and no filing fee is due. (slh, COURT STAFF) (Filed on 5/25/2006) (Entered: 06/01/2006) |
| 05/25/2006 | ●20 | JUDGMENT that this case is dismissed. (slh, COURT STAFF) (Filed on 5/25/2006) (Entered: 06/01/2006) |
| 05/31/2006 | ●21 | NOTICE OF APPEAL as to [19] Order Dismissing Case, by Howard Young. Filing fee: not paid. (slh, COURT STAFF) (Filed on 5/31/2006) usca # 06-16051 (Entered: 06/02/2006) |
| 05/31/2006 | ● | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals. (slh, COURT STAFF) (Filed on 5/31/2006) (Entered: 06/02/2006) |
| 05/31/2006 | ● | Copy of Notice of Appeal and Docket sheet mailed to all counsel. (slh, COURT STAFF) (Filed on 5/31/2006) (Entered: 06/02/2006) |
| 05/31/2006 | ● | Certificate of Record Mailed to USCA re appeal [21] Notice of Appeal. (slh, COURT STAFF) (Filed on 5/31/2006) (Entered: 06/02/2006) |
| 06/15/2006 | ● | USCA Case Number 06-16051 for [21] Notice of Appeal. (slh, COURT STAFF) (Filed on 6/15/2006) (Entered: 06/20/2006) |
| 06/22/2006 | ●22 | MOTION for Leave to Proceed in forma pauperis on Appeal filed by Howard Young. (ys, COURT STAFF) (Filed on 6/22/2006) (Entered: 06/27/2006) |
| 06/27/2006 | ●23 | ORDER by Judge Martin J. Jenkins GRANTING [22] Motion for Leave to Proceed in forma pauperis on appeal. cc: USCA. (slh, COURT STAFF) (Filed on 6/27/2006) (Entered: 07/06/2006) |
| 08/16/2006 | ●24 | ORDER of USCA granting appellant's motion to proceed in forma pauperis as to [21] Notice of Appeal. (cc: USDC financial unit). (slh, COURT STAFF) (Filed on 8/16/2006) (Entered: 08/21/2006) |
| 11/29/2006 | ● | Record on Appeal Certified and Transmitted to US Court of Appeals re [21] Notice of Appeal. (slh, COURT STAFF) (Filed on 11/29/2006) (Entered: 11/29/2006) |
| 12/26/2006 | ●25 | NOTICE OF Change of Address and REQUEST for copies of documents filed by Howard Young. (slh, COURT STAFF) (Filed on 12/26/2006) (Entered: 12/28/2006) |
| 01/03/2007 | ●26 | Receipt for Appeal Record re appeal [21] Notice of Appeal. (slh, COURT STAFF) (Filed on 1/3/2007) (Entered: 01/04/2007) |
| 04/26/2007 | ●27 | MOTION to Amend Complaint, MOTION for Discovery filed by Howard Young. (slh, COURT STAFF) (Filed on 4/26/2007) (Entered: 04/27/2007) |

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____, declare:

I am over 18 years of age and **Not** a party to this action.  I am a resident of _Corcoran State Prison_

_____ Prison,

in the county of _Kings_

State of California.  My prison address is: _P.O. Box 8800_

_Corcoran, CA. 93212 - 8800_

On _July 7, 2008_
(DATE)

I served the attached: _Federal Habeas Corpus_

_Mr. Howard Young v. Derrel Adams - Warden Corcoran State Prison_
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined.  The envelope was addressed as follows:

Edmund G. Brown
California Attorney General's Office
455 Golden Gate Ave. Suite 11000
San Francisco, CA. 94102-7004

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _July 7, 2008_        _____
(DATE)                                    (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                                              ::ODMA\PCDOCS\WORDPERFECT\28320